UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK
------------------------------------------------------------- x
RALPH VARGAS and                                  :
BLAND-RICKY ROBERTS,                              :      Case No. 04 CV 9772 (WHP)
                                                  :
                         Plaintiffs,              :
                                                  :      ECF CASE
           - against -                            :
                                                  :
PFIZER, INC., PUBLICIS, INC., FLUID               :      Judge William H. Pauley III
MUSIC, EAST WEST COMMUNICATIONS,                  :
INC. and BRIAN TRANSEAU p/k/a "BT",               :
                                                  :
                         Defendants.              :
------------------------------------------------------------- x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF ORIGINALITY OF PLAINTIFFS' WORK

| | |
|---|---|
| Samual M. Leaf (SL 0633) | Bruce P. Keller (BK 9300) |
| Eric M. Stahl (*pro hac vice*) | Debevoise & Plimpton LLP |
| Davis Wright Tremaine LLP | 919 Third Avenue |
| 1633 Broadway | New York, NY 10022 |
| New York, NY 10019-6708 | (212) 909-6000 |
| (212) 489-8230 | *Attorneys for Defendant Pfizer, Inc.* |
| *Attorneys for Defendants East West Communications, Inc. and Brian Transeau* | |
| | |
| Sara L. Edelman (SE 2540) | Edward P. Kelly (EK 8430) |
| Davis & Gilbert LLP | Tiajoloff & Kelly |
| 1740 Broadway | Chrysler Bldg., 37th Floor |
| New York, NY 10019 | 405 Lexington Avenue |
| (212) 468-4800 | New York, NY 10174 |
| *Attorneys for Defendant Publicis, Inc.* | (212) 490-3285 |
| | *Attorneys for Defendant Fluid Music* |

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..........................................................................................1

I. FACTS ...................................................................................................................2

    A. Plaintiffs' Basic, One-Bar Percussion Loop Is Rudimentary And Unoriginal. ..................................................................................................2

    B. The Defendants' Works. ............................................................................6

        1. The Celebrex Commercial Contains Harmonic Elements And Pitched Instruments Not Found In *Bust Dat Groove*. ..................6

        2. The Rhythm Portion Of The Celebrex Commercial Was Independently Created And Is Not Based On *Bust Dat Groove*. ..................6

        3. The Rhythm Portion Of The Celebrex Commercial Is Not the Same As Plaintiffs' Work. .................................................................8

II. ARGUMENT ........................................................................................................9

    A. Lack Of Originality Is Properly Determined On Summary Judgment. ......9

    B. Copyright Protects Only The Constituent Elements Of A Work That Are Original To The Author; Unoriginal Similarities Are Not Actionable. ....10

III. CONCLUSION ...................................................................................................14

# TABLE OF AUTHORITIES

## CASES

*Black v. Gosdin,*
 740 F. Supp. 1288 (M.D. Tenn. 1990)..................................................................13

*Celotex Corp. v. Catrett,*
 477 U.S. 317 (1986)..................................................................................................9

*Durham Industrial, Inc. v. Tomy Corp.,*
 630 F.2d 905 (2d. Cir. 1980)....................................................................................1

*Feist Publ'ns, Inc. v. Rural Telegraph Service Co.,*
 499 U.S. 340 (1991)..................................................................................10, 11, 13

*Intersong-USA v. CBS, Inc.,*
 757 F. Supp. 274 (S.D.N.Y 1991) ........................................................................14

*Jean v. Bug Music, Inc.,*
 No. 00 Civ. 4022 (DC), 2002 U.S. Dist. LEXIS 3176 (S.D.N.Y. Feb. 27, 2002)...1, 10, 12

*Johnson v. Gordon,*
 409 F.3d 12 (1st Cir. 2005)..............................................................................10, 12

*Matsushita Electrical Industrial Co. v. Zenith Radio Corp.,*
 475 U.S. 574 (1986)..................................................................................................9

*McRae v. Smith,*
 968 F. Supp. 559 (D. Colo. 1997)........................................................................12

