UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RALPH VARGAS and : | CASE NO.:   04 CV 9772 (WHP) |
| BLAND-RICKY ROBERTS : | |
| : | |
| Plaintiffs : | |
| vs. : | ECF CASE |
| : | |
| PFIZER INC., PUBLICIS, INC., FLUID MUSIC, : | |
| EAST WEST COMMUNICATIONS, INC. and : | |
| BRIAN TRANSEAU p/k/a "BT" : | |
| : | |
| Defendants : | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT**

Dated: New York, New York
       July 22, 2005

Respectfully submitted,

_____s/ Paul Chin_____
PAUL A. CHIN, ESQ. (PC 9656)
Law Offices of Paul A. Chin
233 Broadway, 5th Floor
New York, NY 10279
(212) 964-8030
*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

| | | |
|---|---|---:|
| TABLE OF AUTHORITIES............................................................. | | 3 |
| PRELIMINARY STATEMENT ........................................................ | | 5 |
| STATEMENT OF FACTS ................................................................ | | 6 |
| LEGAL ARGUMENT ...................................................................... | | 7 |
| POINT I | SUMMARY JUDGMENT........................................ | 7 |
| | A. Legal standard for summary judgment........................ | 7 |
| | B. Jury should decide originality in this case.................... | 8 |
| POINT II | THE COMPOSITION IS ENTITLED TO COPYRIGHT PROTECTION................................................... | 8 |
| | A. Originality under Copyright Law........................... | 8 |
| | B. The Composition is original................................... | 9 |
| |     1. Presumption of originality............................. | 9 |
| |     2. Vargas independently created the Composition....... | 10 |
| |     3. Existence of creativity.................................. | 11 |
| POINT III | DEFENDANTS FAIL TO MEET THEIR BURDEN............ | 12 |
| | A. Common musical elements are copyrightable.................. | 13 |
| | B. Defendants' remaining arguments are without merit...... | 16 |
| POINT IV | MUSICOLOGIST'S CONCLUSION ARE INCORRECT | 16 |
| | A. Ricigliano's report cannot be relied upon by the Court...... | 16 |
| | B. No tom-tom exists in any of the musical works.............. | 16 |
| | C. No "4 stroke ruff" exists in any of the musical works........ | 17 |
| | D. Ricigliano's drum transcription excludes pitch.............. | 17 |
| | E. Ricigliano's comparative analysis is flawed.................. | 18 |
| POINT V | DEFENDANTS SAMPLED THE COMPOSITION........ | 19 |
| CONCLUSION ................................................................................ | | 20 |

# TABLE OF AUTHORITIES

## CASES

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986)..................................................... 7, 9

Alfred Bell & Company v. Catalda Fine Arts, Inc.,
191 F.2d 99 (2d Cir.1951)............................................. 9

BMS Entertainment/Heat Music, LLC. v. Bridges,
No. 04 Civ. 2584 (PKC), 2005 WL 1593013, *3 (S.D.N.Y. July 7, 2005). 12, 13

Donahue v. Windsor Locks Board of Fire Commissioners,
834 F.2d 54 (2d Cir. 1987)............................................. 7

Feist Publications, Inc. v. Rural Telephone Services Company, Inc.,
499 U.S. 340 (1991)..................................................... 8, 11, 13

Gallo v. Prudential Residential Services,
22 F.3d 1219 (2d Cir. 1994).......................................... 7

Gaste v. Kaiserman,
863 F.2d 1061 (2d Cir.1988).......................................... 8, 15

Grady v. Affiliated Cent., Inc.,
130 F.3d 553 (2d Cir. 1997).......................................... 7

Knitwaves, Inc. v. Lollytogs Ltd., Inc.,
71 F.3d 996 (2d Cir.1995)............................................. 12, 15

Levine v. McDonalds Corp.,
735 F.Supp. 92 (S.D.N.Y. 1990)...................................... 7, 13, 15, 18

Mattel, Inc. v. Goldberger Doll Manufacturing Company,
365 F.3d 133 (2d Cir.2004)............................................ 8, 13, 14

Nicholls v. Tufenkian Import/Export Ventures, Inc.,
No. 04 Civ 2110 (WHP), 2004 WL 1399187 (S.D.N.Y. Jun. 23, 2004).... 8

