UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| RALPH VARGAS and | : | **CASE NO.:** **04 CV 9772 (WHP)** |
| BLAND-RICKY ROBERTS | : | **(JCF)** |
| | : | |
| Plaintiffs | : | |
| vs. | : | ECF CASE |
| | : | |
| PFIZER INC., PUBLICIS, INC., FLUID MUSIC, | : | |
| EAST WEST COMMUNICATIONS, INC. and | : | |
| BRIAN TRANSEAU p/k/a "BT" | : | |
| | : | |
| Defendants | : | |
| | : | |

## PLAINTIFFS' RULE 56.1 STATEMENT

Pursuant to Rule 56.1(b) of the Local Rules of U.S. District Court for the Southern District of New York, Plaintiffs hereby respond to Defendant Brian Transeau's ("Defendant BT") Rule 56.1 Statement in support of his motion for summary judgment ("Defendant's Motion")[1].

1.      Plaintiffs dispute the statement that Defendant BT is an "accomplished performer" on the grounds that this description is not supported by Defendant's *Exhibit G.*

(a)      Plaintiffs further state that Defendant BT is a producer of "break beat music" and "hip-hop music" which is different from house or electronic music. *Deposition Transcript of Brian Transeau ("Transeau Dep."),at pgs. 77, 79-80.*

(b)      Notwithstanding the foregoing, Plaintiffs do not dispute the remaining facts alleged in paragraph 1 of Defendant's Rule 56.1 Statement.

---

[1] Defendant East West Communications, Inc. ("Defendant EWC") has joined in Defendant's Motion but has not separately submitted a Local Rule 56.1(a) statement.

2.      Plaintiffs dispute the facts contained in paragraph 2 of Defendant's Rule 56.1 Statement on the grounds that during his entire deposition Defendant BT never mentioned that he did not own a turntable or a record player during the time he allegedly created the infringing composition (hereinafter "*Aparthenonia*") even though he was aware that it was Plaintiffs' position that he sampled Plaintiffs' composition (hereinafter "*Bust Dat Groove*") from a digital turntable. *Transeau Dep. at pgs. 37-38 and 116.*

(a)      Plaintiffs further state that this Court cannot rely on the declaration of Michael DiMattia because Mr. DiMattia claims that he has known Defendant BT since "Feb. of 2001" and that he has personal knowledge that Defendant BT created *Aparthenonia* from "scratch;" however, Defendant BT created *Aparthenonia* in 2000, which is before Mr. DiMattia even knew Defendant BT. *See, Defendant's Exhibit T; Defendant Brian Transeau's Responses to Interrogatories ("Defendant BT's Interrogatory Resp."), No. 3.*

(b)      Notwithstanding the foregoing, the facts alleged in paragraph 2 of Defendant's Rule 56.1 Statement are included in a declaration signed by Defendant BT. *Defendant's Exhibit H.*

3.      Plaintiffs do not dispute the facts contained in paragraph 3 of Defendant's Rule 56.1 Statement.

(a)      Plaintiffs further allege that *Aparthenonia* contains the exact same instruments, musical notes, "ghost notes," and rhythm that are present in *Bust Dat Groove. Declaration of Matthew Ritter ("Ritter Decl."), ¶5-6, ¶11-17 and attached exhibit B; Deposition of Matthew Ritter ("Ritter Dep."), at pgs. 50-55, 57-59, 61-65, 70-74, 121-124.*

(b)     Plaintiffs further state that *Aparthenonia* was created by sampling or copying, and then digitally editing/manipulating, *Bust Dat Groove. Declaration of Ivan A. Rodriguez ("Rodriguez Decl."), ¶1, ¶8, ¶11-20 and "exhibit C" attached thereto; Deposition of Ivan Rodriguez ("Rodriguez Dep."), at 110-111, 125, 131, 143-150, 166-168, 172, 195-196, 225, 229, 240-243, 247-248, 275-277, 280, 290-291, 416-417.*

(c)     Plaintiffs further state that the overwhelming similarities in the frequency spectra of the musical sounds embodied in *Aparthenonia* and *Bust Dat* Groove support the conclusion that *Aparthenonia* is a digitally edited or manipulated copy of *Bust Dat Groove. Expert Report of Dr. Steven Smith ("Dr. Smith's Expert Report"), pgs. 3-5; Deposition of Dr. Steven Dr. Smith ("Dr. Smith Dep."), 78-79, 113-114, 209, 233, 235-236, 240.*

4.     Plaintiffs dispute the facts contained in paragraph 4 of Defendant's Rule 56.1 Statement to the extent that any claim by Defendant BT that he "originally" created *Aparthenonia* on his tour bus, or anywhere else, is unsupported by the overwhelming evidence that *Aparthenonia* was created by sampling or copying, and then digitally editing/manipulating, *Bust Dat Groove*.  *Rodriguez Decl, ¶1, ¶8, ¶11-20, attached exhibit C; Rodriguez Dep., at 110-111, 125, 131, 143-150, 166-168, 172, 195-196, 225, 229, 240-243, 247-248, 275-277, 280, 290-291, 416-417.*

(a)     Plaintiffs further state that *Aparthenonia* could not have been "originally" created by Defendant BT because *Aparthenonia* contains the exact same musical notes, instruments, ghost notes, rhythmic feel and sound as *Bust Dat Groove.  Ritter Decl, ¶5, ¶11-17 and attached exhibit B; Ritter Dep., at pgs. 50-55, 57-59, 61-65, 70-74, 121-124.*

(b)     Plaintiffs further state that *Aparthenonia* could not have been "originally" created by Defendant BT because the overwhelming similarities in the frequency spectra of the musical sounds embodied in *Aparthenonia* and *Bust Dat* Groove support the conclusion that *Aparthenonia* is a digitally edited or manipulated copy of *Bust Dat Groove*. *Dr. Smith's Expert Report, pgs. 3-8; Dr. Smith Dep., 78-79, 113-114, 209, 233, 235-236, 240.*

(c)     Plaintiffs further state that Defendant BT initially stated under oath that he allegedly created *Aparthenonia* on a "laptop" computer and then testified under oath that he created *Aparthenonia* on an Apple G3 computer. *Defendant BT's Interrogatory Resp. No. 5; Transeau Dep. at 140.*

