**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

RALPH VARGAS AND BLAND RICKY ROBERTS,

               Plaintiffs,

  v.

PFIZER INC., PUBLICIS, INC., FLUID MUSIC, EAST WEST COMMUNICATIONS, INC., AND BRIAN TRANSEAU P/K/A "BT",

               Defendants.

04 CV 9772 (WHP)
ECF CASE

**REPLY MEMORANDUM IN SUPPORT OF BRIAN TRANSEAU'S MOTION**
**FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...............................................................................................1

I.     Plaintiffs Concede They Have No Evidence of Access.................................................3

II.    Plaintiffs Cannot Prevail on Striking Similarity Because Plaintiffs' Cannot Show Evidence Sufficient to Preclude Any Reasonable Possibility of Independent Creation ...............................................................................................3

        A.    Dr. Smith's Analysis Shows Independent Creation; It Does Not Preclude It ..................................................................................................6

        B.    Plaintiffs' Experts Rodriguez and Ritter Cannot Save Plaintiffs from Summary Judgment...................................................................................7

               1.    Rodriguez and Ritter's Opinions Are Insufficient to Support Plaintiffs' Claim of Copying..................................................................7

               2.    Neither Ritter nor Rodriguez Preclude the Reasonable Possibility of Independent Creation.........................................................................8

        C.    Plaintiffs' Attacks on Dr. Boulanger Are Irrelevant; the Court Need Not Consider His Analysis to Grant Summary Judgment for Defendants. ................................................................................................9

III.   Defendants' Evidence of Independent Creation Remains Strong and Unrebutted...................................................................................................10

CONCLUSION................................................................................................................11

# TABLE OF AUTHORITIES

## Cases

*Bucklew v. Hawkins Ash Baptie & Co., LLP*,
 329 F.3d 923 (7th Cir. 2003) ............................................................................... 4

*Cox v. Abrams*,
 1997 WL 251532 (S.D.N.Y. May 14, 1997) ....................................... 2, 3, 4, 10

*Dimmie v. Carey*,
 88 F. Supp. 2d 142 (S.D.N.Y. 2000) .................................................................. 3

*Eckes v. Card Prices Update*,
 736 F.2d 859 (2d Cir. 1984) ............................................................................... 4

*Gaste*,
 863 F.2d at 1068 ........................................................................................ 3, 4, 5

*Mowry v. Viacom Int'l, Inc.*,
 2005 WL 1793773 (S.D.N.Y. 2005) ............................................................... 2, 4

*Repp v. Webber*,
 132 F.3d 8821 (2nd Cir. 1988) ........................................................................... 5

*Streetwise Maps, Inc. v. Vandam, Inc.*,
 159 F.3d 739 (2d Cir. 1998) ............................................................................... 3

*Tisi v. Patrick*,
 97 F. Supp. 2d 539 (S.D.N.Y. 2000) .......................................................... 1, 2, 4

# PRELIMINARY STATEMENT

Plaintiffs' case cannot survive summary judgment because they cannot show a *prima facie* case of copyright infringement. Defendants demonstrated in their opening brief that Plaintiffs have no evidence sufficient to show that Defendants had access to their work, *Bust Dat Groove (w/o ride)* ("*BDG*"), which is an essential element of a *prima facie* case of copyright infringement. ***Plaintiffs completely surrender the access argument in their opposition brief***. When a plaintiff cannot show evidence of access, the only way to survive summary judgment is to meet the high standard of striking similarity. "Under the stringent test of 'striking similarity,' a plaintiff can avoid dismissal only by proving that the works are so 'strikingly similar' as to preclude the possibility of independent creation." *Tisi v. Patrick*, 97 F. Supp. 2d 539, 548 (S.D.N.Y. 2000) (granting summary judgment when plaintiffs' experts did not sufficiently show striking similarity) (citations omitted). Plaintiffs do not come close to providing sufficient evidence to meet the stringent striking similarity test.

