## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RALPH VARGAS AND BLAND RICKY ROBERTS,<br><br>            Plaintiffs,<br><br>  v.<br><br>PFIZER INC., PUBLICIS, INC., FLUID MUSIC, EAST WEST COMMUNICATIONS, INC., AND BRIAN TRANSEAU P/K/A "BT",<br><br>            Defendants. | 04 CV 9772 (WHP)<br>ECF CASE |

### MEMORANDUM IN SUPPORT OF BRIAN TRANSEAU'S MOTION
### TO STRIKE DECLARATION OF PAUL CHIN AND IN FURTHER SUPPORT OF
### BRIAN TRANSEAU'S MOTION FOR SUMMARY JUDGMENT

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

ARGUMENT........................................................................................................................2

I.     MR. CHIN'S DECLARATION IS IMPROPER AND THE COURT
SHOULD STRIKE OR REFUSE TO CONSIDER IT.................................................2

II.    PLAINTIFFS DO NOT HAVE EVIDENCE SUFFICIENT TO INFER
COPYING AND THEY CANNOT REFUTE DEFENDANTS' EVIDENCE
OF INDEPENDENT CREATION ...............................................................................3

        A.     Plaintiffs Cannot Prove Copying Because They Fail To Show
Striking Similarity Such That Any Reasonable Possibility of
Independent Creation Is Precluded. ...................................................................3

        B.     BT Has Conclusively Proven That He Can and Did Independently
Create *Aparthenonia*. ........................................................................................5

        C.     Plaintiffs' Supplemental Expert Declaration Does Not Rebut BT's
Evidence of Independent Creation.....................................................................8

CONCLUSION....................................................................................................................11

# TABLE OF AUTHORITIES

**Cases**

*Cox v. Abrams*,
 1997 WL 251532 (S.D.N.Y. May 14, 1997) ................................................................... 4, 5

*Doe v. The National Board of Podiatric Medical Examiners*,
 2004 WL 912599 (S.D.N.Y. Apr. 29, 2004) .................................................................... 3

*Gaste v. Kaiserman*,
 863 F.2d 1061 (2nd Cir. 1988) ....................................................................................... 3, 4

*Hollander v. American Cyanamid Co.*,
 172 F.3d 192 (2d Cir. 1999) ............................................................................................ 2

*Mowry v. Viacom International, Inc.*,
 2005 WL 1793773 (S.D.N.Y. July 29, 2005) .................................................................. 4

*Schnabel v. Abramson*,
 232 F.3d 83 (2d Cir. 2000) .............................................................................................. 2

*Tisi v. Patrick*,
 97 F. Supp. 2d 539 (S.D.N.Y. 2000) ............................................................................... 4

*Wyler v. U.S.*,
 725 F.2d 156 (2d Cir. 1983) ............................................................................................ 3

**INTRODUCTION**

In the face of Defendants' motion for summary judgment, Plaintiffs conceded they have no evidence that Defendant Brian Transeau ("BT") had access to Plaintiffs' work, *Bust Dat Groove w/out Ride* ("*Bust Dat Groove*"), when he created the accused work, *Aparthenonia*. Thus, in order to prove the essential element of copying, Plaintiffs must show there is striking similarity between the two works sufficient to preclude the possibility of independent creation.

At the hearing on Defendants' motion for summary judgment, the Court identified independent creation as an important issue. There is no requirement for defendants to provide evidence of independent creation in order to prevail on summary judgment when a plaintiff proceeds on a theory of striking similarity and does not adequately preclude the possibility of independent creation. Indeed, the case law demonstrates that where there is proof of the possibility of independent creation and no evidence of access, a defendant is entitled to summary judgment. The Court observed that a recreation of *Aparthenonia* by BT from scratch would be the "best evidence" of independent creation available. When informed by BT's counsel that such a recreation could be submitted, the Court reserved ruling on Defendants' motion and directed BT to re-create *Aparthenonia* and to submit the recreation to the Court along with Fast Fourier Transform ("FFT") analysis of it.

On December 1, 2006, BT submitted an independently created version of *Aparthenonia* and FFT analysis of the recreated *Aparthenonia*, the original *Aparthenonia*, and *Bust Dat Groove*. In response to BT's evidence and his expert's analysis, Plaintiffs submitted only the opinion of their drumming expert, Matthew Ritter. Plaintiffs did not submit any opinion testimony from their FFT analysis expert, Dr. Steven Smith. In addition, Mr. Chin, counsel for Plaintiffs, submitted a declaration dated January 23, 2007. Mr. Chin's declaration is improper,

1

however, and the Court should either strike it or not give it any weight in resolving Defendants' motion for summary judgment.

