UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

# TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………… iii
PRELIMINARY STATEMENT ……………………………………..... 1
STATEMENT OF FACTS ……………………………………………….. 2

    A. The Court's Order……………………………………………. 2
    B. Defendant's additional evidence……………………………. 3
    C. Chin's Declaration…………………………………………… 4

LEGAL ARGUMENT ……………………………………………….... 5

POINT I     LEGAL STANDARD…………………………………….. 5

    A. Local Rule 1.10 and Fed.R.Civ.P. 11 governs Chin's Declaration……………………………………………………… 5
    B. Defendant's burden of proof on summary judgment………… 6

POINT II     CHIN'S DECLARATION SHOULD BE CONSIDERED BY THIS COURT……………………………………………. 6

    A. Chin's Declaration must be assessed under Local Rule 1.10 and Fed.R.Civ.P. 11………………………………………….. 6
    B. Chin's Declaration contains facts based on personal knowledge and admissible evidence……………………………………………. 7
    C. There is no reason to strike Chin's entire declaration………… 9

POINT III     DEFENDANT'S ADDITIONAL EVIDENCE CASTS DOUBT ON HIS CLAIM OF INDEPENDENT CREATION.. 10

    A. Defendant failed to follow the Court's Order………………… 10
    B. The recreated *Aparthenonia* is not identical to the original *Aparthenonia*............................................................................ 10

POINT IV     *REPP v. WEBER* IS DIRECTLY CONTROLLING IN THIS CASE AND MUST BE FOLLOWED BY THIS COURT…… 13

    A. Three governing legal principles of *Repp v. Weber*………….. 13
    B. Plaintiffs need not rebut Defendant's evidence of independent creation……………………………………………………. 14

POINT V     THE COMPETING EXPERT EVIDENCE MUST RESOLVED BY A JURY……………………………………………… 14

CONCLUSION ……………………………………………………….. 15

# TABLE OF AUTHORITIES

**CASES**

Donahue v. Windsor Locks Board of Fire Commissioners,
834 F.2d 54 (2d Cir. 1987)……………………………………………………  14

DeSimone v. J.P. Morgan/Chase Bank,
No. 02 Civ. 7039, 2004 WL 2978011 (S.D.N.Y. Dec. 22, 2004)………..  9

Doe v. The National Board of Podiatric Medical Examiners,
No. 03 Civ 4034, 2004 WL 912599 (S.D.N.Y. Apr. 29, 2004)…………..  9

Gaste v. Kaiserman,
863 F.2d 1061 (2d Cir.1988)……………………………………………..  15

Levine v. McDonalds Corp.,
735 F.Supp. 92 (S.D.N.Y. 1990)…………………………………………..  14

Morris v. Northrop Grumman Corp.,
37 F.Supp.2d 556 (E.D.N.Y. 1999)……………………………………..  9

Repp v. Webber,
132 F.3d 882 (2d Cir. 1997)……………………………………………..  6, 13-15

Tufenkian Import/Export Ventures, Inc. v. Einstein Mooy, Inc.,
338 F.3d 127 (2d Cir. 2003)………………………………………………  6

U.S. v. Private Sanitation Industry Association of Nassau/Suffolk, Inc.,
44 F.3d 1082 (2d Cir. 1995)……………………………………………….  9

Vargas v. Pfizer,
418 F.Supp.2d 369 (S.D.N.Y. 2005)………………………………………  6

Vermont Teddy Bear Company, Inc. v. 1-800 Beargram Company,
373 F.3d 241 (2d Cir. 2004)……………………………………………….  6

Zakre v. Norddeutsche Landesbank Girozentrale,
396 F.Supp. 483 (S.D.N.Y. 2005)…………………………………………  9

**RULES**

Rule 11 of the Federal Rules of Civil Procedure
Rule 56(e) of the Federal Rules of Civil Procedure
Rule 1.10 of the Local Rules of the Southern & Eastern District of New York

## **PRELIMINARY STATEMENT**

Defendant's motion to strike ("Defendant's Motion") the supplemental declaration of Plaintiffs' attorney, Paul A. Chin, dated January 23, 2007 ("Chin's Decl.") is nothing more than a ruse submitted for the sole purpose of allowing Defendant to re-argue his motion for summary judgment ("Defendant's MSJ"). The true purpose of Defendant's Motion is transparent given the fact that eleven of the twelve pages of Defendant's memorandum of law in support of his motion to strike are dedicated to legal arguments in support of Defendant's MSJ, while just three paragraphs are dedicated to the alleged impropriety of Chin's Decl. Regardless of its designation or misdesignation, Defendant's Motion is as legally insufficient as his motion for summary judgment and both should be denied.

