**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RALPH VARGAS AND BLAND RICKY ROBERTS,<br><br>                Plaintiffs,<br><br>  v.<br><br>PFIZER INC., PUBLICIS, INC., FLUID MUSIC, EAST WEST COMMUNICATIONS, INC., AND BRIAN TRANSEAU P/K/A "BT",<br><br>                Defendants. | 04 CV 9772 (WHP)<br>ECF CASE |

**REPLY MEMORANDUM IN SUPPORT OF BRIAN TRANSEAU'S MOTION TO STRIKE DECLARATION OF PAUL CHIN AND IN FURTHER SUPPORT OF BRIAN TRANSEAU'S MOTION FOR SUMMARY JUDGMENT**

## FACTS THAT REMAIN UNDISPUTED

- Plaintiffs claim BT created *Aparthenonia* by sampling (physically copying) and rearranging Plaintiffs' drum beat, *Bust Dat Groove* ("*BDG*"). Pl. SJ Opp. Br. at 8.

- There is no evidence Defendants ever had access to *BDG*. Pl. SJ Opp. Br. at 13.

- *BDG* is a single bar of drumming that lasts 2.3 seconds and is then copied and looped such that every bar of *BDG* is identical. Pl. 56.1 Statement at No. 42.

- No witnesses, not Plaintiffs' FFT expert, Dr. Smith, nor Plaintiffs' other experts, ever found a single drum strike in *Aparthenonia* that was copied from *BDG*. Pl. 56.1 Statement at No. 40.

- In November 2006, BT re-enacted how he independently created *Aparthenonia* in front of three witnesses and a videographer who recorded the entire demonstration. Nov. 27, 2006 BT Decl. at ¶5 (Docket # 112).

- BT did not use any element of *BDG* in recreating *Aparthenonia*. *Id*. at 12.

- *Recreated Aparthenonia* is a much closer match to *Aparthenonia*, both in overall sound and on a drum strike by drum strike basis, than *Aparthenonia* is to *BDG*. Dec. 1. Supp. Decl. of Dr. Boulanger at ¶¶ 4-8 (Docket # 115).

- The drum strikes in *Recreated Aparthenonia* are virtually identical to those in *Aparthenonia*—they are as close a match to the original as could be made without digitally copying the original. *Id.*

- BT identified the snare sound file from the Reason sound library "Sd_Bricks.wav" as the "infamous ghost note" discussed by Plaintiffs' expert Ritter. Dec. 1, 2006 Ahrens Supp. Decl. Ex. AA at 10:52 minutes (Docket # 111).

- Plaintiffs' expert Ritter hears a snare sound in the *Recreated Aparthenonia* at the appropriate place for the "ghost notes," but he contends they do not sound identical to the "ghost notes" snare sound in *Aparthenonia*. Jan. 23, 2007 Chin Decl. Ex. 15 at ¶ 3 (Docket # 124).

- Ritter's transcription of *Recreated Aparthenonia* shows the presence of the so-called "ghost notes" in the exact same place as they appear in his transcription of *Aparthenonia*. *Id.* at 4.

- After reviewing and analyzing the *Recreated Aparthenonia*, Plaintiffs offer no evidence or expert analysis that that the only way BT made *Aparthenonia* was by copying *BDG*.

## ARGUMENT

**I.  CHIN'S DECLARATION IS IMPROPER AND SHOULD BE STRIKEN IN PART**

Although Plaintiffs struggle mightily to argue that Mr. Chin's declaration was proper, other than paragraphs 1 and 6, it simply is not, as Plaintiffs themselves admit regarding

1

paragraph 9. The paragraphs of Mr. Chin's declaration at issue contain attorney argument and/or biased interpretation of the facts, as Defendants explained in their Opening Brief at 2-3. It is improper for Plaintiffs to fall back on a declaration of their attorney to provide the interpretations of the facts that their experts either could not or would not provide. Mr. Chin's declaration accordingly should be stricken in part.

## II.   PLAINTIFFS CANNOT POINT TO EVIDENCE SUFFICIENT FOR A REASONABLE JURY TO FIND STRIKING SIMILARITY

At the conclusion of the briefing, it is plain that Defendants' motion for summary judgment must be granted because Plaintiffs have not presented evidence of striking similarity sufficient for a reasonable jury to find that Plaintiffs have precluded any reasonable possibility that *Aparthenonia* was independently created.[1] Plaintiffs' evidence is insufficient to withstand summary judgment for the following reasons.

