UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
                                                         :
RALPH VARGAS and BLAND-RICKY
ROBERTS,                                                 :
                                                              04 Civ. 9772 (WHP)
            Plaintiffs,                                  :
                                                              MEMORANDUM AND ORDER
     -against-                                           :

BRIAN TRANSEAU et al.,                                   :

            Defendants.                                  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

WILLIAM H. PAULEY III, District Judge:

      Ralph Vargas ("Vargas") and Bland-Ricky Roberts ("Roberts") (collectively, the "Plaintiffs") bring this copyright infringement action against East West Communications, Inc. ("East West") and Brian Transeau ("Transeau") (collectively, the "Defendants").[1] Plaintiffs allege that Defendants' sound recording titled "Aparthenonia" is a copy of Plaintiffs' musical composition and recording titled "Bust Dat Groove Without Ride" ("BDG"). Defendants move for summary judgment, contending that Plaintiffs cannot demonstrate that Transeau had access to BDG. For the reasons set forth below, Defendants' motion is granted.

## BACKGROUND

      The facts underlying this action are set forth in this Court's Memorandum and Order dated October 26, 2005, familiarity with which is assumed. See Vargas v. Pfizer, Inc., 418 F. Supp. 2d 369 (S.D.N.Y. 2005). Additionally, the following background is relevant to Defendants' motion.

---

[1] On February 10, 2006, Plaintiffs voluntarily dismissed their claims against Publicis, Inc., Pfizer, Inc. and Alanda Music, Ltd.

Roberts is the owner of the copyright to a sound recording titled "Funky Drummer Vol. II" ("FD II"), of which BDG is part. (Second Amended Complaint, dated Nov. 8, 2005 ("Compl.") Exs. B-C.) BDG is a live drumming performance by Vargas comprising one measure of percussion music looped 27 times. Vargas, 418 F. Supp. 2d at 370. The composition utilizes a high-hat cymbal, snare drum, bass drum and "ghost notes."[2] (Declaration of Paul A. Chin, dated Oct. 12, 2006 ("Chin Decl.") Ex. 3: Declaration of Matthew Ritter, dated July 19, 2005 ("Ritter Decl.") ¶¶ 5, 19; Defendants' Statement Pursuant to Rule 56.1, dated Sept. 25, 2006 ("Def. 56.1 Stmt.") ¶ 27.)

In 1994, up to 4,000 copies of FD II were purportedly manufactured as vinyl long play records and distributed to retail record stores. (Plaintiffs' Statement Pursuant to Rule 56.1, dated Oct. 12, 2006 ("Pl. 56.1 Stmt.") ¶¶ 18-19, 21, 26; Def. 56.1 Stmt. ¶ 26.) There is no evidence regarding retail sales of FD II, but any such sales would have occurred between January and April 1994. (Pl. 56.1 Stmt. ¶¶ 15, 20-21; Def. 56.1 Stmt. ¶¶ 15, 20-21.) The only known copy of FD II is owned by Vargas. (Def. 56.1 Stmt. ¶ 16.)

Transeau is a musician who performs a variety of genres, including "break beat," "trance," "house" and "hip-hop." (Chin Decl. Ex. 6: Transcript of Deposition of Brian Transeau, dated Aug. 16, 2006 ("Transeau Tr.") at 77-80.) "Aparthenonia," a song Transeau composed in the year 2000, utilizes between one bar and two and one-quarter bars of drum music looped for nine seconds. (Def. 56.1 Stmt. ¶ 10; Pl. 56.1 Stmt. ¶ 10.) Like BDG, Aparthenonia is composed of a high-hat, snare drum, bass drum and ghost notes. (Ritter Decl. ¶¶ 5, 11-17.) Aparthenonia was included in a commercial jingle for the drug Celebrex, as well as Transeau's album titled "Breakz from the Nu Skool," which was manufactured, distributed, sold and licensed by East

---

[2] According to Plaintiffs, a ghost note is a unique percussion sound with characteristics of both a tom-tom drum and a snare drum. (Ritter Decl. ¶ 6.)

