UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

------------------------------------------------------------- x
RALPH VARGAS and                                :
BLAND-RICKY ROBERTS,                            :   Case No. 04 CV 9772 (WHP)
                                                :
                Plaintiffs,  :   **DECLARATION OF ERIC M.**
                                                :   **STAHL IN SUPPORT OF**
     - against -                              :   **DEFENDANT EAST WEST**
                                                :   **COMMUNICATIONS, INC.'S**
PFIZER INC., PUBLICIS, INC., FLUID              :   **MOTION FOR ATTORNEYS' FEES**
MUSIC, EAST WEST COMMUNICATIONS,                :   **AND COSTS**
INC. and BRIAN TRANSEAU p/k/a "BT",             :
                                                :
                Defendants.  :
------------------------------------------------------------- x

I, Eric M. Stahl, declare:

    1.    I am a member of the bar of the State of Washington and a partner with the law firm Davis Wright Tremaine LLP ("DWT"), counsel for Defendant East West Communications, Inc. ("East West") in the above-captioned matter. I make this declaration in support of East West's motion for attorneys' fees and costs pursuant to 17 U.S.C. § 505. The matters stated herein are true of my own personal knowledge.

    2.    DWT began representing East West in this matter in March 2005. Until March 2006, DWT represented East West jointly with defendant Brian Transeau. DWT formally withdrew its representation of Mr. Transeau on March 21, 2006, but continues to represent East West in this matter.

    3.    East West has no corporate counsel. DWT has been and remains responsible for managing and monitoring all aspects of this action for East West. East West is not a large company, and from the outset of this litigation it has sought to minimize its legal expenses by, among other things, cooperating with its co-defendants in this action to the extent possible. At the same time, East West believed that it had no choice but to defend itself in this action, and

perceived that plaintiffs' claim of exclusive rights in the basic drum elements at issue in this case posed a serious threat to East West's soundware business and to the music industry generally.

4. DWT has approximately 470 attorneys. It has a wide-ranging and, I believe, well-respected litigation and copyright practice. It has nine offices, including in Seattle (where I am based) and New York.

5. I am the DWT attorney who has been primarily responsible for representing East West in this matter. I have been admitted *pro hac vice* in this action, and have overseen all aspects of this lawsuit on its behalf. I graduated first in my class from the University of Washington School of Law in 1997, where I was a member of the Order of the Coif, Order of the Barristers, and Executive Articles Editor of the Washington Law Review. I have been practicing with DWT since 1997, and have been a partner since 2004. I practice primarily in the areas of intellectual property, media, and commercial litigation. While I am based in Seattle, I advise clients throughout the country on copyright issues, and I have litigated intellectual property disputes nationwide, including, among other places, in New York. For litigation taking place in New York, I frequently bill my time at a "national" rate that exceeds my hourly rate for matters based in Seattle. I did not do so in this case, however. Instead, I billed East West for my services at my customary local hourly billing rate, which was $290 in 2005, $320 in 2006, and $340 in 2007.

6. Other attorneys and legal assistants who participated in this litigation were billed at the firm's standard rates at the times that the services were performed. These individuals, and the work they performed, are as follows:

(a) Sam Leaf was an associate in DWT's New York office. He attended hearings in New York and provided assistance with local practices and filings. In 2005, the year in which he

worked on this case, his standard hourly billing rate, and the rate at which his services were billed to East West, was $345.

(b) After Mr. Leaf left DWT in early 2006, another associate in DWT's New York office, Teena Lee, provided similar assistance with the case. In 2006, the year in which Ms. Lee worked on this matter, her standard hourly billing rate, and the rate at which her services were billed to East West, was $370.

(c) Jennifer Brockett is currently a partner in DWT's Los Angeles office. In 2005, as an associate, she provided research and counsel on a discrete point of law with which she had prior experience. Her standard hourly billing rate in 2005, and the rate at which her services were billed to East West, was $320.

(d) Leslie Majer is a legal assistant in DWT's New York office. He facilitated case filings and docket management for this case. His standard hourly billing rate, and the rate at which his services were billed to East West, was $180 in 2005 and $195 in 2006.

(e) Megan Duffy is a legal assistant in DWT's New York office. She assisted with cite checking and filing a brief. In 2005, the year in which she worked on this case, her standard hourly billing rate, and the rate at which her services were billed to East West, was $180.

7. The hourly billing rates stated above are fair and reasonable. I believe they are comparable to (or below) rates charged by other legal professionals in New York with equivalent experience levels for similar legal experience. The vast majority of the legal fees billed to East West was for work that I performed, and I billed at a rate that is standard in Seattle but likely substantially less than an attorney of similar tenure in New York. (Indeed, my hourly rate was less than that of the New York-based DWT associates who worked on the case.) The rates

3

sought in this application for attorneys' fees are those which East West has been actually billed, and has been paying.

8. **Exhibit A** attached hereto contains copies of the actual invoices prepared by DWT and sent to East West for work performed in this action, from the time of DWT's engagement in March 2005 through the invoice reflecting work performed in May 2007. These copies are true and correct copies of the actual invoices, except for the redactions described below. These invoices reflect the actual bills sent to East West. The invoices were prepared from pro formas based on daily time reports submitted by myself and the other legal professionals who worked on this case. I reviewed the pro formas each month, sometimes writing down (discounting) the work actually performed, and I approved the final invoice shown in the exhibit.[1]

9. Individual time entries have been redacted in Exhibit A for services performed on June 8 and 21 and July 1, 14, 15, 18, and July 19, all in 2005. The redactions were made only to the extent necessary to preserve the attorney-client privilege and the confidentiality of attorney work product. In each instance, the redacted matter related to work performed on East West's behalf in litigating this case.

10. Attached hereto as Exhibit B is a true and correct copy of an accounting pro forma prepared on June 26, 2007, reflecting work performed by DWT for work on this matter from June 1 through June 26, 2007. The pro forma charges will be the basis for the invoice to be prepared and sent to East West next month for fees and costs incurred in June, 2007.

---

[1] During the period when DWT jointly represented East West and Mr. Transeau, separate billing matters were established for each client, and the time spent on the case was evenly divided between them (with minor discrepancies). Thus, if I worked on the case for two hours, East West was billed for one hour and Mr. Transeau was billed for one hour. Again, the invoices shown in Exhibit A reflect East West's share of the expenses, and the amount it was actually billed.

4

11.  As reflected in Exhibits A and B, the amounts attributable to DWT's representation of East West in this case, from March 2005 through June 26, 2007, was $43,385.50 in fees and $1,350.50 in costs, for a total of $44,736.

12.  The services for which fees and costs have been incurred were actually and necessarily performed. To date, East West has paid $40,178.01, and I expect it to pay the balance shortly. Based on my review of the time spent on this matter and the nature of the services provided, the fees and costs on these invoices are correct and were necessarily incurred in this case, and were all incurred directly in connection with defending East West against Plaintiffs' claims under the Copyright Act. All of the work performed was necessary and required to defend these claims. Moreover, East West has taken all appropriate steps to reduce legal expenses, primarily by cooperating with co-defendants and by working mainly with an attorney who, by New York standards, charges below-market fees. This has substantially reduced the fees and costs that otherwise would have been incurred in this action.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

DATED this 27th day of June, 2007 at Seattle, Washington.

Davis Wright Tremaine LLP
Attorneys for East West Communications, Inc.

By _____
Eric M. Stahl, WSBA #27619
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
Telephone: (206) 757-8148
Fax: (206) 757-7148
E-mail: ericstahl@dwt.com