# EXHIBIT H

Dockets.Justia.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

RALPH VARGAS and
BLAND-RICKY ROBERTS,

             Plaintiffs,

        - against -

PFIZER, INC., PUBLICIS, INC., FLUID
MUSIC, EAST WEST COMMUNICATIONS,
INC. and BRIAN TRANSEAU p/k/a "BT",

             Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Case No. 04 CV 9772 (WHP)

## **DECLARATION OF ANTHONY RICIGLIANO**

I , Anthony Ricigliano, declare:

1.    I am a musicologist. I have been retained by the defendants Pfizer Inc., Publicis, Inc., Fluid Music, East West Communications, Inc. and Brian Transeau p/k/a "BT" to render an expert opinion, as a musicologist, regarding (i) the originality of plaintiffs' work, and (ii) a comparison between the plaintiffs' work on the one hand, and, on the other hand, the Celebrex commercial and the musical track entitled *Aparthenonia*.

### **Credentials**

2.    I taught at the Manhattan School of Music for 31 years and held the post of Chairman of the Theory Department from 1979 until my retirement in May 2000. I hold a Master of Music degree from the Manhattan School of Music and also taught in various public and private schools as well as at the Juilliard School of Music. I have written two books on contemporary music: Popular and Jazz Harmony and Melody and Harmony In Contemporary Songwriting. Attached as Exhibit A is my current Curriculum Vitae.

3.    Since 1979 I have served as an expert musicologist in numerous copyright infringement cases and have testified in court and have never been excluded from any case. Some of these cases are listed on my Curriculum Vitae (which includes a list of trials, recent depositions, etc., and my hourly rate).

## Materials Reviewed

4.    In undertaking this analysis, I reviewed the following material:

(a)  A long-playing vinyl recording entitled "Funky Drummer Vol. II." containing the plaintiffs' drum track *Bust Dat Groove (w/o ride)*.

(b)  An mp3 audio file containing a sound recording of a *Celebrex* commercial, provided by defendants'.

(c)  An mp3 audio file containing a sound recording titled *Aparthenonia*.

(d)  A copy of the plaintiffs' amended complaint.

(e)  The declaration of Rhys Moody of East West Communications, Inc., containing as an attachment Pro Tools (a professional sound recording and editing program) waveform graphs of each recording. These graphs are attached as Exhibit B.

(f)   Musical transcriptions, created by my company Donato Music, of each of the recordings I have reviewed.

(g)  Various drum training books or method books.  A list of the books reviewed is attached as Exhibits C. Relevant excerpts of these books are attached as sub-parts to Exhibit C.

(h)  A compact audio disc, compiled by Donato music, containing recordings of *Bust Dat Groove*, the Celebrex commercial, *Aparthenonia* as well as examples of other relevant recordings as referred to herein. The compact disc is Exhibit D, along with a track list.

## Non-originality of *Bust Dat Groove*

5.    After reviewing, analyzing and comparing all of the materials listed above I concluded that the *Bust Dat Groove* recording consists of a basic one-bar percussion pattern that is looped (i.e., repeated) approximately 27 times and is about 1 minute in length (see Exhibit D, track 1). This recording represents a basic groove track (verified by the title of the track) that establishes a rhythmic bed or feel, not unlike the ohm-pah-pah of a waltz or basic 6/8 rhythmic feel of a jazz waltz. Percussion tracks like *Bust Dat Groove* that contain rudimentary rhythm patterns are rarely distributed as pop music and generally not listened to for personal enjoyment. This track appears to be created to accompany a musical

2

composition that makes use of pitched instruments (that is, instruments utilizing melody and harmony).

Furthermore, it will be demonstrated that the percussion patterns contained on *Bust Dat Groove* are so basic that they can be found in elementary drum set books dating back to the 1960's. Therefore, the rhythm patterns in *Bust Dat Groove* do not, singly or in combination, contain any original rhythm patterns that rise to the level of protectable musical expression.

6.      *Bust Dat Groove* consists of four individual percussion tracks  - high hat (cymbal), snare drum, tom-tom drum and bass drum - repeating a one-bar rhythm pattern.  For review, two bars of *Bust Dat Groove* transcribed into musical notation are given below. Since these instrumental rhythms do not have specific pitch, they are placed on a single line, rather than the traditional 5-line staff used for instruments that produce a definite pitch (e.g., a flute or guitar). Notes that do not have specific pitch are often shown using an 'x' rather than a conventional note head.



*Bust Dat Groove (w/o ride)*

7.      The high-hat part (line 1) consists of a series of eighth-notes. The snare drum (line 2) contains a quarter-note hit on beats 2 and 4 (marked >). These percussion parts consist of standard commonplace rhythms both individually and in combination that are not original with *Bust Dat Groove*.