*Northern Music Corp. v. King Record Distributing Co.,*
 105 F. Supp. 393 (S.D.N.Y. 1952) ....................................................................1, 11

*Smith v. Jackson,*
 84 F.3d 1213 (9th Cir. 1996) ..........................................................................10, 13

*Tisi v. Patrick,*
 97 F. Supp. 2d 539 (S.D.N.Y. 2000)..................................................1, 10, 11, 12

*Walker v. Time Life Films, Inc.,*
 784 F.2d 44 (2d Cir. 1986)....................................................................................14

## STATUTE

17 U.S.C. § 102(b) .................................................................................................................. 10

## MISCELLANEOUS

U.S. Copyright Office, Circular No. 50: Copyright Registration for Musical
    Compositions (Revised June 1999) ........................................................................................ 2

Pursuant to this Court's June 10, 2005 Order and Rule 56 of the Federal Rules of Civil Procedure, Defendants Pfizer, Inc., Publicis, Inc., Fluid Music, East West Communications, Inc., and Brian Transeau submit this Memorandum of Law In Support of their joint Motion for Summary Judgment, dismissing with prejudice the copyright infringement Complaint of plaintiffs Ralph Vargas ("Vargas") and Bland-Ricky Roberts ("Roberts") (collectively, "Plaintiffs").

## PRELIMINARY STATEMENT

Summary judgment is appropriate in this copyright infringement case because Plaintiffs seek protection for a basic, one-bar drum rhythm that simply is not copyrightable. *See Tisi v. Patrick*, 97 F. Supp. 2d 539, 548-49 (S.D.N.Y. 2000) (tempo and basic rhythms "not copyrightable as a matter of law.").[1] That a common rhythm cannot be protected is not a novel proposition. For over half a century, it has been well-recognized that "originality of rhythm is a rarity, if not an impossibility." *Northern Music Corp. v. King Record Distrib. Co.*, 105 F. Supp. 393, 400 (S.D.N.Y. 1952) ("Rhythm is simply the tempo in which [musical] composition is written. It is the background for the melody. There is only a limited amount of tempos; these appear to have been long since exhausted."). Any contrary rule would have disastrous consequences: it would permit a handful of copyright claimants, at most, to wield enormous control over all subsequent musical creations and would stifle the ability of all musicians to practice their craft.

---

[1] Plaintiffs' copyright registration does not preclude summary judgment. A valid registration creates only a rebuttable presumption of originality. *See Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 908 (2d. Cir. 1980) ("It is clear . . . that a certificate of registration creates no irrebuttable presumption of copyright validity."). Here, the undisputed facts rebut that presumption. *See, e.g., Jean v. Bug Music, Inc.*, No. 00 Civ. 4022 (DC), 2002 U.S. Dist. LEXIS 3176, at *12 (S.D.N.Y. Feb. 27, 2002) (despite valid copyright registration, musical elements found unoriginal where they were so basic that they appeared in prior art and music dictionary).

For that reason, courts have not hesitated to find that basic rhythmic sounds, devoid of any melody, are not copyrightable. Here, Plaintiffs' work consists exclusively of a common rhythm track, without any accompanying instruments creating any melody or harmony. Indeed, the particular rhythm used by Plaintiffs in their work is so rudimentary that its constituent elements, individually and in combination, are found in many basic "how to drum" textbooks dating back to the 1960s. Accordingly, no one can obtain exclusive rights to them. Finally, although the two works in dispute are, overall, quite different, the few commonalities they share are limited to rudimentary, widely used elements. Each of these reasons, standing alone, would support summary judgment. Taken together, they compel that result.