Repp v. Webber,
132 F.3d 882 (2d Cir. 1997).......................................... 7

Rogers v. Koons,
960 F.2d 301 (2d Cir.1992)........................................... 11, 15

Rushton v. Vitale,
218 F.2d 434 (2d Cir.1955)........................................... 9

Santrayll v. Burrell,
No. 91 Civ. 3166 (PKL), 1996 WL 134803 (S.D.N.Y. 1996).................. 14

SHL Imaging, Inc. v. Artisan House, Inc.,
117 F.Supp.2d 301 (S.D.N.Y. 2000)........................................... 9, 12

Swirsky v. Carey,
376 F.3d 841 (9th Cir.2004).................................................... 18

Tempo Music v. Famous Music Corporation,
838 F.Supp. 162 (S.D.N.Y. 1993)............................................. 11, 13

Thomas Wilson & Company v. Irving J. Dorfman Company,
433 F.2d 409 (2d Cir.1970).................................................... 9

Tin Pan Apple, Inc. v. Miller Brewing Company, Inc.,
No. 88 Civ. 4085 (CSH), 1994 WL 62360 (S.D.N.Y. Feb. 24, 1994)..... 14

Tufenkian Import/Export Ventures, Inc. v. Einstein Moojy, Inc.,
338 F.3d 127 (2d Cir. 2003)................................................... 7, 14

Ulloa v. Universal Music and Video Distribution Corp.,
303 F.Supp. 409 (S.D.N.Y. 2004)............................................. 7

Ulloa v. Universal Music & Video Distribution Corp.,
No. 01 Civ. 9583 (BSJ), 2004 WL 840279, (S.D.N.Y. Apr. 19, 2004).... 10

Vermont Teddy Bear Company, Inc. v. 1-800 Beargram Company,
373 F.3d 241 (2d Cir. 2004)................................................... 7

## **RULES**

Rule 56(c) of the Federal Rule of Civil Procedure

Plaintiffs Ralph Vargas and Bland-Ricky Roberts (collectively "Plaintiffs"), by and through their undersigned attorneys, hereby submit this Memorandum of Law In Opposition to Defendants Pfizer, Inc., Fluid Music, East West Communications, Inc., and Brian Transeau (collectively "Defendants") Joint Motion for Summary Judgment (hereinafter "Defendants' Motion").

## PRELIMINARY STATEMENT

The crux of Defendants' Motion is that Plaintiffs' musical work, entitled *"Bust Dat Groove Without a Ride"* (the "Composition"), is not entitled to copyright protection because the individual musical elements contained in the Composition are common, unoriginal and not actionable. However, this argument demonstrates Defendants' failure to recognize that originality, for copyright purposes, is determined by examining an author's creative process in producing a musical work not by analyzing whether or not the result of the author's creative process is novel or unique. Implementation of this well-established analytical framework can lead to only one conclusion; that is, the Composition is sufficiently original to warrant copyright protection.

Although this Court limited Defendants' Motion solely to the issue of originality; Defendants submitted a waveform analysis in order to show the dissimilarity between the Composition and Infringing Works. Plaintiffs believe the Court should not consider any material on substantial similarity. However, in the event the Court does consider this material, Plaintiffs have also submitted a report and waveform analysis from their sound engineer expert. This report demonstrably shows that the Infringing Works were created by digitally sampling the Composition.

For the foregoing reasons, Defendants' Motion should be denied in its entirety.

## STATEMENT OF FACTS

Plaintiff Vargas is the author of the musical work titled "Bust Dat Groove w/out Ride" (the "Composition"). *First Amended Complaint, Dkt. #3, ¶9 (the "Amended Complaint").* On January 27, 1995, Plaintiff Vargas obtained a valid copyright registration certificate for the Composition. *Amended Complaint, ¶17 (see also Exhibit A to Amended Complaint).* The Album was commercially released by Plaintiff Roberts d/b/a JBR Records. On or about January 26, 1995, Plaintiff Roberts obtained a valid Copyright Certificate for the sound recording containing the Composition. *Exhibit A, U.S. Copyright Office Database.*