(d)     Plaintiffs further state that Defendant BT initially stated under oath that it took him one hour to create, mix and master *Aparthenonia* and then subsequently testified that it only took him "5 minutes" to create *Aparthenonia* and "15" minutes to mix and master *Aparthenonia*. *Defendant BT's Interrogatory Resp., No. 5; Transeau Dep. at 150, 157.*

5.     Plaintiffs dispute the facts alleged in paragraph 5 of Defendant's Rule 56.1 Statement on the grounds that during his entire deposition Defendant BT never mentioned that the studio on the tour bus never included a turntable or a record player even though he was aware that it was Plaintiffs' position that he sampled *Bust Dat Groove* utilizing a digital turntable. *Transeau Dep. at pgs. 37-38 and 116.*

(a)     Plaintiffs further state that whether or not the tour bus had or did not have a turntable or record player is irrelevant because the evidence shows that the "source" of

the entire music embodied in *Aparthenonia* was sampled from *Bust Dat Groove.*
*Rodriguez Dep. at pgs. 55, 167.*

(b)     Plaintiffs further state that the facts alleged in paragraph 5 of Defendant's
Rule 56.1 Statement are not supported by *Defendant's Exhibit I.*

(c)     Plaintiffs further state that the declaration of Carlos Vasquez does not state
that he was present when Defendant BT allegedly created *Aparthenonia.* *See,*
*Defendants' Exhibit R.*

(d)     Plaintiffs further state that declaration of Carlos Vasquez does not indicate
the year in which Defendant BT allegedly created *Aparthenonia* or the name or date of
the tour that he accompanied Defendant BT at which time Defendant BT allegedly
created *Aparthenonia.* Id.

(e)     Plaintiffs further state that the declarations of Carlos Vasquez and Michael
DiMattia are incapable of supporting Defendant's claim of independent creation because
neither Mr. DiMattia nor Mr. Vasquez were with Defendant when *Aparthenonia* was
allegedly created in August 2000.  *Defendant BT's Interrogatory Resp. No. 3.*

6.     Plaintiffs dispute the facts alleged in paragraph 6 of Defendant's Rule 56.1
Statement on the grounds that the overwhelming evidence demonstrates that
*Aparthenonia* was created by sampling or copying, and then digitally
editing/manipulating, *Bust Dat Groove.  Rodriguez Decl, ¶1, ¶8, ¶11-20 and "exhibit C"*
*attached thereto; Rodriguez Dep., at 110-111, 125, 131, 143-150, 166-168, 172, 195-196,*
*225, 229, 240-243, 247-248, 275-277, 280, 290-291, 416-417.*

(a)     Plaintiffs further state that *Bust Dat Groove* was only available to the general public as a vinyl album.  *Deposition of Bland-Ricky Roberts ("Roberts Dep."), at 103*.

7.     Plaintiffs dispute the facts contained in paragraph 7 of Defendant's Rule 56.1 Statement on the grounds that the evidence shows that Defendant BT must have had a copy of *Bust Dat Groove* in order to make *Aparthenonia* because the identical instruments, the combination of musical elements, ghost notes, rhythm and sound embodied in *Bust Dat Groove* are also embodied in *Aparthenonia.  Ritter Decl, ¶5, ¶11-17 and "exhibit B" attached thereto; Ritter Dep., at pgs. 50-55, 56-58, 61-65, 70-74, 121-124.*

(a)  Plaintiffs further state that *Aparthenonia* was created by sampling or copying, and then digitally editing/manipulating, *Bust Dat Grove. Rodriguez Decl, ¶1, ¶8, ¶11-20, and "exhibit C" attached thereto; Rodriguez Dep., at 110-111, 125, 131, 143-150, 166-168, 172, 195-196, 225, 229, 240-243, 247-248, 275-277, 280, 290-291, 416-417.*

(b)     Plaintiffs further state that there is extremely strong evidence that *Aparthenonia* is a digitally edited or manipulated copy of *Bust Dat* Groove.  *Dr. Smith's Expert Report, pgs. 3-8; Dr. Smith Dep., 78-79, 113-114, 209, 233, 235-236, 240.*

8.     Plaintiffs dispute the facts alleged in paragraph 8 of Defendant's Rule 56.1 Statement on the grounds that Defendant Transeau stated under oath that he used a laptop computer to allegedly create *Aparthenonia.  Defendant BT's Interrogatory Resp., No. 5.*

(a)     Plaintiffs further dispute the facts alleged in paragraph 8 of Defendant's Rule 56.1 Statement on the grounds that there is extremely strong evidence that *Aparthenonia* was created by sampling or copying, and then digitally

editing/manipulating, *Bust Dat Groove. Rodriguez Decl, ¶1, ¶8, ¶11-20 and "exhibit C" attached thereto; Rodriguez Dep., at 110-111, 125, 131, 143-150, 166-168, 172, 195-196, 225, 229, 240-243, 247-248, 275-277, 280, 290-291, 416-417.*

9.      Plaintiffs dispute the facts alleged in paragraph 9 of Defendant's Rule 56.1 Statement on the grounds that Defendant BT has not produced a copy of the software program Propellerhead Reason ("Reason"), although requested to do so on numerous occasions by Plaintiffs. *Plaintiffs' First Request for Documents and Things ("Defendant BT's Resp. to Doc. Demands"). N*

(a)      Plaintiffs further state that Defendant BT could not identify the drum sounds (described by Defendant BT as "percussion elements") he allegedly extracted from Reason in order to create *Aparthenonia*, although asked to do so by Plaintiffs. *Transeau Dep. at 151-154.*

(b)      Plaintiffs further state that Defendant BT has not demonstrated, through any of his experts, that the drums sounds he extracted from Reason are the same as, or similar to, the drum sounds embodied in *Aparthenonia. Confidential Portion of Transeau Dep., at 104.*

(c)      Plaintiffs further state that the exact same instruments, combination of musical notes, ghost notes, rhythm, and drumming nuances contained in *Bust Dat Groove* are also contained in *Aparthenonia* precluding any claim by Defendant BT that the drum sounds in *Aparthenonia* originated from Reason. *Ritter Decl, ¶5, ¶11-17 and "exhibit B" attached thereto; Ritter Dep., at pgs. 50-55, 56-58, 61-65, 70-74, 121-124, 226, 248-251.*