After Plaintiffs' opposition brief, the following remains undisputed:

- There is no evidence that Defendants had access to Plaintiffs' *BDG*. Pl. Opp. Br. at 13.
- FFT spectral analysis is the best method for determining whether *Aparthenonia* is a copy of *BDG* and "can reveal the special characteristics of sounds with much greater precision than the unaided ear" Plaintiffs' 56.1 Statement No. 29, 30; Defendants' 56.1 Statement No. 29, 30.
- Only Defendants' expert Dr. Boulanger and Plaintiffs' Expert Dr. Smith used this superior method of analysis. Plaintiffs' other experts, Ritter and Rodriguez, based their opinions on how the works sounded to their ears. Ex. W Ritter Dep. Tr. at 126-127; Ex. X Rodriguez Dep. Tr. at 120-121.
- Dr. Smith did not find a single drum strike in *Aparthenonia* that was copied from *BDG*. Def. Br. at 18; Pl. Opp. Br. at 22, Plaintiffs' 56.1 Statement No. 40.
- *BDG* is a single bar of drumming that is looped such that every bar is identical. Plaintiffs' 56.1 Statement at No. 42.
- Dr. Smith's ***first key assumption*** that *BDG* is 26 unique bars of drumming was erroneous. Plaintiffs' 56.1 Statement at No. 41(c). Dr. Smith admitted that if this assumption was wrong "that would weaken my conclusion." Ex. L Smith Dep. Tr. 170:15-171:2.

1

- Dr. Smith made his ***second key assumption*** that the drum strike waveforms were so similar that they must have come from the same drummer even though he "has no musical training," and thus "cannot render any opinion as to whether . . . different musicians . . . can produce waveforms that look this similar." Ex. M (Smith Report at 2). Dr. Smith admitted that if this assumption was wrong then "of course my conclusion would be wrong." Ex. Y Smith Dep. Tr. 251:15-19.
- Dr. Smith's ***third key assumption*** that he could find the drum strikes from which *Aparthenonia* is allegedly copied in one of the other (non-existent) 25 unique bars of *BDG* that he did not analyze was wrong. Dr. Smith admitted that if this assumption was wrong "that would weaken my conclusion." Ex. L Smith Dep. Tr. 170:15-171:2.

As the above undisputed items show, Plaintiffs have not met their burden of showing a *prima facie* case. **First**, Plaintiffs concede that there is no evidence that Defendants had access to *BDG*. This is an independent basis for summary judgment, unless Plaintiffs show striking similarity. *See Cox v. Abrams*, 1997 WL 251532, *3-*4 (S.D.N.Y. May 14, 1997) (holding that plaintiffs, who stipulated they had no evidence of access, could survive summary judgment only if they could prove striking similarity). **Second**, Plaintiffs' expert Dr. Smith's analysis of the best data for determining copying did not reveal a single drum strike that was copied from *BDG* to *Aparthenonia*, a fact that strongly evidences independent creation of the two works. This is an independent basis for summary judgment. **Third**, Dr. Smith made three incorrect assumptions. Dr. Smith admitted that each assumption was essential to his conclusion that *Aparthenonia* is a copy of *BDG*, and admitted that if any one of them was wrong, his conclusion of copying was wrong. This is an independent basis for summary judgment. *See Cox*, 1997 WL 251532 at *4 (refusing to accept plaintiffs' theory because it was based on assumptions not supported by the evidence and granting summary judgment). **Fourth**, Plaintiffs' experts Dr. Smith and Matthew Ritter admitted that they cannot rule out a reasonable possibility of independent creation. This is an independent basis for summary judgment. *See Mowry v. Viacom Int'l, Inc.*, 2005 WL 1793773, *14 (S.D.N.Y. 2005) (granting summary judgment where plaintiff's expert testimony could not preclude independent creation); *Tisi,* 97 F. Supp. 2d at 548-49 (same); *Cox*, 1997 WL

251532, *7 (same).  **Fifth**, Plaintiffs do not rebut Defendants' strong factual evidence of independent creation.  This is an independent basis for summary judgment.  *See Dimmie v. Carey*, 88 F. Supp. 2d 142, 150-51 (S.D.N.Y. 2000) (granting summary judgment and holding that proof of independent creation can rebut *prima facie* evidence of copying); *Cox*, 1997 WL 251532, *7 (same).  Accordingly, this Court should grant Defendants' motion for summary judgment.