Now that the parties have submitted the requested evidence, it is apparent that Plaintiffs cannot prove their copyright infringement claims. The undisputed facts show that (1) Plaintiffs have no evidence that Defendants had access to the Plaintiffs' work; and (2) Plaintiffs do not have evidence sufficient to preclude the possibility that BT created the accused work independently, without copying *Bust Dat Groove*. On the contrary, BT's recreation of *Aparthenonia* demonstrates the possibility of independent creation once and for all.

## ARGUMENT

**I.     MR. CHIN'S DECLARATION IS IMPROPER AND THE COURT SHOULD STRIKE OR REFUSE TO CONSIDER IT.**

Mr. Chin's January 23, 2007 declaration is not a proper factual declaration and the Court should either strike it or not consider it. Federal Rule of Civil Procedure 56(e) provides that, in connection with a motion for summary judgment, "supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." The Second Circuit has explained that "a court may ... strike portions of an affidavit that are not based upon the affiant's personal knowledge, contain inadmissible hearsay or make generalized and conclusory statements." *Hollander v. American Cyanamid Co.*, 172 F.3d 192, 198 (2d Cir. 1999) (abrogated on other grounds by *Schnabel v. Abramson*, 232 F.3d 83 (2d Cir. 2000)).

Here, as in *Hollander*, Mr. Chin's declaration "more resemble[s] an adversarial memorandum than a *bona fide* affidavit." *Hollander*, 172 F.3d at 198. Seven of the nine paragraphs of Mr. Chin's declaration are statements made without personal knowledge and instead are counsel's arguments and conclusions about the evidence contained in other

witnesses' declarations.  Under the guise of a "declaration" Mr. Chin mischaracterizes, incorrectly summarizes, and draws biased inferences from evidence contained in witnesses' declarations.  Such arguments of counsel are not facts, making Mr. Chin's declaration improper under Federal Rule of Civil Procedure 56(e) and Federal Rule of Evidence 602.  Therefore each paragraph of Mr. Chin's declaration, except for paragraphs 1 and 6, should be stricken.

Even if the Court chooses not to strike Mr. Chin's declaration, it should disregard those portions of Plaintiffs' submission that are inappropriate.  "Alternatively, a court may, in considering a motion for summary judgment, simply decline to consider those aspects of a supporting affidavit that do not appear to be based on personal knowledge or are otherwise inadmissible."  *Doe v. The National Board of Podiatric Medical Examiners*, 2004 WL 912599, at *4 (S.D.N.Y. Apr. 29, 2004).  *See also Wyler v. U.S.*, 725 F.2d 156, 160 (2d Cir. 1983) ("An affidavit of the opposing party's attorney which does not contain specific facts or is not based on first-hand knowledge is not entitled to any weight.").  In its evaluation of Defendants' motion for summary judgment, the Court should afford Mr. Chin's argumentative declaration no weight.

## II. PLAINTIFFS DO NOT HAVE EVIDENCE SUFFICIENT TO INFER COPYING AND THEY CANNOT REFUTE DEFENDANTS' EVIDENCE OF INDEPENDENT CREATION.

### A. Plaintiffs Cannot Prove Copying Because They Fail To Show Striking Similarity Such That Any Reasonable Possibility of Independent Creation Is Precluded.

Plaintiffs have surrendered the argument that Defendants had access to the allegedly infringed work at issue.  When a plaintiff has no evidence of access, the Second Circuit allows an inference of copying if, and *only* if, the plaintiff can show that the works at issue are so strikingly similar that "the evidence as a whole precludes any reasonable possibility of independent creation" of the defendant's work.  *Gaste v. Kaiserman*, 863 F.2d 1061, 1068 (2nd Cir. 1988); *see also Tisi v. Patrick*, 97 F. Supp. 2d 539, 548 (S.D.N.Y. 2000) ("Under the

3

stringent test of 'striking similarity,' a plaintiff can avoid dismissal *only* by proving that the works are so 'strikingly similar' as to preclude the possibility of independent creation.") (emphasis added); *Cox v. Abrams*, 1997 WL 251532, *5 (S.D.N.Y. May 14, 1997) ("Striking similarity exists when two works are so nearly alike that the *only* reasonable explanation for such a great degree of similarity is that the later was copied from the first.") (emphasis added).