Chin's Decl. is not an "affidavit" limited to the confines of Rule 56(e) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."), but, instead, is a written statement executed by Plaintiffs' attorney which contains statements of fact based on: (i) Plaintiffs' attorney's personal knowledge; and (ii) the admissible evidence in this case. Therefore, Chin's Decl. should not be stricken because it is proper under Rule 1.10 of the Local Rules of the Southern & Eastern District Courts of New York and Fed.R.Civ.P. 11.

Defendant's recycled legal arguments in support of his motion for summary judgment demonstrate a profound misunderstanding of: (i) the Court's order requiring Defendant to produce a "re-creation" of the infringing composition in this case (*"Aparthenonia")*; (ii) Defendant's burden on his motion for summary judgment; and (iii) the controlling law in this Circuit regarding competing expert opinions on a motion for summary judgment.

First, Defendant's failure to use the "precise equipment[1]," Defendant claims he used to create the original *Aparthenonia,* in his attempt to recreate *Aparthenonia* prevents this Court from considering the "very best evidence" of Defendant's claim of independent creation. In addition, Defendant's own expert admits that the "re-created *Aparthenonia*" is not identical to the original *Aparthenonia*. These undisputed facts cast doubt on Defendant's claim of independent creation. Second, Defendant bears the burden of demonstrating that Plaintiffs have failed to establish probative copying through expert evidence of striking similarities between *Aparthenonia* and Plaintiffs' composition (*Bust Dat Groove*). However, Defendant does not claim that Plaintiffs have failed to present evidence of probative copying but, rather, argues that Defendant's alleged evidence of independent creation is more compelling than Plaintiffs' evidence of striking similarities. This is insufficient to render summary judgment in Defendant's favor. Finally, under controlling Second Circuit law, a jury, not this Court, must resolve the competing expert evidence in this case.

## **STATEMENT OF FACTS**

**A.   The Court's Order**

On November 3, 2006, the parties appeared before this Court for oral argument on Defendant's MSJ. During oral argument the Court recognized that the competing expert reports in this case precluded summary judgment in Defendant's favor:

> "<u>Ms. Ahrens</u>: …To avoid dismissal, plaintiffs must demonstrate that the two works are so strikingly similar that all of the evidence, taken as a whole, precludes any reasonable possibility that BT independently created his beat…Your Honor, this is not a battle of the experts –

---

[1] As used herein the term "precise equipment" refers to the: (1) G3 Apple computer; and (2) Propellerhead Reason 1.0 music software embodied in the G3 Apple computer's hardware, Defendant claims he used when he allegedly created the orginal *Aparthenonia.*

> The Court:   The Second Circuit's opinion in *Gates* at least implies that once there is a conflict in expert testimony on striking similarity, it's difficult, if not impossible, to grant summary judgment…"

*Exhibit A, Transcript of Nov. 3, 2006 Oral Argument, at pg.3.*

Instead of denying Defendant's MSJ, the Court, without application from either party, took the extraordinary step of re-opening discovery to allow Defendant to produce a re-creation of the original *Aparthenonia* for the Court's consideration. Id. at pg. 6-7. The Court believed that a re-creation of *Aparthenonia* by Defendant, utilizing the precise equipment he allegedly used to create the original *Aparthenonia*, would be the very best evidence of independent creation:

> "The Court:   …When I look at all of this, isn't the real key what a re-enactment of the creation of *Aparthenonia* would show since the equipment – <u>the parties agree that the equipment, the precise equipment that Transeau said he used to create it [*Aparthenonia*] in the first place still exists</u>…wouldn't the actual recreation of *Aparthenonia* be, to coin a term, the <u>very best evidence that could be offered</u>?" (emphasis added).

Id. at pgs. 7-8. Over Plaintiffs' objection, the Court ordered Defendant to produce additional evidence in support of Defendant's MSJ by: (i) recreating *Aparthenonia* utilizing the "precise equipment" that Defendant claimed he used to create the original *Aparthenonia*; and (ii) submitting a fast fourier transform analysis ("FFT analysis") of the recreated *Aparthenonia*. Id. at pg. 6-8, 19-21.