### A.   BT's Evidence of Independent Creation is Unrebutted

First and foremost, there is no dispute that BT created a version of *Aparthenonia* ("*Recreated Aparthenonia*") without copying any element from *BDG*. Plaintiffs do not dispute that BT made *Recreated Aparthenonia* independently using only a computer loaded with Propellerhead Reason 1.0 and Logic Audio software, and without taking anything from *BDG*. Nov. 27, 2006 BT Decl. at ¶5 (Docket # 112). BT demonstrated the recreation in the presence of two witnesses, plus counsel and a videographer who recorded the entire session. BT's Br. at 5-6.

---

[1] Plaintiffs accuse Defendants of misunderstanding their burden as the moving parties on summary judgment. There is no misunderstanding. The law is plain that if Plaintiffs cannot show sufficient evidence to allow a reasonable jury to preclude the possibility that *Aparthenonia* was independently created, summary judgment must be granted for Defendants. *Repp v. Webber*, 132 F.3d 882, 889-90 (2d Cir. 1997) ("The Supreme Court teaches that a 'genuine' dispute over a material fact arises only where it can be said that the evidence would allow a reasonable jury to find in favor of the non-moving party.") (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)); see also id. at 890 ("defendants may satisfy their burden under Rule 56 by showing 'that there is an absence of evidence to support [an essential element] of the nonmoving party's case.'") (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)) (brackets in original).

2

Plaintiffs raise no issue with BT's method of making *Recreated Aparthenonia* other than to misapprehend the Best Evidence Rule by speciously asserting, without more, that BT's use of a different general purpose computer to recreate *Aparthenonia* somehow mattered. As with anything created on a general purpose computer, it is the software, not the computer that determines the product.

Plaintiffs do not contest that *Recreated Aparthenonia* is "an exceptionally close match to the original *Aparthenonia*" and that the two works are "virtually identical" (Dec. 1, 2006 Supp. Decl. of Boulanger at ¶¶ 4, 8, and 12 (Docket # 115)). Rather, Plaintiffs argue that because *Aparthenonia* and *Recreated Aparthenonia* are not identical, Defendants have failed to show independent creation. Plaintiffs further argue that BT is applying a double-standard to his infringement analysis as compared to his analysis of independent creation. Plaintiffs argue that the fact that *Recreated Aparthenonia* is not identical to *Aparthenonia* must mean that *Aparthenonia* was not created by the same process used to make *Recreated Aparthenonia*.

Plaintiffs' argument ignores the facts and allegations of this case. Plaintiffs are pursuing a case of sound recording copyright infringement on the theory that BT created *Aparthenonia* by sampling (physically copying) and rearranging *BDG*. It is both obvious and undisputed that for *Aparthenonia* to be made up of drum strikes physically copied from *BDG*, the drum strikes in *Aparthenonia* must be direct copies of drum strikes in *BDG*. BT's SJ Br. Ex. B (Vargas Dep. Tr. at 416:16-417:1) and Ex. C (Roberts' Dep. Tr. at 29:23-30:3). Accordingly, the fact that Plaintiffs' expert Smith never found any direct copies from *BDG* in *Aparthenonia* shows that *Aparthenonia* cannot be a copy of *BDG*. BT's SJ Br. at 16-19; BT's SJ Reply Br. at 6.

Likewise, the fact that the drum strikes in *Recreated Aparthenonia* are not exact matches to the drum strikes in *Aparthenonia* shows two things. ***First***, that FFT analysis is incredibly

sensitive. Dec. 1, 2006 Supp. Decl. of Boulanger at ¶ 7 (Docket # 115). The precision of FFT analysis makes it the ideal method for determining whether two works are physical copies of each other. "Two separate audio files will not have perfectly matching spectral data unless one is a digital copy of the other." *Id*. If *Aparthenonia* was a physical copy of *BDG*, as Plaintiffs contend, its spectral data would precisely match that of *BDG*'s. But Plaintiffs have no evidence of any direct copies of *BDG*'s drum strikes in *Aparthenonia*.