2

West. (Chin Decl. Ex. 8 ¶ 1.) Transeau contends that he created Aparthenonia on his tour bus using a laptop computer and music-generation software called Propellerhead Reason ("Reason"). (Def. 56.1 Stmt. ¶¶ 4-8.) Breakz from the Nu Skool contains 403 separate beats that Transeau contends he created on Reason. (Transeau Tr. at 150.)

Plaintiffs allege that Transeau created Aparthenonia by "sampling," i.e. physically copying, and then digitally manipulating BDG. (Pl. 56.1 Stmt. ¶ 3.) On September 25, 2006, Defendants moved for summary judgment on the issue of access. This Court heard oral argument on the motion on November 3, 2006. During the argument, the Court observed that Transeau had not recreated Aparthenonia for purposes of this litigation to support his argument that independent creation was possible. (Transcript of Proceedings, dated Nov. 3, 2006 ("Tr.") at 6-10.) On the Court's request, Transeau submitted such a re-creation ("New Aparthenonia") on December 1, 2006. (See Supplemental Declaration of Julie A. Ahrens, dated Dec. 1, 2006 ("Supp. Ahrens Decl.").) Plaintiffs' counsel objected to the submission (Tr. at 10),[3] and on November 9, 2006, Plaintiffs moved for reconsideration of the Court's request for New Aparthenonia. The Court denied Plaintiffs' motion on December 15, 2006.

## DISCUSSION

I. Summary Judgment Standard

Summary judgment is warranted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

---

[3] The Court overruled this objection because, inter alia, Plaintiffs themselves asserted that "BT has not demonstrated . . . that the drum sounds he extracted from Reason are the same as, or similar to, the drum sounds embodied in Aparthenonia." (Pl. 56.1 Stmt. ¶ 9.)

3

matter of law." Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The materiality of disputed facts is determined by the governing substantive law, Dister v. Cont'l Group, Inc., 859 F.2d 1108, 1114 (2d Cir. 1988), in this case the Copyright Act, Repp v. Webber, 132 F.3d 882, 890 (2d Cir. 1997). An issue of fact is "material" if it might "affect the outcome of the suit under the governing law [while] an issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Shade v. Hous. Auth. of New Haven, 251 F.3d 307, 314 (2d Cir. 2001). The burden of demonstrating the absence of any genuine dispute as to a material fact rests with the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Grady v. Affiliated Cent., Inc., 130 F.3d 553, 559 (2d Cir. 1997). In determining whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Liberty Lobby, 477 U.S. at 255.

If the moving party meets its initial burden, the non-moving party must then come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(c); Carlton v. Mystic Transp., Inc., 202 F.3d 129, 133 (2d Cir. 2000). The non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), and "may not rely on conclusory allegations or unsubstantiated speculation," Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient." Liberty Lobby, 477 U.S. at 248. Instead, the non-movant must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." Liberty Lobby, 477 U.S. at 252. Where it is apparent that no rational finder of fact "could find in favor of the non-moving party because the evidence to support its case is so slight," summary

4

judgment should be granted. Gallo v. Prudential Residential Servs., Ltd., 22 F.3d 1219, 1223 (2d Cir. 1994).

II. Copyright Infringement

A plaintiff asserting copyright infringement must establish: "(1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original." Feist Pubs., Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991). The Second Circuit has held:

> To demonstrate unauthorized copying, the plaintiff must first "show that his work was actually copied"; second, he must establish "substantial similarity" or that "the copying amounts to an improper or unlawful appropriation," i.e., (i) that it was protected expression in the earlier work that was copied and (ii) that the amount that was copied is "more than de minimis."

Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc., 338 F.3d 127, 131 (2d Cir. 2003) (quoting Castle Rock Entm't v. Carol Pub. Group, Inc., 150 F.3d 132, 137-38 (2d Cir. 1998)).

"Actual copying may be established by direct or indirect evidence." Jorgensen v. Epic/Sony Records, 351 F.3d 46, 51 (2d Cir. 2003) (quotations omitted). "Since direct evidence of copying is seldom available, 'copying may be inferred where a plaintiff establishes that the defendant had access to the copyrighted work and that substantial similarities exist as to protectible material in the two works.'" Lipton v. Nature Co., 71 F.3d 464, 471 (2d Cir. 1995) (quoting Walker v. Time Life Films, Inc., 784 F.2d 44, 48 (2d Cir. 1986)). Alternatively, where two works are "so strikingly similar as to preclude the possibility of independent creation, copying may be proved without a showing of access." Repp v. Webber, 132 F.3d 882, 889 (2d Cir. 1997) (quoting Lipton, 71 F.3d at 471); Gaste v. Kaiserman, 863 F.2d 1061, 1067-68 (2d Cir. 1988).

Plaintiffs concede that access has not been proven and, therefore, rely solely on the contention that BDG and Aparthenonia are strikingly similar. (Pl. 56.1 Stmt. ¶ 22.) "Striking similarity exists when two works are so nearly alike that the only reasonable explanation for such a great degree of similarity is that the later . . . was copied from the first." Jorgensen v. Careers BMG Music Publ'g, No. 01 Civ. 357 (LAP), 2002 WL 1492123, at *5 (S.D.N.Y. July 11, 2002) (quoting Cox v. Abrams, No. 93 Civ. 6899 (RJW), 1997 WL 251532, at *5 (S.D.N.Y. May 14, 1997)). The court's task "is to apply logic and experience to determine if copying is the only realistic basis for the similarities at hand." Mowry v. Viacom Int'l, Inc., No. 03 Civ. 3090 (AJP), 2005 WL 1793773, at *10 (S.D.N.Y. July 29, 2005) (quoting 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13.02[B]). "[T]o establish 'striking similarity,' a plaintiff must come forward with 'specific evidence.'" Jorgensen, 2002 WL 1492123, at *5 (quoting McRae v. Smith, 968 F. Supp. 559, 567 (D. Colo. 1997)). Although the striking similarity test is "applied with particular stringency in cases . . . involving popular music," Tisi v. Patrick, 97 F. Supp. 2d 539, 548 (S.D.N.Y. 2000), striking similarity is a question of fact to be left to the jury where reasonable minds could differ, see Repp, 132 F.3d at 890-91; Gaste, 863 F.2d at 1068-69.

To rebut Plaintiffs' contention of striking similarity, Defendants offer the testimony of Dr. Richard Boulanger, a Professor of Music Synthesis at Berklee College of Music. Boulanger compared BDG and Aparthenonia using Fast Fourier Transform ("FFT") spectral analysis, which Plaintiffs concede is an appropriate method for determining whether Aparthenonia is a digitally edited copy of BDG. (Declaration of Christopher W. Keegan, dated Sept. 25, 2006 ("Keegan Decl.") Ex. N: Expert Report of Richard Boulanger, dated Jan. 31, 2006 ("Boulanger Report") at 2-3; Pl. 56.1 Stmt. ¶ 29.) FFT converts sounds into a "frequency-domain representation," i.e., a visual display of the sound's "unique timbre, spectrum [and] color." (Boulanger Report at 2.) An FFT analysis "separate[s] out all the components in a

complex sound and show[s] how they evolve in time and contribute to make up the sound that we identify as unique." (Boulanger Report at 2.) FFT analysis can reveal the characteristics of sounds with much greater precision than the unaided ear. (Pl. 56.1 Stmt. ¶ 30; Def. 56.1 Stmt. ¶ 30.) Comparing the FFT representations of BDG and Aparthenonia, Boulanger concluded that "the audio source material used in Aparthenonia is unique and original, and is not at all based on or copied or derived from [BDG]." (Boulanger Report at 61.)