Almost all of the percussion drum set study or method books present this rhythmic combination – cymbal (high-hat or ride) using straight eighth notes with the snare drum emphasizing beats 2 and 4 – as a rudimental non-original combination. Therefore these rhythm patterns singly or in combination cannot be considered to be protectable musical material.

3

8.     This point is illustrated by numerous examples found in the percussion books in Exhibit C. The basic cymbal (high-hat or ride) and snare drum rhythm patterns shown below is taken from the 1972 book titled *Ultimate Realistic Rock Drum Method* by Carmine Appice page 10 Exercise 1 (see Exhibit C 4).



Virtually identical examples of these rhythm patterns are found in Exhibit C 2, page 6, Exercise 9; Exhibit C 5 page 34 Exercise 1; Exhibit C 6 page 9; Exhibit C 7 page 5; Exhibit C 8 page 17; Exhibit C 9 page 20; Exhibit C 10 page 17; and Exhibit C 11 page 4 Exercise 2 and 3.

(Some of these books postdate *Bust Dat Groove*, but never the less show that the rhythms in question remain basic, standard drum patterns within the contemporary style or idiom. Indeed Exhibit C 7 that includes these rhythm patterns, is titled *The Phunky Hip-Hop Drummer*).

A recorded excerpt of this example is given on track 4 of the compact audio disc marked Exhibit D. Tracks 7, 8, 9, 10 and 11 on this audio disc contain excerpts from commercially released songs that make use of the same hi-hat, snare drum patterns. Further information about these songs is contained in the track list found in Exhibit D. Transcriptions of each excerpt that illustrate these high-hat and snare drum patterns in these recordings are attached to Exhibit D.

9.     The tom-tom drum figure (line 3 from *Bust Dat Groove*) represents a short rhythmic figure in which the first three notes move into and emphasize the fifth eighth (x) in the high-hat pattern or the third beat within the bar (see * beat 3).

Based on my review of percussion method books, this rhythmic figure is referred to as a 4-note ruff or four stroke ruff.



4

The first three notes of the "ruff" figure are often notated differently in musical transcriptions or drum set books. The three preparatory (unaccented) notes moving into each beat (accented note *) may be shown with specific time value as in *Bust Dat Groove* above, or, as in Example A below (taken from Exhibit C book 3 page 17). They may also be shown as smaller notes indicating that their time value is not counted in the rhythm of the bar (Example B taken from Exhibit C book 1 pages 16 and 17).



10.     The "ruff" figures shown above and their use in combination with the high-hat and snare drum patterns constitute a rudimental combination.

In drum method books the "ruff" figure is fundamentally given moving into a basic beat - 1, 2, 3, 4 (as in Example A and B above). Therefore, the movement into beat 3 in *Bust Dat Groove* is a fundamental placement of this rhythmic figure within the bar.  Thus these three percussion instrumental patterns (high-hat, snare drum and tom-tom), are not original singly or in combination with *Bust Dat Groove.*

11.     The bass drum in *Bust Dat Groove* contains two basic rhythmic figures. The first figure (labeled Fig 1) consists of a three-note group. The first note is referred to as a pick-up note (*p*) that moves into two eighth notes (equal in time value) appearing on the first beat (or downbeat) of the bar.

The second rhythmic figure (Fig 2) beginning on beat 3, consists of three-notes often referred to as a short-long-short figure. This rhythmic group may be notated as in *Bust Dat Groove* (below) or as a sixteenth, eighth, sixteenth note figure.

*Bust Dat Groove*



12.    These bass drum rhythmic figures were located in drum set study books that contain sixteenth note rhythm patterns. Both figures were found appearing in the same rhythmic placement as in *Bust Dat Groove*. Therefore these figures and their placement within the bar are not original with *Bust Dat Groove*.

The examples below from page 17 of the 1972 book titled *Ultimate Realistic Rock Drum Method* Exhibit C 4, contain the basic high-hat and snare drum rhythm patterns in combination with Figure 1 and Figure 2 of *Bust Dat Groove*. These examples are recorded on Exhibit D tracks 5 and 6.



Virtually identical examples, recorded on commercially released songs, that make use of the same high-hat, snare drum patterns and the bass drum rhythm pattern (Fig. 1) in *Bust Dat Groove* are found in Exhibit D tracks 7 and 8.

13.    Even if one of these relatively simple patterns (singly or in combination) were not commonplace, they are too fundamental to percussion parts or contemporary performance practice to be the exclusive ownership of one individual. Limiting the use of basic rhythm patterns such as these would place too great a restriction on performers and arrangers.