## I. FACTS

### A. Plaintiffs' Basic, One-Bar Percussion Loop Is Rudimentary And Unoriginal.

Plaintiffs claim that they are the creators and copyright owners of a musical work entitled "*Bust Dat Groove Without Ride*" ("*Bust Dat Groove*"). That work was recorded on an album entitled "*Funky Drummer, Volume II.*" (First Amended Complaint (Dkt. # 3) ("Compl.") ¶ 1.) Plaintiff Ralph Vargas claims to have "composed" *Bust Dat Groove* in 1993. (*Id.* ¶ 16.) Two years later, he registered the copyright in the music. (*Id.* ¶ 17 & Ex. A.) This registration certificate – the sole copyright registration cited in the complaint – describes *Bust Dat Groove* as "Music – Drum Rhythm/Drum Loops." (*Id.*)[2]

---

[2] The sole copyrighted work at issue in this case is the underlying musical composition, not the sound recording of that composition being performed. This is confirmed by the Form PA copyright registration provided with the complaint. (Compl. Ex. A.) A Form PA ("performing arts") registration, unlike a Form SR ("sound recording") registration, covers only the musical work itself, not any recording of that work. *See* U.S. Copyright Office, Circular No. 50: *Copyright Registration for Musical Compositions* (Revised June 1999), http://www.copyright.gov/circs/circ50.pdf. Plaintiffs further confirm that their copyright claim is limited only to the musical composition when they admit that they seek damages only for "infringement of Plaintiffs' musical composition," as opposed to any sound recording. (*See* Declaration of Edward P. Kelly, Ex. A (Plaintiffs' Initial Disclosures, Section I(C)(a)).)

2

Defendants have engaged an expert musicologist, Mr. Anthony Ricigliano, to assist the Court in, among other things, understanding the nature of *Bust Dat Groove*. Mr. Ricigliano taught for over three decades at the Manhattan School of Music, is the author of two books on contemporary music, and has been accepted as an expert witness in numerous copyright infringement cases. His credentials and qualifications are further set out in his declaration. (*See* Declaration of Anthony Ricigliano ("Ricigliano Decl.") ¶¶ 1-3 & Ex. A.)

Submitted with Mr. Ricigliano's declaration is a compact disc containing *Bust Dat Groove* and other works considered in his review. *Bust Dat Groove*, as it appears on the "*Funky Drummer, Volume II*" LP, is Track 1 of the CD. (*Id.* ¶¶ 4-5 & Ex. D, CD Track 1.)

As is readily apparent from listening to Track 1 of the CD, *Bust Dat Groove* is a basic, one-bar percussion pattern; though the recording runs approximately one minute, the entire work consists of the same drum pattern looped (repeated) approximately 27 times. (*Id.* ¶ 5.) *Bust Dat Groove* is a "basic groove track" that, according to Mr. Ricigliano, establishes "a rhythmic bed or 'feel,' not unlike the ohm pah pah of a waltz or 6/8 feel of a jazz waltz." (*Id.*) When such percussion patterns are unadorned by other musical elements, they rarely are distributed as popular music because they are not meant to be listened to in their own right. Rather, they serve as background rhythm and accompany pitched instruments (*i.e.*, those supplying melody and harmony) in musical compositions. (*Id.*)

*Bust Dat Groove* consists entirely of four individual rhythmic or percussion elements – a high hat (cymbal), snare drum, tom-tom drum and bass drum. (*Id.* at ¶ 6.) Neither individually nor in combination do these elements constitute original expression. (*Id.* at ¶ 5.) As detailed in Mr. Ricigliano's declaration, the constituent elements of *Bust Dat Groove*, singly and

3

in combination, are so basic as to be found in elementary drum instruction books dating back to the 1960s. (*Id.* at ¶¶ 5-12.)

The high-hat (a series of eighth notes) and snare drum (quarter notes hit on beats 2 and 4) elements of *Bust Dat Groove* each are standard and commonplace when considered individually. The combination of the two is also rudimentary. (*Id.* at ¶ 7.) Indeed, these exact rhythms and combination may be found in numerous drumming instruction books. (*Id.* at ¶ 7-8 & examples cited therein.) In some cases these instruction books pre-date *Bust Dat Groove* by over two decades. (*See, e.g., id.* Ex. C4, p. 10, Exercise 1 (identical cymbal/snare patterns shown in 1972 rock drum instruction book); *id.* Ex. C2, p. 6, Exercise 9 (same, from 1968).) Other, more recent texts show that this combination has remained an elementary drum pattern for contemporary music for decades. (*See, e.g., id.* ¶ 8 & Ex. C7, p. 5 (same patterns in book entitled *The Phunky Hip-Hop Drummer*); *id.* Ex. C8 (this rhythm is "the simplest, most basic pattern in rock drumming.") (For a recording of this combination, *see id.* Ex. D, Track 4.)