Defendants allege that the musical work entitled "Aparthenonia" was created and/or published in 2001 by Defendant Brian Transeau ("Defendant Transeau"). *Brian Transeau Declaration, ¶3 ("Transeau Decl.").* "Aparthenonia" was commercially distributed by Defendant East West Communications, Inc. ("Defendant EWC"). *Declaration of Brad Stratton, ¶3 ("Stratton Decl.").* Defendant Transeau claims that he independently created "Aparthenonia" "using software applications, drum machines and a computer." *Transeau Decl, ¶5.* Defendants claim that the drum melody in the "Celebrex Commercial," a/k/a "With Celebrex," was created by using "Aparthenonia." *Stratton Decl., ¶4.* (Aparthenonia and the Celebrex Commercial are collectively referred to herein as the "Infringing Works").

Plaintiffs brought their copyright infringement action against all Defendants for their unauthorized use, distribution, commercialization, creation of derivative works and other exploitation of the Composition. *Amended Complaint, ¶16-28.*

# LEGAL ARGUMENT

## POINT I
## SUMMARY JUDGMENT

### A. Legal standard for summary judgment

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed.R.Civ.P. 56(c)*. Defendants bear the burden of demonstrating the absence of a material fact and their entitlement to relief as a matter of law. Vermont Teddy Bear Company, Inc. v. 1-800 Beargram Company, 373 F.3d 241, 244 (2d Cir. 2004); Grady v. Affiliated Cent., Inc., 130 F.3d 553, 559 (2d Cir. 1997). A fact is material if it "might affect the outcome of the suit under the governing law ..." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). On a motion for summary judgment, the "fundamental maxim is that the court cannot try issues of fact; it can only determine whether there are issues to be tried." Levine v. McDonald's Corp., 735 F.Supp. 92, 95 (S.D.N.Y. 1990) *citing* Donahue v. Windsor Locks Board of Fire Commissioners, 834 F.2d 54, 58 (2d Cir. 1987). In assessing whether or not a material fact is in dispute, the Court must believe the evidence presented by Plaintiffs and must draw all reasonable inferences in Plaintiffs' favor. Anderson, 477 U.S. at 255; Tufenkian Import/Export Ventures, Inc. v. Einstein Moojy, Inc., 338 F.3d 127, 131 (2d Cir. 2003). Summary judgment is appropriate only in instances where the evidence presented by Plaintiffs is so "slight" that no reasonable jury could find in their favor. Gallo v. Prudential Residential Services, 22 F.3d 1219, 1223 (2d Cir. 1994).

### B. Jury should decide originality in this case

As a result of the absence of any written discovery or deposition testimony in this case, the Court is required to make a factual determination on the issue of originality and substantial similarity solely on the basis of competing expert reports. In instances where the issue of originality and substantial similarity is contested, a jury, not the Court, must make the final determination. Repp v. Webber, 132 F.3d 882, 891 (2d Cir. 1997)(district court erred by making factual determination in favor of defendant on the issue of substantial similarity where there was competing expert evidence, summary judgment reversed); Ulloa v. Universal Music and Video Distribution Corp., 303 F.Supp. 409, 413 (S.D.N.Y. 2004)("It would be improper for this Court, on a motion for summary judgment, to draw its own conclusions from this competing evidence regarding the originality of the Vocal Phrase."); Nicholls v. Tufenkian Import/Export Ventures, Inc., No. 04 Civ 2110 (WHP), 2004 WL 1399187, *2 (S.D.N.Y. Jun. 23, 2004)("Defendants' argument that the Prado design lacks originality...raises factual issues that are best left for trial."). The sole issue on this motion is originality. The parties have submitted reports from their respective experts[1] contesting the issue of originality. In this instance, summary judgment should be denied.