(d)      Plaintiffs further state that the overwhelming similarities in the frequency spectra of the musical sounds embodied in *Aparthenonia* and *Bust Dat* Groove support

the conclusion that *Aparthenonia* is a digitally edited or manipulated copy of *Bust Dat Groove* and that the two musical works are almost indistinguishable from each other. *Dr. Smith's Expert Report, pgs. 3-8; Dr. Smith Dep., 78-79, 113-114, 209, 233, 235-236, 240.*

10. Plaintiffs dispute the facts alleged in paragraph 10 of Defendant's Rule 56.1 Statement on the grounds that *Aparthenonia* is a one bar pattern lasting approximately nine seconds. *See, Defendant's Exhibit J, ¶14.*

11. Plaintiffs dispute the facts alleged in paragraph 11 of Defendant's Rule 56.1 Statement on the grounds that Aparthenonia*, like *Bust Dat Groove*, contains a high-hat, snare drum, bass drum, multiple bounce strokes, and "ghost notes." *Ritter Decl, ¶5, ¶11-17.*

(a) Plaintiffs further state that the facts alleged in paragraph 11 are not supported by *Ritter Decl. at "exhibit B" attached thereto.*

(b) Plaintiffs further state that the declaration and report of Defendant BT's musical expert, Anthony Ricigliano ("Ricigliano"), is completely flawed and totally unreliable. *Ritter Decl, ¶18-30.*

(c) Plaintiffs further state that the drumming technique employed in *Bust Dat Groove,* and therefore also employed in *Aparthenonia*, is not rudimentary. *Ritter Decl, ¶ 5-6; Ritter Dep., 202-203, 217-218, 226, 248-251.*

12. Plaintiffs dispute the facts alleged in paragraph 12 of Defendant's Rule 56.1 Statement to the extent that Defendant BT must have had a copy of *Bust Dat Groove* prior to the time he "created" *Aparthenonia* because the overwhelming evidence demonstrates that *Aparthenonia* was created by sampling or copying, and then digitally editing/manipulating, *Bust Dat Groove. Rodriguez Decl, ¶1, ¶8, ¶11-20 and "exhibit C"*

*attached thereto; Rodriguez Dep., at 110-111, 125, 131, 143-150, 166-168, 172, 195-196, 225, 229, 240-243, 247-248, 275-277, 280, 290-291, 416-417; Roberts Dep. at 30.*

(a)     Notwithstanding the foregoing, Plaintiffs state that the facts alleged in paragraph 12 of Defendant's Rule 56.1 Statement are included in the declaration signed by Defendant BT. *Defendant's Exhibit H.*

13.     Plaintiffs do not dispute the facts alleged in paragraph 13 of Defendant's Rule 56.1 Statement.

14.     Plaintiffs do not dispute the facts alleged in paragraph 14 of Defendant's Rule 56.1 Statement.

15.     Plaintiffs dispute the facts alleged in paragraph 15 of Defendant's Rule 56.1 Statement to the extent that documentary evidence identifying the various companies that distributed *Funky Drummer Volume II ("FD II")* throughout the United States was produced to Defendant BT. *Plaintiffs' Document Bates Stamped No. 000017; Roberts Dep. at 55, 58, 65, 160, 206-207, 211-213.*

16.     Plaintiffs dispute the facts alleged in paragraph 16 of Defendant's Rule 56.1 Statement on the grounds that Defendant BT, in addition to Plaintiff Vargas, also had a copy of *Bust Dat* because the evidence demonstrates that *Aparthenonia* was created by sampling or copying, and then digitally editing/manipulating, *Bust Dat Groove. Rodriguez Decl, ¶1, ¶8, ¶11-20 and "exhibit C" attached thereto; Rodriguez Dep., at 110-111, 125, 131, 143-150, 166-168, 172, 195-196, 225, 229, 240-243, 247-248, 275-277, 280, 290-291, 416-417; Roberts Dep. at 30.*

(a)     Plaintiffs further state that Defendant BT, in addition to Plaintiff Vargas, also had a copy of *Bust Dat* because the overwhelming similarities in the frequency

spectra of the musical sounds embodied in *Aparthenonia* and *Bust Dat* Groove support the conclusion that *Aparthenonia* is a digitally edited or manipulated copy of *Bust Dat Groove* and that the two musical works are almost indistinguishable from each other.. *Dr. Smith's Expert Report, pgs. 3-8; Dr. Smith Dep., 78-79, 113-114, 209, 233, 235-236, 240.*

17.     Plaintiffs dispute the facts alleged in paragraph 17 of Defendant's Rule 56.1 Statement only to the extent that two documents were presented to Defendant BT identifying the distributors of *FD II*. *Plaintiffs' Document Bates Stamped Nos.000003 and 000017.*

18.     Plaintiffs do not dispute the facts contained in paragraph 18 of Defendant's Rule 56.1 Statement.

19.     Plaintiffs do not dispute the facts contained in paragraph 19 of Defendant's Rule 56.1 Statement.

20.     Plaintiffs do not dispute the facts alleged in paragraph 20 of Defendant's Rule 56.1 Statement except to the extent that *FD II* was distributed by INDI Distribution, which distributed records to retailers located in California. *Plaintiffs' Document Bates Stamped Nos. 000003 and 000017; Roberts Dep. at 58.*

21.     Plaintiffs dispute the facts alleged in paragraph 21 of Defendant's Rule 56.1 Statement on the grounds that *FD II* was distributed and sold for several months, from approximately January/February 1994 to April 1994, in retail record stores around the United States and overseas as well as in mom and pop record stores. *Plaintiffs' Document Bates Stamped Nos. 000003 and 000017; Roberts Dep. at 55, 58, 65, 160, 206-207, 211-213.*

22.     Plaintiffs dispute the facts alleged in paragraph 22 of Defendant's Rule 56.1 State on the grounds that Defendant BT must have had a copy of, or access to, *FD II* because the evidence shows that *Aparthenonia* was created by sampling or copying, and then digitally editing/manipulating, *Bust Dat Groove,* which was embodied on *FD II. Rodriguez Decl, ¶1, ¶8, ¶11-20 and "exhibit C" attached thereto; Rodriguez Dep., at 110-111, 125, 131, 143-150, 166-168, 172, 195-196, 225, 229, 240-243, 247-248, 275-277, 280, 290-291, 416-417; Roberts Dep. at 30; Plaintiffs' Second Amended Complaint ("Complaint"), ¶18.*