## I. Plaintiffs Concede They Have No Evidence of Access

Defendants' moving papers comprehensively demonstrated that Plaintiffs failed as a matter of law to present evidence sufficient to prove Defendants ever had access to *BDG*.  Def. Br. at 5 – 13.  Proof of access is an essential element of Plaintiffs' circumstantial case of copying, *Streetwise Maps, Inc. v. Vandam, Inc.,* 159 F.3d 739, 747 (2d Cir. 1998), especially in a case such as this one in which Plaintiffs' theory is that BT infringed their copyright by digitally sampling Plaintiffs' drum beat—an act Plaintiffs admit BT could not have done without physically possessing Plaintiffs' vinyl album.  Def. Br. at 7.

Plaintiffs concede that they have no evidence of access.  Plaintiffs Opp. Br. at 13. Rather, Plaintiffs stake their entire circumstantial case on their claim that *Aparthenonia* and *BDG* are strikingly similar.  Thus, summary judgment must be granted for Defendants, unless Plaintiffs can meet the stringent alternative test of "striking similarity."

## II. Plaintiffs Cannot Prevail on Striking Similarity Because Plaintiffs' Cannot Show Evidence Sufficient to Preclude Any Reasonable Possibility of Independent Creation

The Second Circuit allows a plaintiff to survive summary judgment absent evidence of access if, and only if, the plaintiff can show that the works at issue are so strikingly similar that "***the evidence as a whole*** precludes any reasonable possibility of independent creation" of the defendant's work.  *Gaste*, 863 F.2d at 1068; *see also Cox*, 1997 WL 251532 at *5 ("[s]triking

similarity exists when two works are so nearly alike that the *only* reasonable explanation for such a great degree of similarity is that the later was copied from the first.") (emphasis added). Moreover, Plaintiffs' burden is further heightened here because the striking similarity test is applied with particular stringency in cases such as this involving popular music. *Tisi v. Patrick*, 97 F. Supp. 2d 539, 548 (S.D.N.Y. 2000).

Thus, Plaintiffs are flatly wrong when they assert, without any legal authority, that if this Court "is inclined to believe Defendant's evidence of independent creation, this fact would only leave the ultimate decision of infringement to the jury." Pl. Opp. Br. at 6. If all that Plaintiffs do is show factual disputes as to the possibility of independent creation, then summary judgment must be granted against them as a matter of law. *Mowry*, 2005 WL 1793773 at *14 (granting summary judgment where plaintiff's expert could not preclude independent creation); *Tisi,* 97 F. Supp. 2d at 548-49 (same); *Cox*, 1997 WL 251532, *7. Rather than simply pointing to areas of dispute over facts or expert testimony, to survive summary judgment Plaintiffs must demonstrate that *the evidence as a whole* precludes any reasonable possibility of independent creation. *Gaste*, 863 F.2d at 1068; *Mowry*, 2005 WL 1793773, at *14; *Tisi*, 97 F. Supp. 2d at 548.

The facts of this case are nothing like the facts of *Bucklew v. Hawkins Ash Baptie & Co., LLP*, 329 F.3d 923 (7th Cir. 2003) (holding proof of access is required except where the inference of copying is compelling, such as when an infringer falls for a "copyright trap" inserted in the original work, by copying an error such as a fictitious geographical feature in a map). Nor is the case at bar like *Eckes v. Card Prices Update*, 736 F.2d 859, 863-64 (2d Cir. 1984) (defendant conceded access, and the Court found striking evidence of copying because defendant's work duplicated numerous errors found in plaintiffs' work). In those cases, which Plaintiffs cite in support of their striking similarity argument, Pl. Opp. Br. at 13, the courts held

4

that striking similarity could be found when a defendant's work was similar to a plaintiff's to the point of including the same errors. Plaintiffs' case is on the other end of the spectrum: here Plaintiffs seek to show striking similarity between their 2.3-second rudimentary drum beat and BT's 9-second rudimentary drum beat. Unlike the cases Plaintiffs cite, in which the similarity between the works was undeniable, here the two works admittedly do not sound the same, do not have drum strikes in all of the same places, do not have the same the pitch, and do not have the same tempo. Def. Br. at 20-22.