Thus, to survive summary judgment, it is Plaintiffs' burden to come forth with evidence sufficient to *preclude* any reasonable possibility that BT created *Aparthenonia* independently. Even if Plaintiffs could show factual disputes as to the possibility of independent creation, then summary judgment must be granted against them as a matter of law. *Mowry v. Viacom International, Inc.*, 2005 WL 1793773, *14 (S.D.N.Y. July 29, 2005) (granting summary judgment where plaintiff's expert could not preclude independent creation); *Tisi,* 97 F. Supp. 2d at 548-49 (same); *Cox*, 1997 WL 251532 at *7. Rather than simply pointing to areas of dispute over facts or expert testimony, to survive summary judgment Plaintiffs must demonstrate that *the evidence as a whole* precludes any reasonable possibility of independent creation. *Gaste*, 863 F.2d at 1068; *Mowry*, 2005 WL 1793773 at *14; *Tisi*, 97 F. Supp. 2d at 548.

Here, Plaintiffs do not have evidence to support their theory that the only reasonable explanation for any alleged similarities between *Bust Dat Groove* and *Aparthenonia* is that BT digitally copied *Bust Dat Groove* to create *Aparthenonia*. As demonstrated in BT's opening and reply memoranda in support of Defendants' summary judgment motion, Plaintiffs cannot prove copying because they lack the evidence necessary to demonstrate that the two works are so nearly alike so as to preclude the possibility of independent creation. *See* Memorandum in Support of Brian Transeau's Motion For Summary Judgment Pursuant to Fed. R. Civ. P. 56,

at 14-22 (Docket #86); Reply Memorandum in Support of Brian Transeau's Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56, at 3-10 (Docket #98).

The evidence as a whole in this case fails entirely to preclude the possibility of independent creation. In fact, BT has produced affirmative and unrefuted evidence that he can and did create *Aparthenonia* without copying Plaintiffs' work. Not only does BT's independent creation evidence bolster Defendants' argument that Plaintiffs have not met the striking similarity test, it provides a separate and independent basis for the Court to grant summary judgment in favor of Defendants. Even if Plaintiffs had met their evidentiary burden to infer copying, which they have not, BT's evidence that he independently created *Aparthenonia* rebuts any such inference. *See Cox*, 1997 WL 251532 at *7 ("Even if plaintiffs were able to infer copying, defendants could rebut this inference with evidence that the challenged work was independently created.").

**B. BT Has Conclusively Proven That He Can and Did Independently Create *Aparthenonia*.**

From the outset of this case, the evidence has supported BT's steadfast testimony that he did not possess, listen to or hear of *Bust Dat Groove* or the album *Funky Drummer Vol. II* before Plaintiffs initiated this lawsuit, and that he created *Aparthenonia* "from scratch" using a computer and off-the-shelf software, without the use of any samples, and without copying *Bust Dat Groove*. Plaintiffs have not brought forth any direct evidence to contradict BT's testimony regarding his independent creation of *Aparthenonia*.

Following the Court's request for additional evidence regarding independent creation, BT recreated *Aparthenonia* from scratch using only his Apple G4 computer and the software programs Propellerhead Reason 1.0 and Logic Audio. *See* November 27, 2006 Declaration of Brian Transeau, at ¶ 5 (Docket #112). In his declaration and in the video recording of BT's

5

demonstration, BT detailed each step he took to recreate *Aparthenonia*.[1] This evidence shows that the only sounds BT used in his recreation were those stock drum sound files contained in the Propellerhead Reason 1.0 software. November 27, 2006 Transeau Decl. at ¶ 8. BT also used Logic Audio software to fine-tune and time-correct the recreated track, as he had done with the original. *Id*. at ¶ 10. BT saved the final recreated version of *Aparthenonia* as an audio file named "Nu Aparthenonia Final w-TC"[2] (hereinafter called "Recreated *Aparthenonia*"). *Id*. BT did not use any part of Plaintiffs' work, *Bust Dat Groove*, any sampled music or drumming, or any sampling equipment to make the Recreated *Aparthenonia*. *Id*. at ¶ 12. By making the Recreated *Aparthenonia*, BT conclusively demonstrated how he made the original *Aparthenonia* drum track without copying Plaintiffs' work.