**B.     Defendant's additional evidence**

Defendant admits that he failed to conduct a recreation of *Aparthenonia* utilizing the "precise equipment" he allegedly used to create the original *Aparthenonia*. *Exhibit B, Declaration of Brain Transeau (dated November 27, 2006), ¶5.* The "precise equipment" was not unavailable to Defendant at the time he attempted his recreation of *Aparthenonia*

and Defendant does not offer any plausible reason[2] why he failed to use the "precise equipment" as required by this Court.

On December 1, 2006, Defendant's FFT expert, Dr. Richard Boulanger ("Dr. Boulanger") submitted a supplemental declaration in which he admits that the waveform and spectral data of the recreated *Aparthenonia* and the original *Aparthenonia* are different and do not match perfectly. *Exhibit C, Dr. Boulanger's Supplemental Declaration, ¶3, ¶7.*

**C.     Chin's Declaration**

On January 23, 2007, Plaintiffs' attorney submitted a supplemental declaration introducing Plaintiffs' expert's rebuttal report and opposing the additional evidence submitted by Defendant. *Exhibit D, Chin's Decl., et. seq.* Chin's Decl. contains statements of fact based on Chin's personal knowledge and admissible evidence previously submitted in this case. Attached to Chin's Decl is the supplemental report of Plaintiffs' drum expert, Matthew Ritter ("Ritter"), containing his analysis of the two recreated versions of *Aparthenonia.* Id. *at exhibit 15 attached thereto.* Ritter determined that the recreated *Aparthenonias* did not contain certain musical elements that were contained in the original *Aparthenonia.* Id. *at attached exhibit 15, ¶2-4.*

---

[2] Defendant speciously states that he did not use the precise equipment in his recreation because it was at Defendant's attorney's office, in San Francisco, California, "awaiting" inspection by Plaintiffs. *Exhibit B, ¶5.*

# **LEGAL ARGUMENT**

## POINT I
## LEGAL STANDARD

### A.   Local Rule 1.10 and Fed.R.Civ.P. 11 governs Chin's Declaration

Rule 56(e) states, in pertinent part, that "supporting and opposing <u>affidavits</u> shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, *and shall show affirmatively that the affiant is c*ompetent to testify to the matters stated therein." *Fed.R.Civ.P. 56(e).* Chin's Decl. is not an affidavit and Chin will not, and is not expected to, testify at the trial of this case. Therefore, Defendant's reliance on Fed.R.Civ.P. 56(e), with respect to the admissibility of Chin's Decl., is misplaced.

Local Rule 1.10 provides for acceptable substitutes for affidavits and states, in pertinent part, that: "In situations in which any local rule provides for an affidavit or a verified statement, the following are acceptable substitutes:…(b) if accepted by the court as a substitute for an affidavit or a verified statement, (1) a statement signed by an attorney or by a party not represented by an attorney pursuant to Federal Rules of Civil Procedure 11…" *U.S.Dist.Ct.Rules S&E.D.N.Y., Civil Rule 1.10.* Fed.R.Civ.P. 11 states, in pertinent part, that:

> "(a) Signature. Every pleading, written motion, and <u>other paper shall be signed by at least one attorney of record in the attorney's individual name</u>…(b)… By presenting to the court (whether by signing, *filing, submitting, or later advocating) a* pleading, written motion, or other paper, an attorney…is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances…(3) <u>the allegations and other factual contentions have evidentiary support</u>…" (emphasis added).

*Fed.R.Civ.P. 11(a), (b)(3).*

Therefore, Chin's Decl. is proper, and may be considered by this Court, because it contains statements of fact based on: (i) Chin's personal knowledge; and (ii) the admissible evidence presented in this case.