*Second*, the differences apparent in the FFT analysis demonstrate that *Recreated Aparthenonia* was created from scratch, rather than from copying *Aparthenonia*. As the video of BT's recreation shows, BT made *Recreated Aparthenonia* by taking stock drum sounds from the Reason sound library and then performing numerous adjustments to them using the virtual levers and dials present in the Reason and Logic software. Dec. 1, 2006 Ahrens Supp. Decl. Ex. AA (Docket # 111). Because BT made numerous fine-tuning adjustments, it would have been impossible for him to recreate a version of *Aparthenonia* so identical that it could not be distinguished by FFT analysis. Dec. 1, 2006 Supp. Decl. of Boulanger at ¶ 7 (Docket # 115). The minutest touch of the mouse on the virtual dials would cause differences detectable by FFT analysis. *Id*. Thus, BT's evidence of independent creation remains unrebutted. No reasonable jury could preclude any reasonable possibility of independent creation when faced with the unrebutted evidence and testimony that BT independently created a "virtually identical" version of *Aparthenonia* from scratch.

### B. The Undisputed Fact That *Recreated Aparthenonia* Is Much Closer To *Aparthenonia* Than Is *BDG* Means There Is No Striking Similarity

The further problem with Plaintiffs' argument is that Plaintiffs misapprehend the law. Defendants do not need to show that BT can exactly recreate *Aparthenonia* to prevail on summary judgment. Instead, BT need only show that he can create a version of *Aparthenonia*

4

that is closer to the original *Aparthenonia* than is *BDG*. Each of Plaintiffs' experts' ultimate conclusions are based on the assumption that works as similar as *BDG* and *Aparthenonia* could not be created without one being a copy of the other. Yet after BT submitted *Recreated Aparthenonia*, Plaintiffs do not dispute that *Recreated Aparthenonia* is a closer match to *Aparthenonia* than *BDG* is to *Aparthenonia*.[2] Accordingly, no reasonable jury could conclude that the only way *Aparthenonia* could have been created was by copying *BDG* because BT has offered uncontested proof that he independently created a work much closer to *Aparthenonia* than *BDG* is.

### C. Plaintiffs Can Point to No Evidence Or Testimony That Independent Creation Is Precluded Notwithstanding BT's Recreation

After receiving BT's *Recreated Aparthenonia*, none of Plaintiffs' experts opine that any reasonable possibility of independent creation of *Aparthenonia* remains precluded. No reasonable jury could find *Aparthenonia* strikingly similar to *BDG* after seeing *Recreated Aparthenonia* unless Plaintiffs give them some evidence or explanation as to how any possibility of independent creation remains precluded. But Plaintiffs' experts are completely unable to state that there is no possibility of independent creation after reviewing *Recreated Aparthenonia*. For this reason, summary judgment must be granted for Defendants.

## CONCLUSION

For the above stated reasons, the Court should grant Defendants' motion for summary judgment and dismiss Plaintiffs' case with prejudice.

---

[2] When Ritter, Plaintiffs' only expert to opine BT's recreation, compared *Aparthenonia* and *Recreated Aparthenonia*, he found them "very similar." Ritter Supp. Decl. ¶ 3. The only differences he noted were that the "ghost notes" did not sound "identical." *Id.* Ritter never contested that *Recreated Aparthenonia* is a much closer match to *Aparthenonia* than *BDG* is to *Aparthenonia*. In addition, although at oral argument Plaintiffs' counsel twice told the court that Dr. Smith would offer an analysis of BT's *Recreated Aparthenonia* (Oral Argument Tr. at 20 and 22), after receiving BT's *Recreated Aparthenonia*, Dr. Smith is suddenly absent.

| | |
|---|---|
| Dated: April 4, 2007 | KIRKLAND & ELLIS LLP |

By: /s/
 Julie A. Ahrens (JA 0372)
 jahrens@kirkland.com
 Alice C. Garber (*pro hac vice*)
 agarber@kirkland.com

KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California 94104-1501
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

David S. Olson (DO 4906)
dolson@law.stanford.edu
Anthony Falzone (*pro hac vice*)
anthony.falzone@stanford.edu

STANFORD LAW SCHOOL CYBERLAW CLINIC
CENTER FOR INTERNET AND SOCIETY
559 Nathan Abbott Way
Stanford, California 94305-8610
Telephone: (650) 724-0517
Facsimile: (650) 723-4426

 Attorneys for Defendant
 BRIAN TRANSEAU p/k/a "BT"