Plaintiffs' FFT expert, Dr. Stephen Smith, <u>confirmed</u> that Aparthenonia was not digitally copied from BDG. (Keegan Decl. Ex. M: Expert Report of Steven W. Smith, dated Mar. 11, 2006 ("Smith Report") at 4-5.) Smith identified two categories of "copying" that may be observed in an FFT analysis: "direct" and "associated." (Smith Report at 4.) "Direct copies" occur when a sound is copied electronically. (Smith Report at 4.) An FFT analysis of direct copies will involve "an identical match in both waveform and frequency spectra [with] [t]he only difference [resulting] from whatever degradation is introduced by the copying procedure." (Smith Report at 4.) Thus, direct copies are identical sounds with slight variations arising from the copying process itself. "Associated copies" are recorded sounds that are not "exactly alike," but are "very similar to each other in both waveform and frequency spectra." (Smith Report at 4.) The example of an associated copy provided by Smith is the same drummer striking the same drum twice. (Smith Report at 4.) Thus, an associated "copy" is not actually a copy, but rather an independently created sound that is similar to the first sound. Crucially, Smith found associated copies but no direct copies in comparing BDG to Aparthenonia. (Smith Report at 4-5; Keegan Decl. Ex. L: Transcript of Deposition of Steven Smith, dated Aug. 15, 2006 ("Smith Tr.") at 174.) Smith's expert testimony therefore undermines Plaintiffs' theory of the case, which is that

7

Transeau digitally copied BDG.[4]

Plaintiffs also proffer the opinion of a purported percussion expert, Matthew Ritter, who contends (without reliance on a waveform or spectral analysis) that "Aparthenonia is a digitally edited version of [BDG]." (Ritter Decl. ¶ 16.) Yet Ritter equivocates as to the precise level of similarity between the two songs. At one point in his declaration, Ritter suggests that the drum sounds in Aparthenonia and BDG are "identical." (Ritter Decl. ¶ 12; see also Chin Decl. Ex. 12: Transcript of Deposition of Matthew Ritter, dated Aug. 10, 2006 ("Ritter Tr.") at 59.) Leaving aside that this opinion directly contradicts Smith's conclusions, Ritter backpeddles later in his declaration, asserting only that "Aparthenonia is significantly similar, if not identical, to BDG." (Ritter Decl. ¶ 32.) Ritter also waffled about the level of similarity between the two works at his deposition. (Keegan Decl. Ex. U: Transcript of Deposition of Matthew Ritter, dated Aug. 10, 2006, at 131-38.)

The threshold required to establish striking similarity is "stringent," and it requires more than a showing of "substantial" similarity. Jorgensen, 2002 WL 1492123, at *5 (plaintiff failed to show striking similarity where his expert "conclude[d] that the songs at issue [were] only 'substantially similar' and not 'strikingly similar'"); see also Glover v. Austin, 447 F. Supp. 2d 357, 363 (S.D.N.Y. 2006) ("Plaintiff's expert . . . opines merely that 'within a reasonable degree of probability, whichever song was created first, the second song was created with

---

[4] At his deposition, Smith testified that he found only associated copies because he "didn't specifically look for direct copies." (Smith Tr. at 174.) While Plaintiffs attempt to discount Smith's conclusions based on this testimony, it is Plaintiffs' burden to provide "specific evidence" from which a jury could find striking similarity. Jorgensen, 2002 WL 1492123, at *5. Given Plaintiffs' claim that Aparthenonia was digitally copied from BDG, counsel for Defendants requested during Smith's deposition that he conduct a follow-up search for direct copies. (Smith Tr. at 180-81.) Smith was non-committal, claiming that he "d[id] not have a great deal of time that [he could] spend on the case." (Smith Tr. at 181.) There is no evidence that Smith re-examined the data in search of the direct copies.