Ownership of basic musical material would not only be restrictive but chaotic. Any two compositions performed within the same style would almost of necessity contain the same or similar rhythmic patterns or rhythmic combination

of patterns in order to create that specific style. Two works in the Latin style or within a specific dance such as a Tango will make use of a basic "groove" or rhythm patterns that cannot be owned by a single artist. This is also true of contemporary styles such as pop, hi-hop, etc.

## Comparison of *Bust Dat Groove* and *Aparthenonia*

14.    *Aparthenonia* consists of four individual percussion tracks (high hat, snare drum, tom-tom drum and bass drum) performing a one-bar pattern (lasting approximated 9 seconds or 2 and one-quarter bars in length, see Exhibit D track 3). When the percussion parts utilized in the *Aparthenonia* track were compared to the *Bust Dat Groove* track, I concluded that although these percussion tracks contain similarities, they also contain distinctive differences (these tracks are shown below). *Aparthenonia* and *Bust Dat Groove* make use of the same high-hat and snare drum parts. That is, the high-hat consists of straight eighth-notes and the snare drum makes use of quarter-note hits on beats 2 and 4.

As noted previously these percussion parts consist of standard commonplace rhythms both individually and in combination that are not original with *Bust Dat Groove*, they cannot be considered to contain protectable musical material



7

15. Furthermore, there is a slight, but significant, difference in the placement of the open or splash effect within each high-hat part. This is signified by the open note head rather than an x note (see "o" placed above these notes in the previous example). In *Bust Dat Groove* the open effect appears on the second eighth of the bar while in *Aparthenonia* it appears on the first eighth of the bar.

16. While both tracks use the same four-note "ruff" tom-tom drum figure, the use of this figure and its rhythmic placement within the bar is different.

In *Bust Dat Groove* the figure moves into and emphasizes the fifth eighth note (x) in the high-hat pattern or the third beat  within the bar (see * below).

In *Aparthenonia* this short rhythmic figure is omitted in the first bar but is used to move into bar 2 emphasizing beat 1 - the first eighth (open effect) of  the high-hat pattern (marked *).

As stated earlier, this "ruff" figure and its use in combination with the high hat snare drum patterns is considered a rudimental combination. In the drum set study books this figure is fundamentally placed in both positions, that is moving into beat 3 as in *Bust Dat Groove* or into beat 1 as in *Aparthenonia*



17.    The bass drum rhythm pattern used in *Aparthenonia* is distinctively different from the rhythmic pattern utilized in *Bust Dat Groove* (see below).

The first rhythmic figure in *Bust Dat Groove* (labeled Fig 1) consists of a three-note group. The first note is referred to as a pick-up note (marked *p*) that moves into two notes equal in time value (eighth notes) appearing on the first beat of the bar.

The first rhythmic group in *Aparthenonia* consists of two notes unequal in time value (long-short) a dotted-eighth sixteenth-note figure placed on the first beat of the bar (there is no a pick-up note).

The second rhythmic figure (Fig 2) in *Bust Dat Groove* consists of a three-note group that may be referred to as short-long-short.

The second rhythmic figure (2) in *Aparthenonia* consists of a four-note group that may be referred to as short-short-long-short.



18.    Although the short-long-short part of figure 2 may look similar, the two figures are overall different. Furthermore, the portion that is the same (short-long-short) is a very common rhythmic figure that is included in percussion drum set study books that contain sixteenth note rhythm patterns. This figure utilized in the bass drum is frequently placed on beat 3, see Exhibit C 4 pages 26 (lines 2, 3, 4) and 27 (lines 2 and 3) Exhibit C 7 page 21 number 7. The entire *Aparthenonia* 4-note figure 2, placed on beat 3, is shown as a basic rhythmic unit on page 22 of Exhibit C 7 number 14.

Thus even a partial similarity between these bass drum patterns does not rise to the level of original musical material created by the drum groove track *Bust Dat Groove.* Furthermore, it is obvious, that due to the distinctive differences between these percussion parts, that *Aparthenonia* is not a reproduction or sample of *Bust Dat Groove.*

This conclusion was confirmed by the review and analysis of the waveform graphs (provided by the defendants) that were created with Pro Tools - a professional sound recording and editing program (Exhibit B).

When the waveform of each track is compared it becomes readily apparent that these tracks have significant differences in overall content.

Compare each waveform, especially those portions shown below the word "Difference 1, 2, and 3" in the row marked comments. On the first page below Difference 1, in "Funky Drummer" the waveform is essentially flat whereas there are sharp vertical sound waves in the "BT" track.