Mr. Ricigliano has provided four examples of songs that were commercially released before (in some cases, two decades before) or contemporaneous with *Bust Dat Groove*, all containing exactly the same rhythm combinations. (*Id.* at ¶ 8 & Ex. D, track list (identifying songs) & CD Tracks 7-11.) A comparison between the musical transcriptions of *Bust Dat Groove* and these compositions confirms the similarity of the cymbal and snare drum elements. (*Compare id.* at ¶ 6 (transcription of *Bust Dat Groove*) *with id.* Ex. D (transcriptions for Tracks 7-11).)

The tom-tom element of *Bust Dat Groove* – a short rhythmic figure known as a "ruff" – also comes straight out of the drumming textbooks. (*Id.* ¶¶ 9-10.) Mr. Ricigliano provides two examples of the identical tom-tom rhythm found in instructional books from 1967

4

and 1968. (*Id.* ¶ 9 (citing Ex. C3, p. 17 & Ex. C1, p. 16-17.) The individual note placement of the ruff in *Bust Dat Groove*, and its use in combination with the high-hat and snare drum patterns, is unoriginal. (*Id.* at ¶ 10.)

The final constituent element of *Bust Dat Groove*, the bass drum, consists of two basic three-note groups – one beginning with what is known as a pick-up note on the downbeat, the other containing a "short-long-short" note figure. (*Id.* at ¶ 11.) Again, neither these note configurations nor their placement within the bar is original to *Bust Dat Groove*. (*Id.* at ¶¶ 11-12.) The same bass drum rhythmic figures are found – in combination with the identical, basic high hat/snare drum rhythm patterns used in *Bust Dat Groove* – in exercises included in a 1972 rock drumming instruction book. (*Id.* at ¶ 12 & Ex. C4, p. 17, Exercise Nos. 12 & 14; recordings of these compositions are included at Ex. D, CD Tracks 5 & 6.) This combination of "pick-up on the downbeat" bass, with the same high hat/snare drum combination, also is found on songs that were released commercially over 20 years before *Bust Dat Groove*. (*Id.* ¶ 12 & Ex. D, track list (identifying songs), CD Tracks 8 & 9, and transcriptions for Tracks 8 & 9.)

There is a reason for the ubiquity of these elements that has nothing to do with copying or copyright infringement: Works in the same musical style necessarily rely on a limited number of rhythmic patterns used in a limited number of ways – in other words, the rhythmic patterns define the musical style. (*Id.* at ¶ 13.) It is for this reason that rhythmic patterns essential to a particular musical style never have been considered the exclusive property of a single owner. (*Id.*)

1664119v1 SEA

B. **The Defendants' Works.**

1. **The Celebrex Commercial Contains Harmonic Elements And Pitched Instruments Not Found In *Bust Dat Groove*.**

The Plaintiffs allege that the composition of *Bust Dat Groove* was contained in a "jingle" used, beginning in June 2003, to advertise the drug Celebrex, manufactured by defendant Pfizer, Inc. (Compl. ¶¶ 2, 4, 16, 26.) The Celebrex advertisement in question is contained at Track 2 of the CD provided by Mr. Ricigliano (Ex. D; transcription at Ex. E). As is readily apparent from listening to the two tracks, the Celebrex commercial contains musical instrumentation not found in the *Bust Dat Groove* drum loop. (*Compare* Ricigliano Decl. Ex. D Track 1 *with id.* Track 2.) The commercial consists not only of percussion instruments, but also three additional musical instruments – a synthesizer, guitar and electric bass. (Ricigliano Decl. ¶ 19.) These three "pitched" elements are the featured, key musical parts of the commercial, containing its pitch and harmony as well as additional rhythm. (*Id.*; *see also* Declaration of Brad Stratton ("Stratton Decl.") ¶ 7.) At least one, but more often two, of these additional elements appear in every bar of the commercial. (Ricigliano Decl. ¶ 19.)