### POINT II
### THE COMPOSITION IS ENTITLED TO COPYRIGHT PROTECTION

#### A. Originality under Copyright Law

It is beyond cavil that originality, "as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other

---

[1] Defendants' expert, although qualified in music theory, does not appear to have any practical experience as a drummer or the expertise necessary to perceive subtle, but substantial, similarities between the drum music at issue. *Declaration of Matthew Ritter, ¶18-30 ("Ritter Decl.")*.

works), and that it possesses at least some minimal degree of creativity." Feist Publications, Inc. v. Rural Telephone Services Company, Inc., 499 U.S. 340, 345 (1991). The originality requirement for obtaining copyright protection "amounts to little more than a prohibition of actual copying." Gaste v. Kaiserman, 863 F.2d 1061, 1066 (2d Cir.1988). The requisite amount of creativity needed to secure copyright protection is extremely low and "the vast majority of works make the grade quite easily, as they possess some creative spark, no matter how crude, humble or obvious it might be." Mattel, Inc. v. Goldberger Doll Manufacturing Company, 365 F.3d 133, 135 (2d Cir.2004) *citing* Feist, 499 U.S. at 345. In fact, some courts have found works to be entitled to copyright protection, notwithstanding the absence of creativity. Id. *citing* Thomas Wilson & Company v. Irving J. Dorfman Company, 433 F.2d 409, 411 (2d Cir.1970); Rushton v. Vitale, 218 F.2d 434, 435-36 (2d Cir.1955); Alfred Bell & Company v. Catalda Fine Arts, Inc., 191 F.2d 99, 102-03 (2d Cir.1951). The Composition easily meets the legal standard for originality.

### B. The Composition is original

#### 1. Presumption of originality

It is undisputed that Plaintiff Vargas obtained a valid certificate of registration from the Copyright Office for the Composition in 1995. *Amended Complaint, Dkt.#3, exhibit A; Defendants' Rule 56.1 Statement, ¶2, ¶4 ("Def. R. 56.1")*. This certificate of registration creates a presumption that the Composition is original for copyright purposes. SHL Imaging, Inc. v. Artisan House, Inc., 117 F.Supp.2d 301, 305 (S.D.N.Y. 2000)("...the certificate constitutes prima facie evidence of the facts stated therein and of the originality of the work. "). This presumption shifts the burden to Defendants to prove that the Composition is not original. Id. While Defendants do not contest the validity of

Plaintiff Vargas' registration, Defendants claim that Plaintiffs' damages are limited to "infringement of Plaintiffs' musical composition" not to the sound recording. *Defendants' Motion, pg, 2, n. 2; Def. R. 56.1, ¶5-6*. Defendants' claim is without merit.

The Amended Complaint clearly states that Plaintiffs' causes of action for copyright infringement are based on Defendants' unauthorized use and exploitation of the musical composition and <u>sound recording</u> of the song titled *"Bust Dat Groove Without Ride" (i.e. the Composition). Amended Complaint, ¶¶1-5; ¶¶29-48* The Amended Complaint also states that Plaintiff Roberts is the owner of the master recordings containing the Composition. Id. at ¶18. On or about January 26, 1995, Plaintiff Roberts obtained a valid certificate of registration for the sound recording containing the Composition. *Exhibit A*.

### 2. Vargas independently created the Composition

It is undisputed that Plaintiff Vargas is the author of the Composition. *Exhibit B, ¶4*. The Composition was created solely by Plaintiff Vargas and was not based on, or copied from, any pre-existing musical works. Id. at ¶9. Plaintiff Vargas did not utilize, or refer to, any drumming textbooks in connection with the production of the Composition. Id. at ¶9. In an effort to prove that the Composition lacks originality, Defendants' musicologist, Anthony Ricigliano ("Ricigliano"), contends that the rhythmic patterns in the Composition can be found in "how to drum" textbooks from the 1960's and are similar to the rhythmic combinations embodied in four songs released prior to creation of the Composition. *Ricigliano Decl., ¶5, ¶8; Defendants' Motion, pg. 4*. However, Ricigliano's contentions are not only factually inaccurate, they are completely irrelevant to the issue of originality because neither Ricigliano nor Defendants claim that Plaintiff Vargas copied from these pre-existing works. <u>Ulloa v. Universal Music &</u>

Video Distribution Corp., No. 01 Civ. 9583 (BSJ), 2004 WL 840279, *1 (S.D.N.Y. Apr. 19, 2004)("The contention of Defendants' expert that the melody of the Vocal Phrase appeared in fourteen examples of prior musical works, including pieces by Mozart and Beethoven..., is not relevant in assessing whether the Vocal Phrase is sufficiently original to warrant copyright protection in this action because Defendants do not contend that Plaintiff copied the Vocal Phrase from those prior works.").