        (a)     Plaintiffs further state that Defendant BT must have had a copy of, or access to, *FD II* because the overwhelming evidence shows that *Aparthenonia* is a digitally edited or manipulated copy of *Bust Dat Groove,* which was embodied on *FD II. Dr. Smith's Expert Report, pgs. 3-8; Dr. Smith Dep., 78-79, 113-114, 209, 233, 235-236, 240; Complaint, ¶18.*

        (b)     Notwithstanding the foregoing, Plaintiffs state that the facts alleged in paragraph 22 of Defendant's Rule 56.1 Statement are contained in the declarations signed by Defendant BT.  *Defendant's Exhibit G.*

23.     Plaintiffs dispute the facts alleged in paragraph 23 of Defendant's Rule 56.1 State on the grounds that Defendant BT must have had a copy of, or access to, *Bust Dat Groove* because the evidence shows that *Aparthenonia* was created by sampling or copying, and then digitally editing/manipulating, *Bust Dat Groove.  Rodriguez Decl, ¶1, ¶8, ¶11-20 and "exhibit C" attached thereto; Rodriguez Dep., at 110-111, 125, 131, 143-150, 166-168, 172, 195-196, 225, 229, 240-243, 247-248, 275-277, 280, 290-291, 416-417; Roberts Dep. at 30.*

(a)     Plaintiffs further state that Defendant BT must have had a copy of, or access to, *Bust Dat Groove* because the overwhelming evidence shows that *Aparthenonia* is a digitally edited or manipulated copy of *Bust Dat Groove.  Dr. Smith's Expert Report, pgs. 3-8; Dr. Smith Dep., 78-79, 113-114, 209, 233, 235-236, 240.*

(b)     Notwithstanding the foregoing, Plaintiffs state that the facts alleged in paragraph 23 of Defendant's Rule 56.1 Statement are contained in the declarations signed by Defendant BT.  *Defendant's Exhibit G.*

24.     Plaintiffs dispute the facts alleged in paragraph 24 of Defendant's Rule 56.1 Statement on the grounds that Defendant Transeau, during his deposition, could not remember: (i) when he left high school; (ii) when he began Berklee School of Music; (iii) when he finished Berklee School of Music; (iv) when he lived in Los Angeles; (v) when he lived in Maryland; or (vi) what month in 1994 he moved to England.  *Transeau Depo., 12-13, 67-71.*

(a)     Plaintiffs further state that there is no evidence that Defendant BT lived in England during the period in which *FD II* was released and sold.

25.     Plaintiffs are without sufficient information to dispute the facts alleged in paragraph 25 of Defendant's Rule 56.1 Statement.

(a)     Plaintiffs further state that the facts alleged in paragraph 25 of Defendant's Rule 56.1 Statement are not material to any issue in this action.

26.     Plaintiffs dispute the facts alleged in paragraph 26 of Defendant's Rule 56.1 Statement on the grounds that 4,000 copies of *FD II* were manufactured.  *Roberts Dep. at 111.*

(a)     Plaintiffs further state that Plaintiffs initial manufactured 1,500 copies of *FD II.  Plaintiff Vargas Deposition Transcript ("Vargas Depo.") at 204-205.*

(b)     Plaintiffs further state that Plaintiff Vargas only knew of the initial number of manufactured copies of *FD II* and that Plaintiff Roberts knew of the exact number of copies of *FD II* that were manufactured.  <u>Id</u>.

27.     Plaintiffs dispute the facts alleged in paragraph 27 of Defendant's Rule 56.1 Statement on the grounds that *Bust Dat Groove* contains a high-hat, snare drum, bass drum, multiple bounce strokes, and "ghost notes." *Ritter Decl, ¶5, ¶11-17.*

28.     Plaintiffs dispute the facts alleged in paragraph 28 of Defendant's Rule 56.1 Statement on the grounds that *FD II and Bust Date Groove* were created for use by "hip hop" producers, production companies, production houses, disc jockeys and remixers. *Roberts Depo. at 97-98; Vargas Dep. at 113.*

29.     Plaintiffs dispute the facts alleged in paragraph 29 of Defendant's Rule 56.1 Statement on the grounds that the Fast Fourier Transform ("FFT") frequency spectral analysis of sounds is an appropriate method for determining whether or not *Aparthenonia* is a digitally edited or manipulated copy of *Bust Dat Groove.  Dr. Smith Dep. at 63, 80.*

(a)     Plaintiffs further state that the analysis and results presented by Rodriguez (i.e. Plaintiffs' sound engineer/sampling expert) are very credible and compelling.  *Dr. Smith's Initial Report at bates number 000040A-000040B.*

(b)     Plaintiffs further state that the conclusions and opinions contained in the report of Defendant BT's expert, Dr. Richard Boulanger ("Boulanger"), dated January 31, 2006 (hereinafter "Boulanger's Report"), is flawed, incorrect, and completely unreliable because Boulanger failed to conduct a fair and impartial comparison between

*Aparthenonia* and *Bust Dat Groove.* *Dr. Smith's Dep. at 78, 147-148, 150, 155-156, 222-223,229-230, 239; Dr. Smith's Expert Report. at pg. 4.*

(c)     Plaintiffs further state that Boulanger's subjective conclusions do not flow from his data. *Dr. Smith's Dep.* at *222-223, 229-230.*

30.     Plaintiffs do not dispute the facts alleged in paragraph 30 of Defendant's Rule 56.1 Statement.

31.     Plaintiffs dispute the facts alleged in paragraph 31 of Defendant's Rule 56.1 Statement on the grounds that "direct copies" would be difficult, if not impossible, to locate. *Dr. Smith's Expert Report at pg. 4; Dr. Smith Dep. at 180.*

(a)     Plaintiffs further state that Dr. Smith concluded that in order for *Aparthenonia* not to be a digitally edited or manipulated copy of *Bust Dat Groove* it would mean that different drummers, using different instruments, and at different points in time produced the drum strikes in *Aparthenonia* that are indistinguishable from the drum strikes in *Bust Dat Groove.* *Dr. Smith's Expert Report at pgs. 5-8; Dr. Smith Dep. at 234-235.*