Plaintiffs' case is also in a completely different category from *Gaste* and *Repp v. Webber*, 132 F.3d 882, 890-91 (2nd Cir. 1988), the other cases upon which Plaintiffs rely. In both of those cases the copyrighted works at issue were entire songs. Here the copyrighted work is not a song, vocal sample, or even a melody, but rather a 2.3-second drum beat. *See* Def. Br. at 7. In *Gaste* it appeared that ***every measure of the allegedly infringing song could be traced to a measure in the copyrighted work***. *Gaste*, 863 F.2d at 1068. This is the direct opposite of the evidence in this case, in which Plaintiffs acknowledge that ***Dr. Smith could not find a single drum strike in Aparthenonia that could be traced to BDG***. Def. Br. at 18; Pl. Opp. Br. at 22; Plaintiffs' 56.1 Statement No. 40. In *Repp*, the Plaintiffs offered "unequivocal" expert opinions that the melody, structure, pitch and rhythm of the allegedly infringing work and the original were "strikingly similar, and [were] so similar as to preclude independent creation." *Repp*, 132 F.3d at 890-91. In this case, Plaintiffs' experts cannot preclude independent creation. Moreover, in cases such as this one where the strikingly similar elements are "so trite as to be likely to reappear in many compositions," copying should not be inferred without proof of access. *Gaste,* 863 F.2d at 1068-69.

## A. Dr. Smith's Analysis Shows Independent Creation; It Does Not Preclude It

In Defendants' opening brief Defendants showed that Dr. Smith, the only of Plaintiffs' experts to use the superior FFT method of analysis, did not find a single drum strike in *Aparthenonia* that was copied from *BDG*. Def. Br. at 18. Plaintiffs do not dispute this in their opposition. This alone means that Plaintiffs cannot sufficiently preclude independent creation and thus summary judgment must be granted for Defendants.

Defendants further showed that Dr. Smith's conclusion of copying rested on three key assumptions, and that each of those assumptions is wrong and fatal to Plaintiffs' case, as is summarized above in the Preliminary Statement. Moreover, Dr. Smith unequivocally admitted for each assumption that if it was wrong, his conclusion of copying would be wrong or weakened. *See, e.g.*, Ex. L Smith Dep. Tr. 170:15-171:2 ("[i]f Funky Drummer [*BDG*] was created by taking the 2.3-second pattern and repeating it the 26 times by digital copying, such that each of those 26 individual copies was in fact a direct digital copy, that would weaken my conclusion."); Ex. Y Smith Dep. Tr. at 251:15-19 ("if that assumption is wrong then of course my conclusion would be wrong."); *id.* at 207:9-21 (if two separate instruments could produce spectra as similar as two beats in *BDG*, it would "extremely weaken my conclusions.").

Plaintiffs do not deny these admissions. Pl. Opp. Br. at 20-22. Because FFT analysis is the best way to determine copying in this case, Dr. Smith's unequivocal admissions that his conclusion fails if his assumptions were wrong—which they were—mean that even taking the evidence in the light most favorable to Plaintiffs, no reasonable jury could find that Plaintiffs have precluded any reasonable possibility of independent creation. Thus, this Court must grant summary judgment for Defendants.

### B. Plaintiffs' Experts Rodriguez and Ritter Cannot Save Plaintiffs from Summary Judgment

Because Defendants decisively showed that Dr. Smith supports the possibility of independent creation, Plaintiffs rely heavily on the opinions of their experts Matthew Ritter and Ivan Rodriguez. But neither expert is able to preclude the possibility that *Aparthenonia* was independently created.

#### 1. Rodriguez and Ritter's Opinions Are Insufficient to Support Plaintiffs' Claim of Copying

The opinion testimony of Ritter and Rodriguez is insufficient to support Plaintiffs' assertion that *Aparthenonia* is a copy of *BDG*. Mr. Ritter and Mr. Rodriguez used only their unaided ears to examine the similarities of the two works, (*see* Ex. W Ritter Dep .Tr. at 126-127; Ex. X Rodriguez Dep. Tr. at 120-121:), a method of analysis that Plaintiffs admit is much less precise than the FFT analysis used by Plaintiffs' expert Dr. Smith. *See* Plaintiffs' Rule 56.1 Statement, ¶ 30. Accordingly, Ritter and Rodriguez's aural impressions of copying must yield to the conclusion reached by Dr. Smith through the use of FFT analysis, that there is not a single drum strike in *Aparthenonia* that is copied from *BDG*.