---

[1] BT's demonstration of this recreation was witnessed by BT's counsel, two other witnesses, and was videotaped. The recreation evidence BT filed with the Court on December 1, 2006 includes:

- BT's declaration dated November 27, 2006, detailing the process he conducted to recreate the *Aparthenonia* track (Docket #112);
- A compact disc containing the audio track entitled, "Nu Aparthenonia Final w-TC," (the final, recreated version of *Aparthenonia*) as well as the computer files BT created during his demonstration (attached as Exhibit Z to the October 19, 2006 Supplemental Declaration of Julie A. Ahrens (Docket #111));
- A compact disc containing the video recording of BT's demonstration (attached as Exhibit AA to the October 19, 2006 Supp. Decl. of Julie A. Ahrens (Docket #111));
- Two declarations dated November 30, 2006, made by the fact witnesses present during BT's demonstration: Brian Baughn (Docket #113) and Wonseok Choi (Docket #114);
- The Supplemental Declaration of Dr. Richard Boulanger, dated December 1, 2006, and exhibits thereto (Docket #115).

This evidence supplements the unrebutted evidence of independent creation detailed in BT's memoranda in support of Defendants' motion for summary judgment. *See* Memorandum in Support of Brian Transeau's Motion For Summary Judgment Pursuant to Fed. R. Civ. P. 56, at 22-23 (Docket #86); Reply Memorandum in Support of Brian Transeau's Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56, at 10 (Docket #98).

[2] This audio file is on the compact disc attached as Exhibit Z to the October 19, 2006 Supp. Decl. of Julie A. Ahrens (Docket #111).

Dr. Richard Boulanger, BT's expert witness, further confirms that BT successfully recreated *Aparthenonia* without copying any sounds from Plaintiffs' work. Based on his waveform and spectral (FFT) analysis of the Recreated *Aparthenonia* Dr. Boulanger concluded:

> The recreated Aparthenonia is such an exceptionally close match to the original *Aparthenonia* that it leads me to conclude that the recreation and the original were made using the same methodology. The fact that BT created such a close match to the original *Aparthenonia* without copying *Bust Dat Groove*, shows that BT had the ability to and did create the original *Aparthenonia* using only the drum sounds from the Propellerhead Reason 1.0 sound library and without copying or "sampling" the drum sounds from *Bust Dat Groove*.

December 1, 2006 Supplemental Declaration of Dr. Richard Boulanger at ¶ 12 (Docket #115).

Dr. Boulanger's waveform and FFT data show that the Recreated *Aparthenonia* does not contain copies or samples of the drum sounds of *Bust Dat Groove*. While the waveform and FFT comparisons of BT's Recreated *Aparthenonia* and the original *Aparthenonia* show that the two tracks are "virtually identical," and therefore made from the same source material (*id*. at ¶¶ 4 & 8), comparisons of the waveform and FFT data of *Bust Dat Groove* and the Recreated *Aparthenonia* reveal a "number of blatant and significant differences." *Id*. at ¶¶ 8 and 9. Just as he did when he analyzed the original *Aparthenonia*, Dr. Boulanger compared the Recreated *Aparthenonia* and *Bust Dat Groove* on a drum strike-by-drum strike basis and found that not a single drum strike is a match between the two. *Id*. at ¶ 10. Further, Dr. Boulanger found that the Recreated *Aparthenonia* has the same degree and number of differences to *Bust Dat Groove* that the original *Aparthenonia* has to *Bust Dat Groove*. *Id*. at ¶ 9. Thus, Dr. Boulanger observed that just as the Recreated *Aparthenonia* does not contain copies of the drum sounds from *Bust Dat Groove*, the original *Aparthenonia* did not contain any copies either. Through the Recreated *Aparthenonia*, BT has conclusively demonstrated that he is capable of using a computer and

sound software to create the drum track *Aparthenonia* without using any samples or copies of Plaintiffs' work.

### C. Plaintiffs' Supplemental Expert Declaration Does Not Rebut BT's Evidence of Independent Creation.

BT's recreation evidence and Dr. Boulanger's waveform and FFT analysis conclusively prove that BT can and did independently create *Aparthenonia*. Plaintiffs do not refute Defendants' evidence.