**B.    Defendant's burden of proof on summary judgment**

In this case, Defendant bears the burden of demonstrating the absence of a dispute of material fact and his entitlement to judgment in his favor as a matter of law. <u>Vermont Teddy Bear Company, Inc. v. 1-800 Beargram Company</u>, 373 F.3d 241, 244 (2d Cir. 2004).  In a copyright infringement action, "[T]he materiality of disputed facts is determined by…the Copyright Act."  <u>Vargas v. Pfizer</u>, 418 F.Supp.2d 369, 371 (S.D.N.Y. 2005).  To meet his burden on summary judgment, Defendant must show that Plaintiffs have failed to put forth evidence necessary to support their copyright infringement claims (i.e. evidence of striking similarity between *Bust Dat Groove* and *Aparthenonia)*.  <u>Repp v. Weber</u>, 132 F.3d 882, 890 (2d Cir. 1997) ("…the defendants may satisfy their burden under Rule 56 by showing 'that there is an absence of evidence to support [an essential element] of the nonmoving party's case.").  In assessing whether or not a material fact is in dispute, the Court must believe the evidence presented by Plaintiffs and must draw all reasonable inferences in Plaintiffs' favor.  <u>Tufenkian Import/Export Ventures, Inc. v. Einstein Moojy, Inc.</u>, 338 F.3d 127, 131 (2d Cir. 2003).

**POINT II**
**CHIN'S DECLARATION SHOULD BE CONSIDERED BY THIS COURT**

**A.    Chin's Decl. must be assessed under Local Rule 1.10 and Fed.R.Civ.P. 11**

"Chin's Decl." is a statement signed by Plaintiffs' attorney submitted for purposes of identifying facts and admissible evidence supporting Plaintiffs' opposition to Defendant's additional evidence. Such "papers" may be considered by this Court

provided that the statements contained therein are based on personal knowledge or contain facts which are supported by evidence presented in this action. *See, U.S.Dist.Ct.Rules S&E.D.N.Y., Civil Rule 1.10.* and *Fed.R.Civ.P. 11*. In addition, an attorney's affidavit may present admissible evidence where said evidence relates to items in the case, such as items in the record or items produced in discovery. *See, 11 Moore's Federal Practice, §56.14(1)I (Matthew Bender 3d ed. 2006).*

**B.     Chin's Decl. contains facts based on personal knowledge and admissible evidence**

Paragraphs 1-3 and 6 of Chin's Decl. contain statements of fact which any attorney involved in this case would have personal knowledge. *Exhibit D, ¶1 ("I am an attorney licensed to practice law in the courts of the state of New York and in this District..."); ¶2 ("On November 3, 2006 this Court entered an order allowing Defendant BT to conduct a re- creation, and subsequent expert analysis, of the infringing musical composition in this action..."); ¶3 ("On December 1, 2006, Defendant BT submitted, inter alai, the declaration of Brian Transeau...and the supplemental declaration of Dr. Richard Boulanger..."); ¶6 (Attached hereto as Plaintiffs' Exhibit 15 is a true and correct copy of the supplemental expert declaration of Matthew Ritter (Plaintiffs' drum expert)...").*

Paragraphs 4-5 of Chin's Decl. contain facts which are based on the admissible evidence submitted in this case. Paragraph 4 of Chin's Decl. states, in pertinent part, that "…Defendant BT did not utilize the same materials (i.e. the G3 Apple computer and the Propellerhead Reason music software contained therein) to recreate *Aparthenonia* that he allegedly used to create the original *Aparthenonia..."* Id. at ¶4. This factual contention comes directly from Defendant's own declaration submitted as evidence in this case:

> "5. I used the following hardware and software to recreate *Aparthenonia*: (a) an Apple G4 computer, <u>which is the closest computer I have to the G3 I used to make the original *Aparthenonia*</u> (The G3 computer on which I originally created Aparthenonia remains at the offices of my attorneys for inspection by Plaintiffs. I have not altered that computer in any way since locating it and providing it to my attorneys in August, 2006); (b) <u>Propellerhead Reason 1.0, the same version of the software that I used to create the original *Aparthenonia*</u>; and (c) Logic Audio software, which I also used to create the original *Aparthenonia*." (emphasis added).