reference to and influenced by the first.' This opinion falls well short of the requisite demonstration that 'Unpretty' is 'so strikingly similar' to 'Make Up Your Mind' as to preclude the possibility of independent creation and to allow access to be inferred without direct proof."); 3 Patry on Copyright § 9.43 ("[U]nless a [plaintiff's expert] report scrupulously follows decisional law and states: (a) the works are strikingly similar; and (b) independent creation is precluded, the report is worthless.") The testimony of an expert who equivocates on the level of similarity between two works need not be credited by the Court in resolving a motion for summary judgment. See Jorgensen, 351 F.3d at 56 n.9 (rejecting plaintiffs expert's statement that two songs are "strikingly similar" when the expert had previously claimed that defendant's song was only a "subtle infringement").

In any event, at Ritter's deposition he was unable to completely rule out the possibility that Aparthenonia had been created independently using Reason. (Ritter Tr. at 77.) To show a striking similarity, Plaintiffs must demonstrate that there is no possibility of independent creation. See Gaste, 863 F.2d at 1068 ("A plaintiff has not proved striking similarity sufficient to sustain a finding of copying if the evidence as a whole does not preclude any reasonable possibility of independent creation."); 3 Patry on Copyright § 9.47 (noting that in the Second Circuit, "striking similarity plus no reasonable possibility of independent creation must be proven by plaintiff").

In an attempt to explain the differences between BDG and Aparthenonia, Plaintiffs proffer a purported sound engineer and sampling expert, Ivan A. Rodriguez, who asserts that Transeau created Aparthenonia by importing drum beats from BDG onto Reason. (Chin Decl. Ex. 9: Declaration of Ivan A. Rodriguez, dated Jul. 20, 2005 ("Rodriguez Decl.") ¶ 5.) Conceding that the sounds contained on the two works are not identical, Rodriguez attributes the differences to "digital signal processing (or enhancements, reverb equalizing, dynamics, mix-

9

down, mastering, etc.)" performed by Transeau. (Rodriguez Decl. ¶ 15.) Yet Rodriguez fails to substantiate his opinion that Transeau manipulated BDG using these tools. He offers no explanation for what the tools are; provides no significant detail regarding how they alter sound; and provides no demonstration of how a sound from BDG would be manipulated to achieve one of the sounds in Aparthenonia. Rodriguez provides only conclusory assertions, which are insufficient to defeat a motion for summary judgment. Jorgensen, 351 F.3d at 56 n.9 (holding that expert's conclusory opinion of "striking similarity" insufficient to defeat a motion for summary judgment); see also British Telecomms. PLC v. Prodigy Commc'ns Corp., 217 F. Supp. 2d 399, 417 (S.D.N.Y. 2002) (holding that expert's conclusory statement did not create genuine issue of material fact to preclude summary judgment); Pretesting Co. v. Arbitron Co., No. 93 Civ. 6031 (CBM), 1996 WL 480899, at *5 (S.D.N.Y. Aug. 23, 1996) (same). Additionally, like Ritter, Rodriguez conceded at his deposition that he could not rule out the possibility of independent creation. (Chin Decl. Ex. 10: Transcript of Deposition of Ivan A. Rodriguez, dated Aug. 9 2006 ("Rodriguez Tr.") at 196.)

Repp v. Webber, cited by Plaintiffs, is distinguishable for these reasons. Repp, 132 F.3d 882. The plaintiff in Repp alleged that there were striking similarities between his work and the defendant's. Repp, 132 F.3d at 889-91. The District Court granted summary judgment to the defendant on the ground that no reasonable jury could find a striking similarity. Repp, 132 F.3d at 887. The Court of Appeals reversed, noting that the plaintiff had proffered expert testimony regarding the alleged striking similarities. Repp, 132 F.3d at 890-91. However, the expert testimony in Repp was: (1) internally consistent; (2) properly supported by detailed musicological analysis; and (3) directly supportive of the plaintiff's theory of the case. Plaintiffs here proffer no such testimony.