**Aparthenonia and Celebrex**

19.    The *Celebrex* track reviewed consists of twenty-six (26) bars in length and utilizes seven different instrumental parts: three pitched instruments synthesizer, guitar, electric bass (shown below on the traditional 5 line staff) and four non-pitched instruments high-hat, tom-tom drum, snare drum and bass drum (placed on a single line), see Exhibit D track 2.

The four percussion instruments at issue represent in this recording a basic groove track that establishes a rhythmic bed used to accompanying the musical composition.

The principal musical parts of this composition that contain pitch, rhythm and harmonic material include the electric bass, guitar and synthesizer. At least one, but more often two of these instrumental parts appears in every bar of this commercial. These instrumental parts represent the featured key musical themes and/or jingles of this commercial. This is apparent by listening to track 2 of Exhibit D along with the

complete score of this composition that is provided in Exhibit E. The first bars in which all three pitched instruments appear together are shown below

Celebrex (bars 10-12)



20.     The four percussion instrumental tracks taken from the *Celebrex* spot are given below. These four tracks make use of the same four percussion tracks found in the *Aparthenonia* recording. However, the *Celebrex* spot presents these tracks as a four-bar pattern that is stated six and one-half times throughout the 26 measures of this commercial

Celebrex



21.     While *Bust Dat Groove* consists of a repeated one-bar pattern, the *Celebrex* spot contains a percussion track that is a four-bar rhythm pattern. This may be seen by the omission of the tom-tom drum hit at the beginning of each four-bar pattern (see *Rest in bar 1 of the *Celebrex* example above).

22. This musicological comparison has illustrated that (with the one exception previously noted) the percussion parts of the *Aparthenonia* and the *Celebrex* tracks are the same. However, they are overall significantly different in rhythm and structure from *Bust Dat Groove*. Therefore, it appears that the percussion parts in *Aparthenonia* and *Celebrex* were not sampled from *Bust Dat Groove*.

This conclusion was confirmed by the review and analysis of the waveform graphs (provided by the defendants) that were created with Pro Tools - a professional sound recording and editing program (see Exhibit B).

23. The *Aparthenonia* and *Celebrex* tracks overall are not substantially similar to, or do they contain any protectable musical material found in the percussion parts of *Bust Dat Groove*. Any similarities, such as the traditional snare drum hits on beats 2 and 4, are due to the use of basic musical elements or musical material that is characteristic to this style or type of music.

24. It is difficult to believe that one would consider that any of the similarities or the combination of any of the somewhat similar elements between these two tracks justifies a claim of copyright infringement.

This is especially true since two of these elements represent similarities that have been a staple of the contemporary style in the contemporary popular idiom for decades. Even if the creator(s) of *Aparthenonia* utilized *Bust Dat Groove* as a model for their work (which I do not believe is the case) they have not copied any protectable or substantive musical material. A claim of copyright infringement is therefore without foundation and without justification.

25. I declare under penalty of perjury pursuant to the laws of the United States that the foregoing is true and correct. Executed this 29th day of June 2005 at Scarsdale, New York 10583.

Anthony Ricigliano
Musicologist

12

# EXHIBIT A

## ANTHONY RICIGLIANO

President, Donato Music Services, Inc. & Music Research Consultants

Mr. Ricigliano has prepared musical analyses and assisted in the preparation of court cases for numerous legal firms and has testified on behalf of recording companies, music publishers, recording artists and composers, motion picture companies and advertising agencies in a variety of musical copyright disputes.

Mr. Ricigliano taught at the Manhattan School of Music for 31 years and held the post of Chairman of the Theory Department from 1979 until his retirement in May 2000. He has a Master of Music degree from the Manhattan School of Music and has also taught in various public and private schools as well as at the Juilliard School of Music.

In addition, he has authored two books on contemporary music: *Popular and Jazz Harmony* and *Melody and Harmony In Contemporary Songwriting.*

The cases for which he has testified in court as an expert witness are:

### *For the Defendant:*

(1980) *Soul On Your Side* v. *Disco Nights* (Arista records)

(1988) *Just Another Night* (Patrick Alley) v. *Just Another Night* (Mick Jagger)

(1991) *Es* v. *Hey* (Julio Iglesias/Sony Music Entertainment, Inc.)

(1991) *Somebody, You & Me* (Thompson, et al.) v. *Stuck On You*, *Deep River Woman*, & *SeLa* (Lionel Richie, et al.)