2. **The Rhythm Portion Of The Celebrex Commercial Was Independently Created And Is Not Based On *Bust Dat Groove*.**

The music contained in the Celebrex commercial was prepared by defendant Fluid Music on behalf of Publicis, Inc., Pfizer's former advertising agency. (Stratton Decl. ¶ 3-4.) The background rhythm came from a CD "sound library" known as *Breakz from the Nu Skool* ("*Breakz*"), which Fluid Music acquired from a music retailer. (*Id.* at ¶ 2.) A Fluid Music producer used a drum loop from *Breakz* known as *Aparthenonia*, and combined it with the synthesizer, guitar, and bass elements discussed above. (*Id.* at ¶ 5.) The producers of the commercial's music had never heard of, and had no access to, *Bust Dat Groove*. (*Id.* at ¶ 8.)

6

*Breakz* was prepared by defendant Brian Transeau (known professionally as BT). Mr. Transeau is an accomplished performer, composer and producer of electronic music. (*See* Declaration of Brian Transeau ("Transeau Decl.") ¶ 2.) He has released numerous popular recordings of his own, produced "remixes" for some of the world's best-known recording artist, and created the scores for several feature films. (*Id.*) *Breakz*, however, is markedly different from these highly creative and original works. *Breakz* is a sound library consisting of hundreds of separate tracks (including *Aparthenonia*), each one a simple drum pattern identically repeated just two to four times. (*Id.* at ¶ 3.) These short drum loops are not meant to be listened to as musical works in their own right. (*Id.*) Rather, *Breakz* is meant to be used only by other musicians and producers, who incorporate one or more of the tracks found on the CD as tempo or background for their own musical works. (*Id.*)

*Aparthenonia* was independently created by Mr. Transeau using his computer, off-the-shelf software applications, and drum machines. (*Id.* at ¶ 5). *Aparthenonia* is a programmed beat; the percussion elements originated from a music generation computer program known as Propellerhead Reason, and were mixed and equalized by Mr. Transeau on his own equipment. (*Id.*) Prior to this litigation (which commenced over three years after *Aparthenonia* was created), Mr. Transeau had never heard of the Plaintiffs and had never heard of or listened to *Bust Dat Groove* or *Funky Drummer, Volume II*. (*Id.* at ¶ 6.) He had no access to these works, and has never possessed a copy of them (in fact, he was not even able to locate a copy of *Funky Drummer, Volume II*, despite a diligent search, after this litigation began). (*Id.*) *Aparthenonia* contains no "sampling" or recording of any other work. (*Id.*) In particular, it is not a copy of *Bust Dat Groove*. (*Id.*)

7

### 3. The Rhythm Portion Of The Celebrex Commercial Is Not the Same As Plaintiffs' Work.

*Aparthenonia* lasts approximately nine seconds, or two and one-quarter bars. (Ricigliano Decl. ¶ 14 & Ex. D, CD Track 3.) Like *Bust Dat Groove*, *Aparthenonia* contains high-hat, snare drum, tom-tom drum and bass drum elements, but the only similarities between these shared elements consist of the same combination of a high-hat (consisting of straight eighth notes) and snare drums (quarter notes hitting on beats 2 and 4). (*Id.* at ¶ 14.) This commonplace rhythm is not original to *Bust Dat Groove*, but is considered a rudimentary drumming technique. (*Id.*) Because these similarities consist entirely of elements that have been staples of the contemporary popular idiom for decades, they are fundamental building blocks for popular music – as basic to musical composition as, say, the words, "baby I love you" are to lyrical composition. (*See id.* ¶¶ 13, 22-24; Transeau Decl. ¶¶ 7-8.)

The remaining aspects of the two compositions are quite different:

- Whereas every bar heard in *Bust Dat Groove* is identical, the first and second bars in *Aparthenonia* differ in the use of the tom-tom element. (Ricigliano Decl. ¶ 16.)