### 3. Existence of creativity

In copyright law, originality does not require that a particular work be novel, unique or the first of its kind. Feist Publications, Inc., 499 U.S. at 345 ("Originality does not signify novelty; a work may be original even though it closely resembles other works so long as the similarity is fortuitous, not the result of copying."). Instead, what is required is evidence of the author's "intellectual production, of thought and conception" in producing the work. Id. at 362. Originality focuses on the author's creative process not on the results of that process. Tempo Music v. Famous Music Corporation, 838 F.Supp. 162, 169 (S.D.N.Y. 1993)("...originality, for copyright purposes, looks to creative process rather than novel outcomes or results..."). The amount of creativity required for copyright protection is "modest—only a dash of it will do." Rogers v. Koons, 960 F.2d 301, 307 (2d Cir.1992)(other citations omitted). An examination of Plaintiff Vargas' artistic process in producing the Composition clearly demonstrates more than a dash of creativity.

Plaintiffs' drum/music expert, Matthew Ritter ("Ritter"), conducted an analysis of the Composition and the Infringing Works. Ritter determined that Plaintiff Vargas made decisions to combine certain musical elements and to create new sounds, which made the Composition unique and immediately recognizable. *Ritter Decl. ¶5-8.* For example,

Plaintiff Vargas decided not to use tom-toms in the Composition. *Exhibit A,* ¶6. Instead, Plaintiff Vargas increased the tension of the chains underneath his snare drum and struck the snare lightly, which produced a sound similar to a tom-tom but distinctly different. *Ritter Decl., ¶5-8.* Ritter describes this nuanced sound as a "ghost note." Id at 5-6. Ritter also states that this "ghost note" is unique because Plaintiff Vargas "alters the sound of the snare and creates a sound that is a cross between a tom-tom drum and a snare drum." Id. at ¶6. "This is very rare and demonstrates the drummer's talent and creativity." Id. The Composition also contains creative musical nuances that make it readily identifiable to the listener. Id. at *¶31.*

These facts, taken in the light most favorable to Plaintiffs, clearly demonstrate that the Composition was independently created by Plaintiff Vargas and contains a minimal degree of creativity; therefore, the Composition is entitled to copyright protection.

## POINT III
## DEFENDANTS FAIL TO MEET THEIR BURDEN

Plaintiffs' certificate of registration shifts the burden of proving the Composition is not entitled to copyright protection to Defendants. SHL Imaging, Inc., *supra.* In an effort to meet this burden Defendants' musicologist, Anthony Ricigliano ("Ricigliano") conducted a note-by-note dissection of the four individual musical elements in the Composition and determined that Plaintiffs' copyright action must fail because none of these individual elements are copyrightable. *Ricigliano Decl., ¶6.* However, Ricigliano's meticulous note-by-note dissection of the Composition is improper and fails to disprove that Plaintiff Vargas' selection and arrangement of these musical elements was not creative. BMS Entertainment/Heat Music, LLC. v. Bridges, No. 04 Civ. 2584 (PKC), 2005 WL 1593013, *3 (S.D.N.Y. July 7, 2005)(dissection of musical composition into

protectible and unprotectible elements in order to disprove infringement is improper...evaluation of the works "total concept and feel" is what is required) *citing* Knitwaves, Inc. v. Lollytogs Ltd., Inc., 71 F.3d 996, 1004 (2d Cir.1995).

### A. Common musical elements are copyrightable

Defendants contend that the Composition contains basic rhythmic sounds and common musical elements that are not copyrightable. *Defendants' Motion, pg. 2.* However, "[t]he proposition that standard or common features are not protected is inconsistent with copyright law." Mattel, Inc., 365 F.3d at 135. Originality does not focus on novel outcomes or unique results. Tempo Music, *supra*. In instances where a work contains unprotectible elements, the focus is on the author's creative choices in the selection and arrangement of these elements. Feist Publications, Inc., 499 U.S. at 348 (creative choices as to arrangement and selection of unprotectible facts are sufficiently original to warrant copyright protection). Therefore, assuming *arguendo* that the Composition contains standard or common musical elements, the Composition is still entitled to copyright protection because Plaintiff Vargas' selection and arrangement of these musical elements contains a minimal degree of creativity. BMS Entertainment/Heat Music, LLC. 2005 WL 1593013, *3 (unoriginal elements, when combined, may constitute an original, copyrightable work).