(b)     Plaintiffs further state that the FFT frequency spectra of *Aparthenonia* and *Bust Dat Groove* are an excellent match. *Dr. Smith Dep.* at *64-65.*

(c)     Plaintiffs further state that the similarities in the FFT frequency spectra of the drum sounds in *Aparthenonia* and *Bust Dat Groove* are such that any claim that the sounds did not come from the same instrument would be unbelievable. Id. at *113-114.*

(d)     Plaintiffs further state that the evidence that the drum sounds in *Aparthenonia* and *Bust Dat Groove* came from the same instrument is overwhelming. Id. at *114.*

(e)     Plaintiffs further state that the conclusions and opinions contained in Boulanger's Report are flawed, incorrect, and completely unreliable because Boulanger failed to conduct a fair and impartial comparison between *Aparthenonia* and *Bust Dat Groove*.   *Dr. Smith's Dep. at 78, 147-148, 150, 155-156, 222-223,229-230, 239; Dr. Smith's Expert Report. at pg. 4.*

(f)     Plaintiffs further state that Defendant BT's submission of a second report from Boulanger dated September 21, 2006 ("Boulanger's Second Report") cannot be considered by this Court because discovery in this case concluded on August 15, 2006. *Second Revised Scheduling Order.*

(g)     Plaintiffs further state that Boulanger's Second Report is not a "rebuttal report" given the fact that Dr. Smith's Initial Report was produced to Defendant BT on March 3, 2006 and Dr. Smith's Expert Report was produced to Defendant BT on or about March 20, 2006. *Dr. Smith's Initial Report; Dr. Smith's Expert Report.*

(h)     Plaintiffs further state that this Court should not consider Boulanger's Second Report because it was produced to Plaintiffs on the original deadline date for Defendant BT's submission of his motion for summary judgment, i.e. September 22, 2006. *Letter from Defendant BT's attorneys dated September 22, 2006 ("Letter 1").*

32.     Plaintiffs dispute the facts alleged in paragraph 32 of Defendant's Rule 56.1 Statement on the grounds that Dr. Smith has had three years of graduate school training in digital signal processing, one-half of which involved FFT frequency spectral analysis; has spent the last 20 years developing instrumentation, much of which uses FFT techniques; and is the author of a digital signal processing textbook in which approximately 315 pages discuss FFT. *Dr. Smith Dep. at 219.*

(a)     Dr. Smith was qualified to analyze and critique Boulanger's Report.  Id. at 220.

(b)     Plaintiffs further state that the overwhelming majority of the information Dr. Smith used in forming the opinions and conclusions contained in his expert report were derived from the data contained in Boulanger's Report. Id. *at 221*.

(c)     Plaintiffs further state that the data contained in Boulanger's Report was exclusively derived from no more than the first 2.3 seconds of the first-bar of drum music (identified in Boulanger's Report as "1-bar loop") in *Aparthenonia* and *Bust Dat Groove*. *Boulanger's Report at Figs. 1-36; Dr. Smith Dep., 175, 221; Dr. Smith's Expert Report* at *pg.* 2.

(d)     Plaintiffs further state that Dr. Smith believed an analysis of the raw data of the 2.3 seconds of the first bar of drum music in *Aparthenonia* and *Bust Dat Groove,* contained in Boulanger's report, was sufficient to conduct an appropriate FFT frequency spectral analysis.  *Dr. Smith's Expert Report at pg. 2; Dr. Smith Dep. at 221, 224-225.*

(e)     Plaintiffs further state that Dr. Smith concluded that in order for *Aparthenonia* not to be a digitally edited or manipulated copy of *Bust Dat Groove* it would mean that different drummers, using different instruments, and at different points in time produced the drum strikes in *Aparthenonia* that are indistinguishable from the drum strikes in *Bust Dat Groove*.  *Dr. Smith's Expert Report at pgs. 5-8; Dr. Smith Dep. at 234-235.*

(d)     Notwithstanding the forgoing, Plaintiffs do not dispute that Dr. Smith has no musical training.

33. Plaintiffs dispute the facts contained in paragraph 33 of Defendant's Rule 56.1 Statement on the grounds that Defendant BT's attorney created the definition of "exact copies" during Dr. Smith's deposition. *Dr. Smith Depo. at 67-69.*

34. Plaintiffs dispute the facts alleged in paragraph 34 of Defendant's Rule 56.1 Statement on the grounds that Defendant BT's attorney attempted to use numerous adjectives in order to define the term "exact copy" and Dr. Smith clearly stated that he would use the word "exact copy" instead of "identical." <u>Id</u> . at 64-68.

35. Plaintiffs dispute the facts alleged in paragraph 35 of Defendant's Rule 56.1 Statement on the grounds that Dr. Smith describes "direct copies" as an exact copy of a recording of a sequence of drum strikes which have not been re-arranged via digitally editing and/or manipulation; and that the only difference between the original sequence of drum strikes and the exact copy of the sequence of drum strikes, which have not been re-arranged via digital editing and/or manipulation, would be "whatever degradation is introduced by the copying procedure, which we will assume is negligible." *Dr. Smith's Expert Report at pg. 4.*

36. Plaintiffs dispute the facts contained in paragraph 36 of Defendant's Rule 56.1 Statement on the grounds that Dr. Smith defines "associated copies" as the successive drum strikes made by the same drummer on the same drum instrument in rapid succession. <u>Id</u>.

(a) Plaintiffs further state that Dr. Smith makes the point that the successive drum strikes would not be identical but extremely similar to one another. *Dr. Smith's Expert Report at pg. 4.*

(b)     Plaintiffs further states that both Dr. Smith and Boulanger only analyzed, at most, 2.3 seconds of the first bar of drum music contained in *Aparthenonia* and *Bust Dat Groove.  Dr. Smith's Expert Report at pg. 2; Boulanger's Report at Figs.1-36*

(c)     Plaintiffs further state that Boulanger's Report indicates that Boulanger only analyzed approximately 0.023197 seconds of the first bar of drum music in *Aparthenonia* and *Bust Dat Groove.  Boulanger's Report at Figs. 27 and 28.*

(d)      Plaintiffs further state that Dr. Smith explains that if Defendant BT's claim of independent creation were valid, the successive rum strikes in *Bust Dat Groove* should appear significantly different than the successive drum strikes in *Aparthenonia. Dr. Smith's Expert Report at pg 4.*

(e)     Plaintiffs further state that Dr. Smith concludes that the successive drum strikes in *Aparthenonia* and *Bust Dat Groove* are so similar that they are indistinguishable from each other, i.e. associated copies.  <u>Id</u>. at *pgs. 5-8.*

37.     Plaintiffs dispute the facts alleged in paragraph 37 of Defendant's Rule 56.1 Statement on the grounds that Dr. Smith determined that the successive drum strikes in *Aparthenonia* and *Bust Dat Groove* are so similar that they are indistinguishable from each other, i.e. associated copies.  <u>Id</u>.