Further, Plaintiffs' assertions that the only difference between *Aparthenonia* and *BDG* is the exact order of the drum strikes (Pl. Opp. Br. at 8-9), is contradicted by the testimony of Ritter and Rodriguez. Defendants showed in their moving brief—and Plaintiffs did not deny—that Rodriguez testified that the drum strikes of the two works sound different. Ex. O (Rodriguez Dep. Tr. 390:19-392:2, 406:9-18, 408:2-14, 410:3-411:3, 411:24-412:17, 413:15-414:14). Similarly, Defendants showed—and Plaintiffs did not deny—that when Ritter listened to back-to-back comparisons of several individual drum strikes of each work, he admitted that the drum

strikes of *BDG* and *Aparthenonia* sounded different.[1]  Ex. U (Ritter Dep. Tr. at 131:4-135:11); Ex. V (Rodriguez Decl. at ¶17 and Ex. C1).  *See* Def. Br. at 23.

### 2. Neither Ritter nor Rodriguez Preclude the Reasonable Possibility of Independent Creation

*First*, Mr. Ritter is unable to provide the opinion Plaintiffs desperately need to survive summary judgment:  that the two works are so similar so as to preclude any possibility of independent creation.  Even accepting as true Ritter's opinion that the sounds he hears in *Aparthenonia* are "exactly the same sounds in *Bust Dat Groove*" he admitted he is "not sure" whether any of those exact same drum sounds could have been created without copying *BDG*.  Ex. W Ritter Dep. Tr. at 75:11.  Mr. Ritter allowed, "For all I know, you know, maybe there is a piece of equipment out there that can take that exact same sound and mimic it or something."  Ex. W Ritter Dep. Tr. at 75:12-15.  Mr. Ritter went on to state that he did not know whether it was possible to electronically create drum sounds exactly like those in *BDG*.  "I don't know enough about electronic music.  I actually know very little about it.  So, I don't know for sure if there is technology that exists that could do that."  Ex. U Ritter Dep. Tr. at 77:6-9.

Mr. Ritter has no knowledge of, or experience with, the specific technology that BT used to independently create the drum sounds found in *Aparthenonia*.  Mr. Ritter's opinion regarding how *Aparthenonia* was made is informed only by Mr. Ritter's experience as a drummer who plays a drum set.  Mr. Ritter has never used Propellerhead Reason, does not have an understanding of what the software is, and had not heard of it before reading BT's original

---

[1] Although Plaintiffs complain about the sound quality of the audio tracks Ritter listened to during his deposition (s*ee* Pl. Opp. Br. at 19), Plaintiffs fail to mention that those compact disks were produced by Plaintiffs. Plaintiffs' suggestion that the test of Ritter during his deposition was flawed because of the quality of Plaintiffs' compact disk, or the speakers used, is belied by Ritter's testimony that he was able to do his initial analysis of *BDG* and *Aparthenonia* by listening to a poor quality compact disk on "a small CD Walkman with headphones," at which point he immediately concluded the two works were "one and the same"). Ex. W Ritter Dep. Tr. at 50:16 - 51:5.

declaration in this case, in which BT states he used Propellerhead Reason to create *Apartheonia*. Ex. W Ritter Dep. Tr. at 200:24-201:14. Having no experience with this computer software and "very little knowledge" about available electronic means to create drum sounds, Mr. Ritter cannot, and did not, rule out the possibility that *Apartheonia* could have been created without copying *BDG*. Ex. U Ritter Dep. Tr. at 77:6-9.

**Second**, Mr. Rodriguez's testimony that he could digitally manipulate *BDG* to make it sound identical to *Apartheonia*—as Rodriguez asserts but never shows—does not preclude the possibility of independent creation. Opining as to one possible method of creating *Apartheonia* does **not** preclude any reasonable possibility that BT created *Apartheonia* independently using a different method. Mr. Rodriguez's bald assertions to the contrary are not availing.