Plaintiffs oppose Defendants' compelling evidence of independent creation with the opinion of Matthew Ritter, a drummer, who analyzed the Recreated *Aparthenonia* using only his unaided ear. *See* Ritter Analysis of Recreated *Aparthenonia* at ¶ 3 (attached to January 23, 2007 Chin Supp. Decl. as Ex. 15) (Docket #124). Plaintiffs offer no FFT analysis of the Recreated *Aparthenonia*, despite the fact that Plaintiffs agree that FFT frequency spectra analysis is the best method of determining differences in sounds (*see* Dr. Smith Report at 2 (attached to September 26, 2006 Keegan Decl. as Ex. M) and Dr. Smith Dep. Tr. at 63:14-63:22, 79:25-80:16 (attached to September 26, 2006 Keegan Decl. as Ex. L) (Docket #87)). Plaintiffs submitted no evidence to challenge Dr. Boulanger's testimony that waveform and FFT analysis show that BT was able to and did make the Recreated *Aparthenonia* without copying *Bust Dat Groove*. Also unrebutted is Dr. Boulanger's conclusion that BT's ability to recreate *Aparthenonia* from scratch demonstrates that BT created the original *Aparthenonia* the same way, using only the drum sounds from the Propellerhead Reason 1.0 sound library and without copying or "sampling" the drum sounds from Plaintiffs' work, *Bust Dat Groove*. *See* December 1, 2006 Boulanger Supp. Decl. at ¶ 12 (Docket #115).

In the face of Dr. Boulanger's FFT analysis and conclusion that BT's recreation of *Aparthenonia* shows that BT independently created *Aparthenonia* without copying *Bust Dat*

*Groove*, we hear nothing at all from Dr. Smith, Plaintiffs' FFT expert. It is fair to infer that Plaintiffs did not produce testimony from Dr. Smith attacking Defendants' evidence of independent creation because they could not. Put simply, when it was revealed that Dr. Smith's key assumptions were flawed, as the briefing and declarations related to this motion show conclusively (s*ee* Reply Memorandum in Support of Brian Transeau's Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56, at 1-2, 6 (Docket #98)), and as Plaintiffs have not denied, it became impossible for Dr. Smith to persist in his opinion that *Aparthenonia* was created by copying *Bust Dat Groove*. Now that Defendants' supplemental evidence submission shows that waveforms as similar as those in the original *Aparthenonia* were to *Bust Dat Groove* could be independently created without copying *Bust Dat Groove*, the foundations of Dr. Smith's opinion have crumbled further. Plaintiffs did not submit any testimony or analysis from Dr. Smith, their expert best able to determine copying, because the waveform and FFT data do not support Dr. Smith's original conclusion that *Aparthenonia* is a copy of *Bust Dat Groove* and because FFT analysis cannot be used to refute Defendants' supplemental proof of independent creation.

Rather than submit waveform and FFT data and analysis to refute Dr. Boulanger's findings, Plaintiffs instead center their entire opposition on the argument that BT's Recreated *Aparthenonia* is not an exact "duplicate" of the original *Aparthenonia*. But this criticism misses the point of the recreation exercise. The point of the exercise is to determine whether it is possible that BT created the original *Aparthenonia* independently, not whether BT could create an exact duplicate of the original *Aparthenonia*. BT has demonstrated, and Dr. Boulanger confirms, that working from scratch, using only a computer, Logic Audio software, and the drum sounds in Propellerhead Reason 1.0 software, BT can create a drum track that is "as close a

match [to the original *Aparthenonia*] as could be made without digitally copying the original." December 1, 2006 Boulanger Supp. Decl. at ¶ 7. Dr. Boulanger's analysis confirms that the Recreated *Aparthenonia* is indeed a **recreation**, not a digital copy or duplicate of the original. *Id*. at ¶¶ 3, 7. Dr. Boulanger's point in acknowledging that the Recreated *Aparthenonia* is not an exact duplicate of the original is to confirm that the Recreated *Aparthenonia* is in fact an independent creation, made from scratch. *Id*. at ¶ 7.