*Exhibit B, ¶5.* Paragraph 4 also states that "…(ii) the re-created *Aparthenonia* is not identical to the original *Aparthenonia*." *Exhibit D,* at ¶4. This factual contention comes directly from Defendant's expert's declaration submitted as evidence in this case:

> "7…the waveform and spectral data of the recreated *Aparthenonia* are not a perfect match to that of the original *Aparthenonia*…these two tracks [i.e. recreated *Aparthenonia* and the original *Aparthenonia*] have slightly different waveform and spectral data…"

*Exhibit C, at ¶7.*

Paragraph 5 of Chin's Decl. states, in pertinent part, that "…Boulanger does not mention that he was presented with or reviewed a sound, in the re-created *Aparthenonia,* which was a cross between a snare and tom-tom (i.e. ghost note)…Defendant BT's declaration does [not] mention…that he "re-created" [the] ghost notes in the new *Aparthenonia.*" *Exhibit D, at ¶5.* The Court can verify the accuracy of this statement simply by looking at the supplemental declarations of Defendant and Defendant's expert. *See, Exhibits B and C.*

Paragraph 7 of Chin's Decl. quotes the statements contained in Ritter's supplemental declaration, which has been submitted as evidence in this case. *Exhibit D,*

*¶7 and exhibit 15, at ¶3 attached thereto.* Paragraph 8 of Chin's Decl. restates the admissible evidence contained in paragraphs 4-5 and 7 of Chin's Decl[3]. Id. *at ¶8.*

### C. There is no reason to strike Chin's entire declaration

Defendant's argument that "Mr. Chin [declaration] mischaracterizes, incorrectly summarizes, and draws biased inferences from evidence contained in witnesses' declarations" pertains to the weight and credibility of Chin's Decl. not to its admissibility. *See, Memorandum of Law in Support of Motion to Strike, at pg. 3.* As a result, this Court can assess the credibility of the statements made in Chin's Decl., and what weight should be afforded to such evidence, without striking Chin's entire declaration. Zakre v. Norddeutsche Landesbank Girozentrale, 396 F.Supp. 483, 506 (S.D.N.Y. 2005) (motion to strike affidavit denied where objections pertained to weight and credibility not admissibility); Morris v. Northrop Grumman Corp., 37 F.Supp.2d 556, 569 (E.D.N.Y. 1999) (motion to strike denied where court could consider those portions of the challenged affidavits that contain relevant admissible evidence). In any event, this Court may strike those portions of Chin's Decl., if any, which it believes is either unsupported by admissible evidence or not based on Plaintiffs' attorney's personal knowledge. DeSimone v. J.P. Morgan/Chase Bank, No. 02 Civ. 7039 (RPP), 2004 WL 2978011, at *4 (S.D.N.Y. Dec. 22, 2004) ("…any inappropriate portions of Plaintiff's submissions have been disregarded, and this Court's analysis relies upon admissible evidence.") *see also* Doe v. The National Board of Podiatric Medical Examiners, No. 03 Civ 4034 (RWS), 2004 WL 912599, at *4 (S.D.N.Y. Apr. 29, 2004) *citing* U.S. v. Private

---

[3] Plaintiffs concede that paragraph 9 of Chin's Decl. contains argument and should not be considered by the Court.

Sanitation Industry Association of Nassau/Suffolk, Inc., 44 F.3d 1082, 1084 (2d Cir. 1995).

**POINT III**
**DEFENDANT'S ADDITIONAL EVIDENCE CASTS DOUBT**
**ON HIS CLAIM OF INDEPENDENT CREATION**

**A.  Defendant failed to follow the Court's Order**

Defendant was required to recreate *Aparthenonia* by utilizing the "precise equipment" Defendant claimed he used to create the original *Aparthenonia. Exhibit A, at pg.* 6-8, 19-21.  It is undisputed that Defendant did not use the "precise equipment" in his attempt to recreate *Aparthenonia. Exhibit B, at ¶5.*  Defendant's failure to use this "precise equipment" in his attempt to recreate *Aparthenonia* not only violates this Court's Order but also runs afoul of the Federal Rules of Evidence.

Rule 1002 of the Federal Rules of Evidence requires a party who would prove the "content" of a writing, recording, or photograph must introduce the thing itself—the 'original."  *FRE 1002.*  Defendant failed to produce the original master recording of *Aparthenonia* in this case; therefore, the only way this Court can determine if Defendant independently created the original *Aparthenonia* is if Defendant recreated the original *Aparthenonia* by utilizing the "precise equipment" that Defendant claimed he used to create the original.  Defendant's failure to utilize the "precise equipment" in his attempt to recreate *Aparthenonia* prevents this Court from considering the "very best evidence" of whether or not Defendant independently created the original *Aparthenonia.*

**B.  The recreated *Aparthenonia* is not identical to the original *Aparthenonia***

It should be noted that Defendant submitted not one but two versions of his recreated *Aparthenonia (*identified as "NU *Aparthenonia-*W/TC" and "BT Nu Aparth.").