Defendants bolster their argument that striking similarity is lacking with evidence

10

of independent creation. First, they offer testimonial evidence that Transeau independently composed Aparthenonia on his tourbus in 2000 or 2001 using Reason. (Def. 56.1 Stmt. ¶¶ 2, 4-5, 7-8.) Additionally, Boulanger conducted an FFT analysis of Aparthenonia and New Aparthenonia, concluding that they are "virtually identical." (Supplemental Declaration of Richard Boulanger, dated Dec. 1, 2006 ("Supp. Boulanger Decl.") ¶ 8.) There is undisputed evidence that the minor differences between Aparthenonia and New Aparthenonia were unavoidable because of the nature of the Reason software. Transeau videotaped the session in which New Aparthenonia was made. (Supp. Ahrens Decl. Ex. AA.) The videotape demonstrates that Transeau took stock drum sounds from Reason's sound library and performed numerous adjustments to them using virtual levers and dials present in other software. The levers and dials, which are manipulated using a computer mouse, do not readily permit the type of precision required to create an exact replica. Thus, Boulanger testified that "it is essentially impossible to create two separate audio tracks that would produce perfectly matching waveform and spectral data unless they were digitally copied."[5] (Supp. Boulanger Decl. ¶ 7.) Regardless, even Smith's explanation of "direct copies" in an FFT analysis would anticipate minor differences between the original version of Aparthenonia and Transeau's independent creation.[6] (See Smith Report at 4.)

Plaintiffs' case on summary judgment boils down to the contention that summary judgment may be avoided by producing any expert witness who testifies that one sound was sampled from another, regardless of how conclusory the statement may be and regardless of whether it contradicts the testimony of Plaintiffs' other witnesses. That is not the law.

---

[5] Paul A. Chin, counsel for Plaintiffs, submitted a declaration dated January 23, 2007 in response to Transeau's submission of New Aparthenonia. Defendants moved to strike this declaration under Fed. R. Civ. P. 56(e). Because the declaration attaches no evidence specifically refuting the above-described points, Defendants' motion is denied as moot.

[6] Plaintiffs submitted no FFT analysis or testimony from Smith regarding New Aparthenonia.

11

"Although plaintiff[s'] expert opines that the songs are strikingly similar, an issue of fact cannot be created by merely reciting the magic words 'strikingly similar' and 'no possibility of independent creation.'" Tisi, 97 F. Supp. 2d at 549; see also Mowry, 2005 WL 1793773, at *10 n.15; Jorgensen, 2002 WL 1492123, at *5; Cox, 1997 WL 251532, at *5-7. Plaintiffs here have not established striking similarity, and their witnesses expressly admit to the possibility of independent creation. Under these circumstances, summary judgment is appropriate.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted and this action is dismissed. The Clerk of the Court is directed to mark this case closed.

Dated: May 9, 2007
      New York, New York

SO ORDERED:

                    WILLIAM H. PAULEY III
                    U.S.D.J.

*Counsel of Record*:

Paul A Chin, Esq.
Law Offices of Paul A. Chin
233 Broadway, 5th Floor
New York, NY 10279
*Counsel for Plaintiffs*

Anthony T. Falzone
David Olson
Stanford Law School
559 Nathan Abbott Way
Stanford, CA 94305-8610

Alice C. Garber, Esq.
Julie Ahrens, Esq.
Christopher W. Keegan, Esq.
Kirkland & Ellis LLP
555 California Street
San Francisco, CA 94104-1501
*Counsel for Defendant Brian Transeau*

Eric M. Stahl, Esq.
Davis Wright & Tremaine LLP
2600 Century Square
1501 Fourth Avenue
Seattle, WA 98101-1688
*Counsel for Defendant East West Communications, Inc.*