(1992) *I'll Be Your Everything* (G. Soule/Northside Partners) v. *I'll Be Your Everything* (J. Knight, D. Wood, ["New Kids On The Block"], T. Page/ Warner Bros. Records)

(1993-4) *Run On Manchild*, *What Will Become Of The Children*, *Happy Go Lucky Girl*, v. *Thriller*, *We Are The World*, *Girl Is Mine* (Michael Jackson, Lionel Richie, Rod Temperton & Quincy Jones)

(1994) *Dangerous* v. *Dangerous* (Michael Jackson)

(1994) *Love Is A Wonderful Thing* (Isley Brothers) v. *Love Is A Wonderful Thing* (Michael Bolton & Andy Goldmark)

(1995) *Movin' On* v. *Keep On Movin'* (Soul II Soul/Jazzie B)

(1996) *I Cigni di Balaka* v. *Will You Be There* (Michael Jackson) in Rome, Italy

### *For the Plaintiff:*

(1987) *Pour Toi* (Gaste) v. *Feelings* (Kaiserman)

(1988) *You Can't Always Get What You Want* (ABKCO Music) v. Volvo (Scali McCabe)

Mr. Ricigliano has worked on copyright claims/issues representing other recording artists or groups including: Gloria Estefan, Madonna, Mariah Carey, Prince, Kiss, Led Zeppelin, ZZ Top, Sting, Bob Dylan, Kenneth "Babyface" Edmonds, Billy Joel, Hammer, Orville "Shaggy" Burrell, R. Kelly, The Rolling Stones, Aerosmith, Guns & Roses, Deana Carter, Mystikal, Alanis Morrissette, Stevie Wonder, Kid Rock, Lenny Kravitz, Alicia Keys, Ja Rule, etc.

## Recent Depositions

In February 2004 Mr. Ricigliano was deposed in Caragol v. Jackson et al. involving the compositions *The Village Grist Mill* by Gary Gerth, Ted Caragol and Dona Caragol and the composition *Doesn't Really Matter* by James Harris III, Terry Lewis and Janet Jackson.

In November 2003 Mr. Ricigliano was deposed in Lil'Joe Wein Music, Inc., and Lil' Joe Records, Inc., v. Strictly Rhythm Records, Inc., d/b/a/ Astral Werks Records, Inc., and d/b/a/ Skint Records, Sony Music Entertainment, Inc., Columbia Pictures Industries, Inc., Universal Music Publishing, Inc., and Columbia Tri-star Home entertainment, Inc., United States District Court Southern District of Florida concerning the compositions *Shake Whatch' Mama Gave Ya'* by Poison Clan v. *Shake Whatcha' Mama Gave Ya'* by Stik-E and the Hoods and *Ya Mama* by Fat Boy Slim.

In April 2003 Mr. Ricigliano was deposed in Cottrill and Wnokowski v. Britney Spears, Zomba, Jive Records, Wright Entertainment and BMG Music Publishing Civil Action No. 02 CV 3646. United States District Court Eastern District of Pennsylvania concerning the compositions *What You See Is What You Get* v. *What U See (Is What U Get)* and *Can't Make You Love Me*.

In August 2002 Mr. Ricigliano was deposed in Cooper v. Sony Music Entertainment, et al., Civil Action No. 01-0941, Southern District of Texas concerning the compositions *Boys Night Out* and *Bounce With Me* (by Jermaine Dupre et al.).

In January 1999 Mr. Ricigliano was deposed in Darryl Lemon, a.k.a. D'Maurice, Plaintiff (*Never Live Without Your Love) v.* Prince Roger Nelson, a.k.a. The Artist Formerly Known As Prince, *et. al* (*I Hate You*). Case NO C97-1330C United States District Court Western District of Washington at Seattle.

**Rates and Fees**

*(For the individual services of Anthony Ricigliano as musicologist)*

For initial comparison, analysis and verbal report regarding possible infringement issues between two commercially released songs or musical works  –          $500*

> *NOTE: Should printed music or lead sheets not be available or supplied, there will be an additional fee to provide the necessary transcriptions for proper analysis. This fee varies according to the length and complexity of the works to be transcribed. However, the fee generally ranges between $150 and $200 for the transcription of the relevant portions of two songs.

For specific requested research, written reports, preparation of charts and other expert services the rate is  –                    $300 per hour

Depositions                    $2,600 per day
or $1,500 for partial day
(plus travel and expenses*)

For courtroom appearances and testimony  –          $2,600 per day
or $1,500 for partial day
(plus travel and expenses*)

*travel expenses include business class airline ticket (for flights over 2 hours)
-plus travel day fee of $900 per day and food allowance $80.00 per day

# EXHIBIT B