- The rhythmic placement of the tom-tom drum "ruff" differs between the two works. Specifically, *Aparthenonia* places the ruff in beat one of its second bar, whereas the ruff appears in the fifth eighth note of every bar in *Bust Dat Groove*. (*Id.*)

- The high-hat parts of *Bust Dat Groove* and *Aparthenonia* each contain an "open" or "splash" effect, but this effect appears in a different place in the two works. (*Id.* at ¶ 15.)

- The bass drum patterns in the two works are readily distinguished in several respects. As noted above, the bass drum portion of *Bust Dat Groove* consists of two basic groups of notes. The first group has three notes and consists of a "pick-up" moving into

8

two notes equal in time value (eighth notes). In contrast, the first bass drum group in *Aparthenonia* contains **no** pick-up, and consists of only **two** notes of **unequal** time (an eighth note followed by a sixteenth note). (*Id.* at ¶ 17.)

- The second group of bass drum notes also differs between the works. As discussed above, in *Bust Dat Groove* this group consists of three notes in a "short-long-short" pattern (which, as noted above, is a very common, textbook rhythmic figure). In contrast, the second group of bass drum notes in *Aparthenonia* consists of *four* notes in a **"short-short-long-short"** pattern. (*Id.* at ¶¶ 17-18.)

Finally, Mr. Ricigliano, the musicologist, has concluded that *Aparthenonia* does not contain a recording or "sample" of *Bust Dat Groove*. (*Id.* at ¶ 18.) He bases this conclusion both on the actual, significant rhythmic and structural differences noted above, as well as on a "waveform" analysis – a digital comparison of the sound waves of the two recordings showing, in graphic form, the sound waves generated by each recording. This comparison shows several readily visible distinctions between the two recordings. (*Id.* at ¶¶ 18, 22 & Ex. B; Declaration of Rhys Moody.)

## II. ARGUMENT

### A. Lack Of Originality Is Properly Determined On Summary Judgment.

Summary judgment is appropriate when "there is no genuine issue as to any material fact . . . and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986). Summary judgment is not "a disfavored procedural shortcut, but rather . . . an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

1664119v1 SEA

The issue of the originality of a musical composition, in whole or in part, is a particularly appropriate issue for summary judgment, especially where a music expert demonstrates that the work consists of commonly known and widely used musical elements. *See, e.g., Jean v. Bug Music.,* No. 00 Civ. 4022 (DC), 2002 U.S. Dist. LEXIS 3176 (S.D.N.Y. Feb. 27, 2002) (granting summary judgment and finding three-note sequence and lyric "clap your hands" lacked requisite originality to qualify for copyright protection); *Tisi v. Patrick*, 97 F. Supp. 2d 539, 544, 548-49 (S.D.N.Y. 2000) (granting summary judgment for defendants, three months after complaint was filed, in part because elements such as "extremely common . . . basic percussion rhythm" were "not copyrightable as a matter of law"); *Johnson v. Gordon,* 409 F.3d 12, 23 (1st Cir. 2005) (affirming summary judgment based in part on finding that allegedly similar harmonic progressions were too common to be protected); *Smith v. Jackson*, 84 F.3d 1213, 1220 (9th Cir. 1996) (affirming summary judgment based upon expert declaration that asserted short sequence of notes were "scenes a faire," and therefore not subject to copyright protection).

### B. Copyright Protects Only The Constituent Elements Of A Work That Are Original To The Author; Unoriginal Similarities Are Not Actionable.

A copyright infringement plaintiff must establish, among other things, "copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). "Originality remains the sine qua non of copyright; accordingly, copyright protection may extend only to those components of a work that are original to the author." *Id.* at 348. In fact, the originality requirement is a constitutional prerequisite for protection. *Id.* at 345; U.S. Const. art. I, §8, cl. 8; 17 U.S.C. § 102(b) (limiting copyright to "original works of authorship.").

*Feist* holds that the raw data comprising a telephone directory – such as names, towns and telephone numbers – does not satisfy the originality requirement: "[T]his data does not ow[e] its origin to [plaintiff] . . .; they existed before [plaintiff] reported them, and would have continued to exist if [plaintiff] had never published" its work. *Feist*, 499 U.S. at 361 (citations and internal quotations omitted).