In Levine v. McDonald's Corporation, a copyright case on "all-fours" with the matter *sub judice*, defendants moved for summary judgment on the grounds that the musical elements (i.e. pitch and rhythm) of plaintiffs' composition (entitled "LIFE") was unoriginal and not entitled to copyright protection. 735 F.Supp. 92, 94 (S.D.N.Y. 1990). Defendants' argument was based solely on their musical expert's report which claimed that the "patter melody" in LIFE along with the composition's harmony and rhythm was

a basic blues progression and lacked creativity and originality. Id. The *Levine* defendants, like the Defendants in this case, also argued that even if they copied portions of LIFE, they copied no protectible elements and therefore could not be held for infringement of plaintiffs' copyright in LIFE. Id. at 95. The district court rejected defendants' argument stating: "even if it could be said as a matter of law that the only similarity of copyrightable expression between the songs is with respect to the patter section, it is not clear to the Court that that section is so lacking in creativity that it is non-copyrightable." Id. at 95-96. In denying defendants' motion for summary judgment the court held:

> "[Defendant's] contention that there is no support in law for the proposition that a compilation of common elements is subject to copyright protection is ridiculous...in the present case, the plaintiffs' use of various non-copyrightable elements is itself copyrightable if they have been arranged in a unique and recognizable way."

Id. at 97. *See also,* Santrayll v. Burrell, No. 91 Civ. 3166 (PKL), 1996 WL 134803, *1 (S.D.N.Y. 1996)("The Court finds that the repetition of the non-protectible word "uh-oh" in a distinctive rhythm comprises a sufficiently original composition to render it protectible by the copyright laws."); Tin Pan Apple, Inc. v. Miller Brewing Company, Inc., No. 88 Civ. 4085 (CSH), 1994 WL 62360, * (S.D.N.Y. Feb. 24, 1994)(court held that the "Hugga-Hugga and Brrr sounds" in plaintiffs' sound recording were sufficiently creative to warrant copyright protection).

That an author's work which contains standard, common or unoriginal elements can be entitled to copyright protection is not a novel proposition. *See,* Mattel, Inc., 365 F.3d at 136(a doll visage with an upturned nose, bow lips, and widely spaced eyes in particularized expression is protectible); Tufenkian Import/Export Ventures, Inc., 338

F.3d at 131 ("non-mechanical adaptation of individually unprotectible elements from the public domain is precisely the type of "original selection" that the Supreme Court indicated was protectible expression in Feist"); Knitwaves, Inc., 71 F.3d at 1006(sweater's commonplace visual elements where sufficiently original in combination to warrant copyright protection); Rogers, 960 F.2d at 307(photograph of eight German Shepard puppies sufficiently original); Gaste, 863 F.2d at 1066 (common musical phrases in plaintiff's composition did not preclude copyright protection for composition). As discussed in Ritter's report, Plaintiff Vargas made creative and unique choices in combining various musical elements in the Composition that entitles it to copyright protection.

### B. Defendants' remaining arguments are without merit

Defendants argue that because the Composition is a repeating one-bar drum beat looped "approximately 27 times" it is unoriginal and not entitled to copyright protection. *Defendants' Motion, pgs. 3, 13.* Defendants also argue that the Composition is not copyrightable because it consists of a limited number of notes or musical elements. Id. at pgs. 1-3, 5. These argument are unavailing to Defendants because originality in a musical composition it not determined by number of notes or musical elements; and copyright protection is not precluded because of the repetition of these notes. Levine, 735 F.Supp. at 99 (neither repetitiveness nor the limited number of notes does not make a musical work unoriginal). Defendants finally argue that the Composition is not entitled to copyright protection because: (1) it is a basic groove track; and (2) to do so would "stifle the ability of all musicians to practice their craft." *Defendants' Motion, pg. 1, 3.* These arguments have been rejected by this Court in the past and are without merit. Levine, 735 F.Supp. at 98 ("The fact that LIFE [musical work] can be identified as a part of a

musical genre does not detract from its protectibility...there is no merit to defendants' argument that recognition of a copyright in LIFE by a jury in this case will allow plaintiffs "to tie up the centuries old concept of a patter song.").