(a)     Plaintiffs further state that Dr. Smith concluded that the FFT frequency spectra of the drum sounds of *Aparthenonia* and *Bust Dat Groove* were not identical but an excellent match.  *Dr. Smith Depo. at 64-65.*

(b)     Plaintiffs further state that based on Dr. Smith's analysis of Boulanger's data the evidence was extremely strong that *Aparthenonia* is an electronic copy of *Bust Dat Groove.*  <u>Id</u>. at *78.*

38.     Plaintiffs dispute the facts alleged in paragraph 38 of Defendant's Rule 56.1 Statement only to the extent that Dr. Smith stated that in his analysis of Boulanger's data he could not possibly find exact matches because the copy of *Bust Dat Groove* was created from vinyl which would have a certain amount of noise that would preclude any such finding.  *Dr. Smith Depo. at 161.*

39.     Plaintiffs dispute the facts alleged in paragraph 39 of Defendant's Rule 56.1 Statement on the grounds that Dr. Smith testified that the editing procedure destroys the ability to detect direct copies.  *Dr. Smith's Expert Report at pg. 4.*

40.     Plaintiffs dispute the facts alleged in paragraph 40 of Defendant's Rule 56.1 Statement on the grounds that there is no evidence to support these facts and these facts are not supported by Dr. Smith's Expert Report or Dr. Smith's deposition transcript.  *See, Defendant BT's Exhibit M at pgs. 4-5; Defendant BT's Exhibit L at 174 and 178.*

        (a)     Plaintiffs further state that Dr. Smith concluded that it was an impossible task to discern the difference between the FFT frequency spectra of two drum strikes from *Bust Dat Groove* and the FFT frequency spectra of one drum strike from *Aparthenonia.  Dr. Smith's Expert Report pgs. 4-5 and 8; Dr. Smith Dep. at 235.*

        (b)     Plaintiffs further state that Dr. Smith explained that based on the data contained in Boulanger's Report he could not have possibly found exact copies between *Aparthenonia* and *Bust Dat Groove.  Dr. Smith  Depo. at 161.*

41.     Plaintiffs dispute the facts alleged in paragraph 41 of Defendant's Rule 56.1 Statement on the grounds that Dr. Smith's Expert Report was based on the data contained in Boulanger's Report which only compared, at the most, 2.3 seconds of the first loop of

drum music in *Aparthenonia* and *Bust Dat Groove*. *Dr. Smith's Expert Report pgs. 2 and 6; Boulanger's Report at Figs. 1-36*

(a)     Plaintiffs further state Dr. Smith believed an analysis of the raw data on the 2.3 seconds of the first loop of drum music in *Aparthenonia* and *Bust Dat Groove,* contained in Boulanger's report, was sufficient to conduct an appropriate FFT frequency spectral analysis. *Dr. Smith's Expert Report at pg. 2; Dr. Smith Dep. at 221, 224-225.*

(b)     Plaintiffs further state that neither Dr. Smith nor Boulanger did an FFT frequency spectral analysis of any of the individual drum strikes contained in the repeating loops of drum music (i.e. the drum strikes occurring after the 2.3 seconds of the first loop of drum music) in *Aparthenonia* and *Bust Dat Grove*. *Dr. Smith Dep., 175; Dr. Smith's Expert Report pgs. 2 and 6; Boulanger's Report at Figs. 1-36.*

(c)     Plaintiffs further state that Dr. Smith's assumption that 26 of the 27 bars in *Bust Dat Groove* were made by a drummer playing each bar over and over is irrelevant because the FFT frequency spectral analysis conducted by him and Boulanger pertained, at most, only to 2.3 seconds of the first loop of drum music contained in *Aparthenonia* and *Bust Dat Groove*. Id.

42.     Plaintiffs dispute the facts alleged in paragraph 42 of Defendant's Rule 56.1 Statement only to the extent that *Bust Dat Groove* is one bar of drumming music, lasting approximately 2.3 seconds, which has been repeated. *Vargas Depo. at 131; Dr. Smith's Expert Report pgs. 2 and 6; Boulanger's Report at Figs. 1-36.*

43.     Plaintiffs dispute the facts contained in paragraph 43 of Defendant's Rule 56.1 Statement on the grounds that the only "difference" in the sounds of *Aparthenonia* and *Bust Dat Groove* is either reverb of digital signal processing, which only effects the

quality of the recording not the sounds of the drums themselves. *Rodriguez Dep. at 244, 390-395.*

(a) Plaintiffs state that the conclusions and opinions contained in Boulanger's Report are flawed, incorrect, and completely unreliable because Boulanger failed to conduct a fair and impartial comparison between *Aparthenonia* and *Bust Dat Groove*. *Dr. Smith's Dep. at 78, 147-148, 150, 155-156, 222-223,229-230, 239.*

(b) Plaintiffs further state that Boulanger's subjective conclusions do not flow from his data. Id. at *222-223, 229-230.*

(c) Plaintiffs further state that *Aparthenonia* and *Bust Dat Groove* are so much alike that Rodriguez was able to line up the snare drums from each and the sounds "flanged," i.e. cancelled each other out because two identical sounds can't occupy the same audio space. *Rodriguez Dep.* at *240-243.*

(d) Plaintiffs further state that the kick drum and snare drum in both *Aparthenonia* and *Bust Dat Groove* are identical. Id. at *131.*

(e) Plaintiffs further state that the "drum roll" in both *Aparthenonia* and *Bust Dat Groove* are identical. Id. at *146.*

44. Plaintiffs dispute the facts contained in paragraph 44 of Defendant's Rule 56.1 Statement on the grounds that the "difference" in tempo between *Aparthenonia* and *Bust Dat Groove* is about .1 or .2 bpm, which is negligible and which was done during the digital editing/manipulation process. Id. at *254.*