    **C.**    **Plaintiffs' Attacks on Dr. Boulanger Are Irrelevant; the Court Need Not Consider His Analysis to Grant Summary Judgment for Defendants.**

It is telling that instead of taking on the reasons why their experts cannot preclude independent creation, including that Dr. Smith's FFT analysis found no copies from *BDG* in *Apartheonia*, Plaintiffs instead make weak attacks on Dr. Boulanger's analysis in an attempt to create a "battle of the experts" that must be decided by a jury. Plaintiffs' attempts are unavailing. This Court need not rely on Dr. Boulanger's analysis to grant summary judgment for Defendants. It is the analysis of Plaintiffs' own experts—especially Dr. Smith—that shows that Plaintiffs cannot preclude any reasonable possibility of independent creation.

Nevertheless, Plaintiffs criticisms of Dr. Boulanger's analysis lack merit. Plaintiffs' bizarre argument that Dr. Boulanger (and, thus one assumes, Dr. Smith) "only compared approximately 0.023197 seconds of the first-bar [sic] of drum music" in *Apartheonia* and *BDG* (Pl. Opp. Br. at 17, 22) is obviously wrong, as a cursory look at Dr. Boulanger's Report reveals.

*See, e.g.*, Ex. N, Boulanger Report Fig. 24 (comparing the entire one-bar of *BDG* with one bar of *Aparthenonia*); Figs 29-36 (comparing *BDG* and *Aparthenonia* on a beat by beat basis).

Plaintiffs further argue that Dr. Boulanger's analysis was flawed and unfair. Pl. Opp. Br. at 17-18. But Plaintiffs are raising minor quibbles that do not affect Dr. Boulanger's generation of data or either Drs. Boulanger or Smith's FFT analysis. Dr. Smith admitted repeatedly that the tools and methodology that Dr. Boulanger used to prepare the data comparing *Aparthenonia* and *BDG* was correct. *See, e.g.*, Ex. L Smith Dep. Tr. 80:10-16. Dr. Smith also admitted that the alleged errors he pointed out "ha[d] minor importance," *Id.* at 224:1, were not "an overwhelming problem," *id.* at 239:21-24, had no effect on his analysis, *id.* at 240:17-241:4, and that they would not lead to an incorrect conclusion upon a careful look. *Id.* at 156:3-4, 157:16-158:5.

### III. Defendants' Evidence of Independent Creation Remains Strong and Unrebutted

Defendants provided strong evidence of independent creation of *Aparthenonia*. Defendants showed that BT created *Aparthenonia* on his computer on his tour bus without the use of any samples. Def. Br. at 22-23. BT and Carlos Vasquez both attest to these facts. *Id*. Both also testify that BT did not own a turntable during the time he made *Aparthenonia* in 2000. *Id*. A third witness, Mike DiMattia, testifies that in 2001 BT still did not own a turntable. *Id*.

Plaintiffs grasp at straws in their attempts to attack Defendants' evidence of independent creation. None of Plaintiffs' laughable arguments that BT's evidence of independent creation is contradictory undermine the credibility of BT's claim of independent creation or raise a genuine issue of material fact. Due to Plaintiffs' insufficient evidence of copying, and in light of Defendants' compelling evidence of independent creation, summary judgment should be granted for Defendants. *See Cox*, 1997 WL 251532 at *7 ("Evidence of independent creation offers yet another ground on which summary judgment can be granted.")

# **CONCLUSION**

For the above stated reasons, the Court should grant Defendants' motion for summary judgment and dismiss Plaintiffs' case with prejudice.

Dated: October 18, 2006                KIRKLAND & ELLIS LLP

By:/s/_____
   Julie A. Ahrens (JA 0372)
   jahrens@kirkland.com
   Alice C. Garber (*pro hac vice*)
   agarber@kirkland.com
   Christopher W. Keegan (*pro hac vice*)
   ckeegan@kirkland.com

KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California  94104-1501
Telephone:   (415) 439-1400
Facsimile:    (415) 439-1500

David S. Olson (DO 4906)
dolson@law.stanford.edu
Anthony Falzone (*pro hac vice pending*)
anthony.falzone@stanford.edu

STANFORD LAW SCHOOL CYBERLAW CLINIC
CENTER FOR INTERNET AND SOCIETY
559 Nathan Abbott Way
Stanford, California 94305-8610
Telephone: (650) 724-0517
Facsimile:  (650) 723-4426

   Attorneys for Defendant
   BRIAN TRANSEAU p/k/a "BT"