Nevertheless, Dr. Boulanger unequivocally states that the waveform and FFT data show that the Recreated *Aparthenonia* is an exceptionally close, nearly identical match to the original—as close a match as possible without digitally copying the original. *Id*. at ¶¶ 3,7, 8. This testimony is unrebutted by Plaintiffs' expert Matthew Ritter, who agrees that even using his unaided ear he can hear that the Recreated *Aparthenonia* is "very similar" to the original *Aparthenonia*. *See* Ritter Analysis of Recreated *Aparthenonia* at ¶ 3 (attached to January 23, 2007 Chin Supp. Decl. as Ex. 15) (Docket #124).

Mr. Ritter attempts once again to make much out of the alleged "ghost note" sounds, claiming that BT did not explicitly identify and duplicate exactly the "ghost notes" that appear in the original *Aparthenonia*. In truth, BT identified in the recreation the snare sound file that he used to create the infamous "ghost note" sound heard in the original *Aparthenonia*. In paragraph 8 of BT's declaration, he lists all of the drum sounds he used in the Recreated *Aparthenonia*, including the sound file entitled Sd_Bricks.wav. In the video record of BT's recreation, beginning at 10:52, BT identifies the snare sound file Sd_Bricks.wav as the "ghost note." BT states, "Finally on … instrument eight … I'm going to load the infamous ghost note, ghost snare drum sound. Which is this sound right here, it's called snare drum underscore bricks dot wave. It's in the Reason factory sound library." *See* October 19, 2006 Ahrens Supp. Decl. at 5, Exhibit

AA (Docket #111). Moreover, Plaintiffs' expert Mr. Ritter admits he heard sounds in the Recreated *Aparthenonia* that are similar, though he claims based on his unaided ear they are not identical, to the "ghost notes" of the original. *See* Ritter Analysis of Recreated *Aparthenonia* at ¶ 3 (attached to January 23, 2007 Chin Supp. Decl. as Ex. 15) (Docket #124). And indeed, Mr. Ritter's Transcription of the Recreated *Aparthenonia* shows the presence of the "ghost note." *Id*. at pages 4 and 5.

Finally, Plaintiffs disingenuously argue that BT has not shown he is capable of independently creating *Aparthenonia* because he did not use the same materials to recreate *Aparthenonia*. In fact, BT testified in his declaration that he used the ***same*** version of the Propellerhead Reason 1.0 sound software that he used originally when he created *Aparthenonia*. *See* November 27, 2006 Transeau Decl. at ¶ 5. As BT explained, he used a similar computer (an Apple G4) to the one on which he first created *Aparthenonia* (an Apple G3), but he did not use the exact same computer because it remains available at his attorneys' offices for Plaintiffs' inspection and he accordingly did not want to disturb it. *Id*. Plaintiffs make no argument that BT's use of a different, but similar, computer has any relevance, nor do Plaintiffs put forth any evidence that using a different computer would in any way change the outcome of BT's recreation. Both computers are general-purpose computers. It is the software that matters, not the general-use computer that BT used. The unrebutted evidence remains that BT created the original and Recreated *Aparthenonia* using the drum sounds found in sound library of the Propellerhead Reason 1.0 software, not by copying Plaintiffs' work.

## **CONCLUSION**

Summary judgment should be granted for Defendants because Plaintiffs lack sufficient proof of copying. Plaintiffs admit they have no evidence of access, and Plaintiffs cannot prove striking similarity because the evidence as a whole does not preclude the possibility of

11

independent creation.  Even if Plaintiffs had met their evidentiary burden to infer copying, which they have not, BT's evidence that he independently created *Aparthenonia* rebuts any such inference.  For the above stated reasons, the Court should grant Defendants' motion for summary judgment and dismiss Plaintiffs' case with prejudice.

Dated:  March 15, 2007                    KIRKLAND & ELLIS LLP


By:   /s/ Julie A. Ahrens
    Julie A. Ahrens (JA 0372)
    jahrens@kirkland.com
    Alice C. Garber (*pro hac vice*)
    agarber@kirkland.com

KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California  94104-1501
Telephone:     (415) 439-1400
Facsimile:       (415) 439-1500

David S. Olson (DO 4906)
dolson@law.stanford.edu
Anthony Falzone (*pro hac vice*)
anthony.falzone@stanford.edu

STANFORD LAW SCHOOL CYBERLAW CLINIC
CENTER FOR INTERNET AND SOCIETY
559 Nathan Abbott Way
Stanford, California 94305-8610
Telephone:  (650) 724-0517
Facsimile:   (650) 723-4426

    Attorneys for Defendant
    BRIAN TRANSEAU p/k/a "BT"