*Exhibit D, at attached exhibit 15, ¶3; Supplemental Declaration of Julie A. Ahrens, at "exhibit Z" attached thereto.* It is unclear why Defendant produced two versions of what he claims to be recreations of the original *Aparthenonia* or which version this Court is supposed to consider. In any event, it is clear that neither version is a recreation of the original *Aparthenonia.*

Ritter analyzed both recreated versions and determined that: (i) neither version contained the "ghost notes" that appear in the original *Aparthenonia;* and (ii) the version titled "BT NU Aparth" was "missing one of the open hi-hat sounds and the shifting of a bass drum note that occurs in the 4th measure of the original *Aparthenonia.*" *Exhibit D at exhibit 15, ¶3 attached thereto.* Recognizing the differences between the recreated versions and the original *Aparthenonia,* Ritter posed a very interesting question that neither Defendant nor his expert has answered:

> "If the same person created all three versions of "*Aparthenonia*" (the original, as well as the two recreations), then I am unclear as to why these differences of nuance would appear. It seems to me that the creator of the original "*Aparthenonia*" would know and be able to hear the details of his own work and would thus be able to recreate it exactly."

Id. *at exhibit 15, ¶4 attached thereto*.

Dr. Boulanger did not conduct an FFT analysis of both recreated versions of *Aparthenonia*, but instead only analyzed the version titled "NU Aparthenonia-W/TC." *Exhibit C, ¶3.* Dr. Boulanger admits that "NU Aparthenonia-W/TC" is not identical to the original *Aparthenonia:*

> "…I conclude that the recreated *Aparthenonia* is an exceptionally close match to the original *Aparthenonia*…I found them [the recreated and original *Aparthenonia*] to be exceptionally close matches…the waveform and spectral data of the recreated

> *Aparthenonia* are not a perfect match to that of the original *Aparthenonia..*"

Id. at ¶3, 6-7. In an effort to explain away Defendant's inability to recreate a composition that was identical to the original *Aparthenonia*, Dr. Boulanger states that "it is essentially impossible to create two separate audio tracks that would produce perfectly matching waveform and spectral data unless they were digitally copied." Id. at ¶7. This statement is at odds with Defendant's previous assertion that *Aparthenonia* could not have been created by sampling and digitally editing/manipulating the constituent musical elements of *Bust Dat Groove* because Dr. Boulanger's prior FFT analysis showed that no single drum strike in *Aparthenonia* was an exact match of a single drum strike in *Bust Dat Groove*. *See, Defendant's Memorandum of Law in Support of Defendant's MSJ, pg. 8 and the attached exhibit F, pgs. 2-3*. If the drum sounds contained in the recreated *Aparthenonia* came from the exact same music software Defendant claims he used to create the drum sounds in the original *Aparthenonia* (i.e. Propellerhead Reason version 1.0) then why was Dr. Boulanger unable to find identical matches of these drum sounds in his FFT analysis of the recreated *Aparthenonia* and the original *Aparthenonia*?

According to Dr. Boulanger, the absence of identical drum sounds between *Bust Dat Groove* and the original *Aparthenonia* proves that the original *Aparthenonia* was not created by using drum sounds from *Bust Dat Groove*. If this is true, then the absence of identical drum sounds between the recreated *Aparthenonia* and the original *Aparthenonia* must prove that the music software Defendant used to produce the drum sounds in the recreated *Aparthenonia* was not the same music software Defendant allegedly used to create the drums sounds in the original *Aparthenonia*. In short, if Defendant used the exact same music software to create all three versions of *Aparthenonia* (i.e. the original

and the two recreations) then Dr. Boulanger should have found identical drums sounds in all three versions. The fact that Dr. Boulanger was unable to find anything other than "exceptionally close matches" in the drum sounds of the recreated *Aparthenonia* and the original *Aparthenonia* makes his report no more compelling than Dr. Smith's[4] conclusion that the frequency spectra of the drum strikes contained in *Aparthenonia* and *Bust Dat Groove* are so close as to provide "extremely strong evidence in favor of Plaintiffs' assertion that *Aparthenonia* is based on a digitally edited and/or manipulated copy of Funky Drummer [i.e. *Bust Dat Groove*]." *See, Plaintiffs' Memorandum of Law in Opposition to Defendant's MSJ, at exhibit 11, pgs. 4-5.*

Defendant's additional evidence casts doubt on his claim of independent creation.