This principle applies with full force to the basic elements of music. Raw data in the form of basic notes and rhythms are no more copyrightable than facts; they do not owe their origin to any particular musician and they exist independent of any particular work that might embody them. "[A] court must be mindful of the limited number of notes and chords available to composers and the resulting fact that common themes frequently appear in various compositions, especially in popular music." *Tisi*, 97 F. Supp.2d at 548 (citation and internal quotations omitted). This fundamental concept – that basic musical elements of music are not copyrightable – has been expressed in the case law in a variety of ways.

*First*, some courts have observed that certain musical elements, particularly rhythm, exist in such limited quantities that establishing an original use "is a rarity, if not an impossibility" and that if originality is to be found in a musical work, it must be in more expressive elements such as melody. *Northern Music Corp. v. King Record Distributing Co.*, 105 F. Supp. 393, 400 (S.D.N.Y. 1952). Similarly, in *Tisi*, the Court ruled that certain musical elements, such as the choice of tempo and rhythm, "are not copyrightable as a matter of law . . . ." *Tisi*, 97 F. Supp.2d at 549

Here, *Bust Dat Groove* consists exclusively of an unadorned basic rhythm pattern. The limited universe of musical tempos precludes anyone from claiming copyrights in a particular rhythm. "It is in the melody of the composition or the arrangement of notes or tones

11

that originality must be found." *Northern Music*, 105 F. Supp. at 400. Because *Bust Dat Groove* has no melody or tone, it is "not copyrightable as a matter of law...." *Tisi*, 97 F. Supp. 2d at 549.

*Second*, other decisions apply this concept by holding that a copyright claim cannot be based on constituent elements that have long been in common use. "Virtually by definition, expressions that are common are also unoriginal." *Johnson*, 409 F.3d at 23 (harmonic progression "commonly inserted in popular and jazz music" lacks originality and is unprotectible). For example, in *Jean v. Bug Music, supra*, the lyrical and musical phrase, "Clap your hands now, people clap now" was held "unprotectible because it uses common musical and lyrical phrases that have been used in other recordings. In other words, the [phrase] lacks the requisite originality." *Jean*, 2002 U.S. Dist. LEXIS 3176, at *2. Similarly, *Tisi* recognizes that rhythmic structures that are "extremely common" in the pop rock genre are not protectible. *Tisi*, 97 F. Supp. 2d at 544. Where it appears that "two songs share nothing in common aside from the use of basic pop and rock musical devices, which are common to many, many songs," there can be no infringement. *Id.* at 549; *see also McRae v. Smith*, 968 F. Supp. 559, 566-67 (D. Colo. 1997) (elements such as two-step rhythm that appeared in "many other songs" were "nonprotectable" as a matter of law).

Putting aside that a composition comprised purely of rhythms cannot be protected, the particular rhythms used in *Bust Dat Groove*, whether considered individually or in combination, are not original to Plaintiffs. Rather, they consist of four drum elements (high hat, snare drum, tom-tom drum and bass drum) repeated in a single bar. Mr. Ricigliano's declaration demonstrates, beyond dispute, that these elements, individually and collectively, are so basic and ubiquitous that (a) they have been taught to beginning drummers for at least 38 years and (b) they appear in commercially released works dating back at least to 1972. Simply put, no

12

aspect of these "four individual percussion tracks . . . repeating a one-bar pattern" (Ricigliano Decl. ¶ 6) can be said to "ow[e] its origin to" Plaintiffs; rather, "they existed before" Plaintiffs composed them, and these basic rhythms, alone and in combination, "would have continued to exist" if Plaintiffs had never composed their work. *Feist*, 499 U.S. at 361. (Ricigliano Decl. ¶¶ 6-12 & citations therein (illustrating how each of the four elements of Plaintiffs' composition are identical (i) to basic exercises in drum instructional books published decades before *Bust Dat Groove* was created, and (ii) to pre-existing songs).)[3]