## POINT IV
## MUSICOLIGIST'S CONCLUSIONS ARE INCORRECT

### A. Ricigliano's report cannot be relied upon by the Court

Ricigliano's report reflects a lack of practical experience as a drummer and a grave misunderstanding of drumming techniques and transcription standards. *Ritter Decl.,* ¶18-30. More importantly, Ricigliano's description of the musical elements and particular notes contained in the musical works at issue is incorrect. Id. at ¶ 19-26. Finally, Ricigliano's comparative analysis between the Composition and the Infringing Works, and pre-existing works, is significantly flawed. Id. at ¶27-30. In short, Ricigliano's report cannot be relied upon by the Court.

### B. No tom-toms exist in any of the musical works at issue

On of the most glaring examples of Ricigliano's inability to offer expert testimony in this particular case is his misidentification of the existence of tom-toms in the Composition and the Infringing Works. Ricigliano claims that each of the three musical works consists of four individual percussion tracks – high hat (cymbal), snare drum, tom-tom drum and bass drum. *Ricigliano Decl.,* ¶6 (the Composition), ¶14 ("Aparthenonia"), ¶19 ("Celebrex"). This is not the case. *Ritter Decl., ¶19.* None of the three musical works contains a tom-tom drum. Id. "What Ricigliano perceives as tom-toms are, in fact, "ghost notes" being played on a snare drum." Id. By tightening the wires under the snare drum and playing the snare lightly using "multiple bounce strokes," Plaintiff Vargas altered the sound of his snare drum to create a new sound that was a cross between a snare and a tom-tom (i.e. "ghost notes"). Id. at ¶5-6. These "ghost notes

occur four times in the Composition and occur three times in both *Aparthenonia* and *Celebrex*. *Ritter Decl., ex. B (transcription)*.

Ricigliano's conclusions that the Composition is not original; and that *Aparthenonia* and *Celebrex* are not similar to the Composition are based on his incorrect assumption that tom-toms exist in all three musical works. As a result of this flawed analysis, Ricigliano's conclusions cannot be relied upon by this Court.

### C. There is no "4 stroke ruff" in any of the three musical works

"Ricigliano's transcription of the tom-tom sounds (which does not exist in any of the 3 compositions) is inaccurate." Id. at ¶20. Ricigliano describes the tom-tom rhythm as a "four stroke ruff." *Ricigliano Decl.*, ¶9. However, a "four stroke ruff is a military drumming pattern that requires the drummer to play with both hands. *Ritter Decl.*, ¶20. What Ricigliano perceives as a "4 stroke ruff" is actually a "multiple bounce stroke." Id. at ¶22. A "multiple bounce stroke" is played by a drummer using one hand. Id. When the drummer strikes the drum (in this case the snare) he allows the drum-stick to bounce, rather than re-striking the drum. Id. This creates random hits and buzzes and does not sound anything like the "clear, crisp sound of a military 4 stroke ruff." Id. These "multiple bounce strokes" occur in the Composition and in the Infringing Works.

Ricigliano's inability to perceive this subtle, yet significant, difference between a "4 stroke ruff" and "multiple bounce strokes" places in question his ability to provide expert testimony on the issue of originality and similarity in this case. *Ritter Decl., ex. B (transcription)*.

### D. Ricigliano's drum transcriptions exclude pitch

Ricigliano's transcription of the drum notes in the Composition and the Infringing Works "is inconsistent with standard practices of drum notation." Id. at ¶24. By

transcribing all of the drum notes with Xs, Ricigliano implies that drums do not have pitch. Id. at ¶24. However, modern drum notation requires the use of round note heads not Xs. *Ritter Decl.,* ¶24. This fact is confirmed in all of the drumming textbooks attached as exhibits to Ricigliano's Declaration. Id.

In addition, Ricigliano's implication that drums (and therefore the compositions) do not have pitch is also incorrect. Id. at ¶25. Drums do produce pitches, albeit not the kind of standard pitches similar to a guitar or piano. Id. at ¶26. This fact is significant because Defendants claim that the Composition is not copyrightable because it has no melody or tone. *Defendants' Motion, pg.12.* However, melody is the combination of pitch and rhythm. Swirsky v. Carey, 376 F.3d 841, 846 n.9 (9th Cir.2004)("Melody is a function of both pitch…and rhythm…of a series of notes."); Levine, 735 F.Supp. at 95 (pitch and rhythm combine to form melody). Therefore, on a fundamental basis, the Composition contains a melody because of the existence of both pitch and rhythm. More specifically, the Infringing Works contain the exact same pitch and rhythm. Id. at ¶11.