45. Plaintiffs dispute the facts alleged in paragraph 45 of Defendant's Rule 56.1 Statement on the grounds that the drum roll, snare, kick bass drum, hi-hat, cymbals, ghost notes in both *Aparthenonia* and *Bust Dat Groove* are the same. Id. at *127, 131, 146, 149,*

*275-276; Ritter Decl, ¶5, ¶11-17 and attached exhibit B; Ritter Dep., at pgs. 50-55, 57-59, 61-65, 70-74, 121-124; Dr. Smith's Expert Report, pgs. 3-5; Dr. Smith Dep, 78-79, 113-114, 209, 233, 235-236, 240.*

46.     Plaintiffs dispute the facts alleged in paragraph 46 of Defendant's Rule 56.1 Statement on the grounds that Rodriguez stated that he had a copy of Reason on his Pro Tools software at home, was familiar with Reason and how it works. *Rodriguez Dep. at 180-182.*

(a)     Plaintiffs further state that Defendant BT could not identify the drum sounds (described by Defendant BT as "percussion elements") he allegedly extracted from Reason in order to create *Aparthenonia*, although asked to do so by Plaintiffs. *Transeau Dep. at 151-154.*

(b)     Plaintiffs further state that Defendant BT has not demonstrated, through any of his experts, that the drums sounds he extracted from Reason are the same as, or similar to, the drum sounds embodied in *Aparthenonia*. *Confidential Portion of Transeau Dep., at 104.*

(c)     Plaintiffs further state that the exact same instruments, combination of musical notes, ghost notes, rhythm, and drumming nuances contained in *Bust Dat Groove* are also contained in *Aparthenonia* precluding any claim by Defendant BT that the drum sounds in *Aparthenonia* originated from Reason. *Ritter Decl, ¶5, ¶11-17 and "exhibit B" attached thereto; Ritter Dep., at pgs. 50-55, 56-58, 61-65, 70-74, 121-124, 226, 248-251.*

(d)     Plaintiffs further state that the overwhelming similarities in the frequency spectra of the musical sounds embodied in *Aparthenonia* and *Bust Dat* Groove support the conclusion that *Aparthenonia* is a digitally edited or manipulated copy of *Bust Dat*

*Groove* and that the two musical works are almost indistinguishable from each other. *Dr. Smith's Expert Report, pgs. 3-8; Dr. Smith Dep., 78-79, 113-114, 209, 233, 235-236, 240.*

47.     Plaintiffs dispute the facts alleged in paragraph 47 of Defendant's Rule 56.1 Statement on the grounds that Rodriguez stated that he had a copy of Reason on his Pro Tools software at home, was familiar with Reason and how it works. *Rodriguez Dep. at 180-182.*

(a)     Plaintiffs further state that Rodriguez has been a music producer and sound recording-mixing engineer for the past twenty years and has received 20 Gold Albums, 5 Platinum Albums and 2 Double Platinum Albums. *Rodriguez Decl. ¶2.*

(b)     Plaintiffs further state that if Defendant BT produced the "master," which contains a multi-track of the various individual instruments in a record, of *Aparthenonia* this would isolate all of the musical elements and a conclusive determination could be made as to whether or not Defendant BT used *Bust Dat Groove* to create *Aparthenonia.* *Rodriguez Dep. at 231-232, 268-270, 281-282; 364-366; 403-404*

(c)     Plaintiffs further state that it is amazing that Defendant BT does not have the "master" of *Aparthenonia.* Id. at *373.*

(d)     Plaintiffs further state that in the music industry the company manufacturing a musical album (in this case Defendant EWC) wants the "master" to protect themselves so if litigation comes up they have proof in their hands. Id. at *377.*

(e)     Plaintiffs further state that Defendant BT does not have the "master" for *Aparthenonia. Defendant BT's Interrogatory Resp. No. 10.*

48.     Plaintiffs dispute the facts contained in paragraph 48 of Defendant's Rule 56.1 Statement on the grounds that after recreating the sampling and editing process

Rodriguez proved that Defendant BT undertook, Rodriguez concluded that the two compositions were so similar that parts of the compositions began to "flange," i.e. cancel out certain sounds (e.g. snare drums, kick drums, etc.) that are identical. *Rodriguez Depo.at 242-243, 289-290, 421-422; Rodriguez Decl. ¶11-19 and attached exhibit C.*

(a)     Plaintiffs further state that Rodriguez credibly demonstrated how Defendant BT sampled and then edited/manipulated *Bust Dat Groove* to create *Aparthenonia*. Id. *at 225,284-285, 289-292; Rodriguez Dec. ¶11-19 and "exhibit C" attached thereto; Dr. Smith's Initial Report, bates numbers 000040A-000040B.*

(b)     Plaintiffs further state that Rodriguez concluded, in no uncertain terms, that *Aparthenonia* could not be made without sampling *Bust Dat Groove* and that the two were 98% the same. *Rodriguez Depo. at 195-196.*

(c)     Plaintiff further states that Rodriguez prepared a graph of *Aparthenonia* and the digitally edited/manipulated version of *Bust Dat Groove* which are almost identical. Id. *at 246; Rodriguez Decl. ¶9-10 and "exhibit B" attached thereto.*

49.     Plaintiffs do not dispute the facts alleged in paragraph 49 of Defendant's Rule 56.1 Statement.

50.     Plaintiffs do not dispute the facts alleged in paragraph 50 of Defendant's Rule 56.1 Statement.

51.     Plaintiffs dispute the facts contained in paragraph 51 of Defendant's Rule 56.1 Statement on the grounds that Ritter was able to identify Plaintiff Vargas' drumming. Id. *at 273-275.*

52.     Plaintiffs dispute the facts contained in paragraph 51 of Defendant's Rule 56.1 Statement on the grounds that when Defendant BT's attorney played each track from *FD*

*II* this "test" was flawed because: (i) the speakers through which the music was playing had significant static in the speakers; (ii) Defendant BT's attorneys could not provide Ritter with any headphones that worked; (iii) the cd containing the music contained buzzing and other distortions to prevent a fair analysis of the musical works by Ritter; (iv) the poor quality of either the recording of the music or Defendant BT's attorney's laptop or cd player precluded any kind of adequate or fair analysis; and (v) one of the musical tracks even contained children laughing in the background. *Ritter Depo. at 238-242, 245-247, 252-254, 259, 262, 265.*

53.     Plaintiffs object to the facts alleged in paragraph 53 as they do not pertain to a material issue fact and therefore no further response is required.