## POINT IV
## *REPP V. WEBER* IS DIRECTLY CONTROLLING IN THIS CASE AND MUST BE FOLLOWED BY THIS COURT

Conspicuously absent from Defendant's memorandum of law in support of his Motion is any citation to the Second Circuit's decision in *Repp v. Weber*. This decision is directly controlling in this action and must be applied by this Court.

**A.     Three governing legal principles of *Repp v. Weber***

The Second Circuit's decision in *Repp v. Weber* establishes three very important legal principles directly applicable to this action. First, a plaintiff in a copyright infringement action has the initial burden of proving "probative copying" either through access or through the existence of striking similarities. Repp v. Weber, 132 F.3d 882, 889 fn. 1 (2d Cir. 1997). Second, on a motion for summary judgment the court must "…assume the truth of the non-movant's evidence" and "resolve all ambiguities and draw

---

[4] Dr. Smith is Plaintiffs' FFT expert.

all inferences in favor of the non-moving party." *Id*. at 889-890. Finally, and most importantly, where a plaintiff establishes a *prima facie case* of probative copying evidence of independent creation does not warrant summary judgment in favor of the defendant but, rather, requires a jury to make the final call. *Id*. at 891. ("Whether the evidence of independent creation here is sufficient to rebut the prima facie case established in this action is a question for the factfinder…")

**B. Plaintiffs need not rebut Defendant's evidence of independent creation**

On Defendant's MSJ, the question this Court must ask is not whether Plaintiffs have presented evidence rebutting Defendant's evidence of independent creation, but rather have Plaintiffs submitted evidence of striking similarity (i.e. probative copying). The Second Circuit correctly admonished the district court in *Repp v. Weber* for rendering its decision based on the former analysis rather than the latter. *Id*. at 891. ("…the district court found on the motion for summary judgment that even if plaintiffs could prove access and probative similarity, they have not submitted any evidence to controvert the defendants' proof of independent creation...[T]he district court apparently was of the opinion that some direct evidence was required to contradict their version of the events surrounding the beginnings of "Phantom Song.").

## POINT V
## THE COMPETING EXPERT EVIDENCE MUST BE RESOLVED BY A JURY

It is axiomatic that on a motion for summary judgment "…the court cannot try issues of fact; it can only determine whether there are issues to be tried." Levine v. McDonald's Corp., 735 F.Supp. 92, 95 (S.D.N.Y. 1990) *citing* Donahue v. Windsor Locks Board of Fire Commissioners, 834 F.2d 54, 58 (2d Cir. 1987). "Clearly, the duty of a court on a motion for summary judgment is to determine whether there are any

genuine issues of material fact to be resolved by trial and not to decide factual issues." Repp v. Weber, 132 F.3d at 890.

By requiring Defendant to submit additional, post discovery, expert evidence on the issue of independent creation before ruling on Defendant's MSJ the Court is seeking to resolve a factual dispute that must be determined by a jury. When faced with the kind of competing expert evidence that has been presented in this case, a jury, not the Court, should make the final call. Repp v. Webber, 132 F.3d at 890 (summary judgment reversed where district court erroneously made factual determination in favor of defendant on the issue of striking similarity where there was competing expert evidence); Gaste v. Kaiserman, 863 F.2d 1061, 1067-68 (2d Cir. 1988) (affirming district court's decision to allow jury to determine if plaintiff's proof of striking similarity "preclude[d] any reasonable possibility of independent creation").

Plaintiffs three experts have demonstrated that *Aparthenonia* is strikingly similar, if not identical, to *Bust Dat Groove*. Defendant's additional expert evidence of independent creation is significantly flawed, if not entirely inadmissible. A jury, not the Court, should consider all of the expert evidence in this case and determine whether the proof of striking similarity precludes any reasonable possibility of independent creation.

## **CONCLUSION**

For the reasons stated herein, Defendants' Motion should be denied in its entirety.

Dated: New York, New York
March 29, 2007

Respectfully submitted,
   s/ Paul Chin
Paul A. Chin, Esq. (PC 9656)
LAW OFFICES OF PAUL A. CHIN
233 Broadway, 5th Floor
New York, NY 10279
(212) 964-8030
*Attorneys for Plaintiffs*