*Third*, still other decisions find that common musical sequences are unprotectible under the "scenes a faire" doctrine. "Scenes a faire" are "elements which are more or less basic to a given setting or situation," and are considered so common or trite that they are "beyond the scope of copyright protection." *Black v. Gosdin*, 740 F. Supp 1288, 1293 (M.D. Tenn. 1990) ("the use of jukeboxes in country music songs about unrequited love is not sufficiently unique to warrant copyright protection."). The scenes a faire doctrine has been applied to non-lyrical musical elements. For example, this court has held that an infringement claim could not be based on similarities between two songs' "structure patterns, their use of a certain harmonic progression and a recurring eighth note rhythm," because these elements were so unoriginal as to "constitute 'scenes a faire,' or ordinary, unprotectible expression." *Intersong-USA v. CBS, Inc.* 757 F. Supp. 274, 282 (S.D.N.Y 1991) (crediting opinion of expert musicologist Anthony Ricigliano that allegedly protectible elements of Plaintiffs' song were common and basic). Similarly, in *Smith v. Jackson*, 84 F.3d 1213, the Ninth Circuit affirmed a trial court's summary

---

[3] Mr. Ricigliano also has provided audio recordings of these compositions, which further demonstrate how each constituent element of Plaintiffs' work was composed, and could be heard, long before *Bust Dat Groove*. (*Id.* Ex. D, Tracks 7-11.) He also notes that the bass drum and tom-tom patterns in *Aparthenonia* differ substantially from *Bust Dat Groove*. (*Id.* at ¶¶ 16-18.)

13

judgment finding that defendants' alleged misappropriation of short musical phrases ("motives") found in plaintiffs' works was not actionable, because the motives were scenes a faire. Notably, the Ninth Circuit rejected plaintiffs' argument that defendants should have been required to prove that plaintiffs had access to these "scenes a faire" before writing their songs:

> A scenes a faire finding, unlike a finding of copyright validity, does not turn on whether plaintiff copied prior art. Rather, the court examines whether "motive" similarities that plaintiffs attribute to "copying" [by defendants] could actually be explained by the commonplace presence of the same or similar motives within the relevant field.

*Id.* at 1219.

That is exactly the case here. The only similarities identified between the two works are the commonplace combination of hitting a high-hat cymbal with a series of eighth notes, combined with a snare drum using quarter notes on the 2 and 4 beats. (Ricigliano Decl. ¶ 14.) These elements have been staples of the contemporary popular music for decades. (*Id.* at ¶¶ 23-24.) As a result, they are the types of scenes a faire that are not actionable as a matter of law. *See Smith*, 84 F.3d at 1218 (plaintiff must demonstrate copying of "protected elements of the copyrighted work"); *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 50 (2d Cir. 1986) (summary judgment affirmed where all similarities between the works at issue were "unprotectible as 'scenes a faire'").

### III. CONCLUSION

None of the constituent elements of *Bust Dat Groove* are original. For the foregoing reasons, the Defendants' motion for summary judgment should be granted, and Plaintiffs' claims should be dismissed with prejudice.

Dated: New York, New York
June 30, 2005

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By: /s/ Samuel M. Leaf
Samuel M. Leaf (SL 0633)
Eric M. Stahl (admitted *pro hac vice*)

1633 Broadway
New York, NY 10019
(212) 489-8230
*Attorneys for Defendants East West
Communications and Brian Transeau*

Bruce P. Keller
Debevoise & Plimpton LLP
919 Third Avenue
New York, NY 10022
*Attorneys for Defendant Pfizer, Inc.*

Sara L. Edelman
Davis & Gilbert LLP
1740 Broadway
New York, NY 10019
*Attorneys for Defendant Publicis, Inc.*

Edward P. Kelly
Tiajoloff & Kelly
405 Lexington Avenue, 37th Floor
New York, NY 10174
*Attorneys for Defendant Fluid Music*

TO: Paul A. Chin
Law Offices of Paul A. Chin
233 Broadway, 5th Floor
New York, NY 10279
*Attorneys for Plaintiffs Ralph Vargas
And Bland-Ricky Roberts*