### E. Ricigliano's comparative analysis is flawed

Ricigliano submitted to the Court a compact disc containing six groove tracks which he claims are similar to the Composition. *Ricigliano Decl.,* ¶4(h). However, none of the songs or drum beats contained on the cd are similar to the Composition. *Ritter Decl.,* ¶27. Moreover, none of the drum textbooks produced by Ricigliano includes one drum transcription which contain a combination of musical elements, notes, rhythms and pitches that is similar to the Composition. Id.

This entire case is based on music created solely by the use of one instrument, the drums. The inaccuracies in Ricigliano's report clearly demonstrate his lack of familiarity

with this instrument and misunderstanding of the subtle nuances in this area of music. It is for these reasons that this Court cannot, and should not, rely on Ricigliano's report.

## POINT V
## DEFENDANTS SAMPLED PLAINTIFFS' COMPOSITION

Attached to Defendants' Motion is the Declaration of Rhys Moody. Mr. Moody is a sound engineer for Defendant EWC. *Moody Decl., ¶1*. Mr. Moody conducted a waveform analysis comparing the drum section from the Composition with the drum section from Aparthenonia. Id. at ¶4. According to Mr. Moody, the waveform demonstrates that Aparthenonia is not a sample of the Composition. Id. at ¶8. Plaintiffs' sound engineer expert, Ivan A. Rodriguez[2] ("Rodriguez"), reviewed Mr. Moody's declaration and waveform analysis and concluded that: (i) the waveform analysis was prepared incorrectly and was not accurate; (ii) the two songs (the Composition and Aparthenonia) were loaded into Pro Tools at two different sound levels; and (iii) Mr. Moody used an unedited version of the Composition that that was not digitally manipulated (i.e. sampled). *Rodriguez Decl., ¶9-10*.

Rodriguez then conducted his own waveform analysis using the Composition and Aparthenonia. Id. at ¶11-15. Prior to loading both compositions into his Pro Tools recording program, Rodriguez duplicated the digital sampling process that he believes Defendants utilized in creating Aparthenonia. Id. at ¶5, ¶8, ¶11, ¶19. After digitally manipulating and editing the Composition, Rodriguez then loaded both musical works into his Pro Tools recording program and prepared a waveform analysis. Id. at ¶11-15. A copy Rodriguez's waveform analysis is attached to Rodriguez's Declaration as Exhibit B.

---

[2] Mr. Rodriguez has been a sound engineer and music producer for the past twenty years and has extensive experience with digital sampling. *Declaration of Ivan A. Rodriguez, ¶3, ¶6.*

The new waveform analysis clearly shows that Aparthenonia and the Composition are almost identical. Id. at ¶15. The reports of Ritter and Rodriguez clearly show that Aparthenonia and Celebrex were created from sampling and digitally editing the Composition.

## CONCLUSION

For the reasons stated herein, Defendants' Motion should be denied in its entirety.

Dated: New York, New York
       July 22, 2005

Respectfully submitted,

<u>     s/ Paul Chin     </u>
PAUL A. CHIN, ESQ. (PC 9656)
Law Offices of Paul A. Chin
233 Broadway, 5th Floor
New York, NY 10279
(212) 964-8030
*Attorneys for Plaintiff*

To: Bruce P. Keller
Debevoise & Plimpton, LLP.
919 Third Avenue
New York, NY 1022
*Attorneys for Defendant Pfizer, Inc.*

Sara L. Edelman
Davis & Gilbert, LLP.
1740 Broadway
New York, NY 10019
*Attorneys for Defendant Publicis, Inc.*

Edward P. Kelly
Tiajoloff & Kelly
405 Lexington Avenue, 37th Floor
New York, NY 10174
*Attorneys for Defendant Fluid Music*

Samuel M. Leaf
Eric M. Stahl
1633 Broadway
New York, NY 10019
*Attorneys for Defendant East West Communications
And Brian Transeau*