54.     Plaintiffs dispute the facts alleged in paragraph 54 of Defendant's Rule 56.1 Statement on the grounds that the "differences" Ritter stated he heard was that "in every instance it sounded like the same thing to me, but one of them sounds like a clearer recording.  One of them sounds more muffled than the other." *Ritter Depo. at 139-141.*

55.     Plaintiffs do not dispute the facts contained in paragraph 55 of Defendant's Rule 56.1 Statement.

56.     Plaintiffs dispute the facts contained in paragraph 56 of Defendant's Rule 56.1 Statement on the grounds that the intended audience for *FD II* was "hip hop" producers, production companies, production houses, disc jockeys and remixers. *Roberts Depo. at 97-98; Vargas Dep. at 113.*

57.     Plaintiffs dispute the facts contained in paragraph 57 of Defendant's Rule 56.1 Statement on the grounds that Defendant BT is a producer of "break beat music" which is different from house or electronic music. *Transeau Dep. at pgs. 77 and 79.*

(a)     Plaintiffs further state that Defendant BT is a producer of "hip-hop music." <u>Id</u>. *at 80.*

58.     Plaintiffs dispute the facts alleged in paragraph 58 of Defendant's Rule 56.1 Statement on the grounds that the main distribution of *FD II* was through large distribution conglomerates including, INDI Distribution, California Record Distributors, Big State and Malvern all of which were national and international record distributors and which sold to small record stores and retail chains like Tower records. *Roberts Dep. at 58, 65.*

(a)     Plaintiffs further state that *FD II* was distributed internationally to England, France and Germany through Tiger Distribution. <u>Id</u>. at *212-213.*

59.     Plaintiffs dispute the facts alleged in paragraph 59 of Defendant's Rule 56.1 Statement on the grounds that Plaintiffs document number 000017 also contain a list of distributors.

60.     Plaintiffs dispute the facts alleged in paragraph 60 of Defendant's Rule 56.1 Statement on the grounds that Defendant BT could not even identify the drum sounds (described by Defendant BT as "percussion elements") he allegedly extracted from Reason. *Transeau Dep. at 151-154.*

(a)     Plaintiffs further state that neither Defendant BT nor his attorneys could demonstrate that any of their experts had conducted any analysis of the drum sounds he would allegedly extract from Reason are the same as, or similar to, the drum sounds embodied in *Aparthenonia. Confidential Portion of Transeau Dep., at 104.*

(b)     Plaintiffs further state that there was no proof that Defendant BT would be re-creating *Aparthenonia* from stock sounds contained in Reason because Defendant BT

and his attorneys previously stated that Defendant BT no longer had a copy of the Reason program he used to *allegedly* create *Aparthenonia.  E-mail 2; E-mail 4.*

(b)     Notwithstanding the foregoing, Plaintiffs' counsel did not allow Defendant BT to conduct a performance of how he allegedly created *Aparthenonia* since any such demonstration obviously served no purpose.

61.     Plaintiffs dispute the facts alleged in paragraph 61 of Defendant's Rule 56.1 Statement on the grounds that Defendant BT's attorneys, until the day of or the day before Defendant BT's deposition, claimed that Defendant BT lost or could not find the computer on which he allegedly recorded *Aparthenonia. E-mail 2.*

(a)     Defendant Transeau stated under oath that he allegedly created *Aparthenonia* on a "laptop" and then changed his testimony during his deposition that he created *Aparthenonia* on a Mac G3 computer.  *Defendant BT's Interrogatory Resp., No. 5; Transeau Dep. at 158;*

(b)     Plaintiffs further state that Defendant BT was unable to identify the drum sounds he allegedly extracted from Reason to create *Aparthenonia. Transeau Dep. at 151-154.*

Dated: New York, New York
          October 12, 2006                              Respectfully submitted,

                                                    _____
                                                        s/ Paul Chin
                                                    Paul A. Chin, Esq. (PC 9656)
                                                    LAW OFFICES OF PAUL A. CHIN
                                                    The Woolworth Building
                                                    233 Broadway, 5th Floor
                                                    New York, NY 10279
                                                    (212) 964-8030
                                                    *Attorneys for Plaintiff*

To:    Julie Ahrens, Esq.
Kirkland & Ellis, LLP
555 California Street, Suite 2700
San Francisco, CA 94104
*Counsel for Defendant Transeau*

David S. Olson, Esq.
Center for Internet and Society
Stanford Law School
559 Nathan Abbott Way
Stanford, CA 94305-8610
*Counsel for Defendant Transeau*

Eric M. Stahl, Esq.
Davis Wright Tremaine, LLP
1501 4th Avenue, Suite 2600
Seattle, WA 98101-1688
*Counsel for Defendant East West Communications*

## CERTIFICATE OF SERVICE

On the 12th day of October, 2006, a true and correct copy of the PLAINTIFFS' RULE 56.1(b) STATEMENT PURSUANT TO THE LOCAL RULES OF THE SOUTHERN DISTRICT COURT OF NEW YORK was served via priority mail, with delivery confirmation, postage pre-paid to the following attorneys representing the Defendants:

> Julie Ahrens, Esq.
> Kirkland & Ellis, LLP
> 555 California Street, Suite 2700
> San Francisco, CA 94104
> *Counsel for Defendant Transeau*
>
> David S. Olson, Esq.
> Center for Internet and Society
> Stanford Law School
> 559 Nathan Abbott Way
> Stanford, CA 94305-8610
> *Counsel for Defendant Transeau*
>
> Eric M. Stahl, Esq.
> Davis Wright Tremaine, LLP
> 1501 4th Avenue, Suite 2600
> Seattle, WA 98101-1688
> *Counsel for Defendant East West Communications*

| | |
|---|---|
| _____10/12/06_____ | _____s/ Paul A. Chin_____ |
| Date | Paul A. Chin, Esq. (PC 9656) |
| | LAW OFFICES OF PAUL A. CHIN |
| | The Woolworth Building |
| | 233 Broadway, 5th Floor |
| | New York, NY 10279 |
| | (212) 964-8030 |
| | *Attorneys for Plaintiffs* |