# EXHIBIT N

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| RALPH VARGAS and | : | **CASE NO.:** **04 CV 9772 (WHP)** |
| BLAND-RICKY ROBERTS | : | |
| | : | |
| Plaintiffs | : | |
| vs. | : | **ECF CASE** |
| | : | |
| PFIZER INC., PUBLICIS, INC., FLUID MUSIC, | : | |
| EAST WEST COMMUNICATIONS, INC. and | : | |
| BRIAN TRANSEAU p/k/a "BT" | : | |
| | : | |
| Defendants | : | |
| | : | |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Dated: New York, New York
     October 12, 2006

Respectfully submitted,

s/ Paul Chin

Paul A. Chin, Esq. (PC 9656)
LAW OFFICES OF PAUL A. CHIN
The Woolworth Building
233 Broadway, 5th Floor
New York, NY 10279
(212) 964-8030
*Attorneys for Plaintiffs*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES……………………………………………… 3
PRELIMINARY STATEMENT ………………………………………….... 5
STATEMENT OF FACTS ……………………………………………. 7
LEGAL ARGUMENT …………………………………………………... 10

POINT I        LEGAL STANDARD FOR SUMMARY JUDGMENT

     A.    Defendant must prove Plaintiffs cannot establish *prima facie*
          case of copying…..................................................................... 10
     B.    Competing expert opinions preclude summary judgment…… 11

POINT II       EVIDENCE OF STRIKING SIMILARITY IS OVERWHELMING

     A.    Copying can be established by evidence of striking similarity…. 12
     B.    The legal standard for showing striking similarity……… ….. 13
     C.    Plaintiffs' experts' evidence of striking similarity……………… 14

          1.    The two works are nearly identical musically…………. 14
          2.    *Bust Dat Groove* was sampled and digitally edited …… 15
          3.    The frequency spectra are indistinguishable………….. 17

POINT III     STRIKING SIMILARITY NOT CREDIBLY CHALLENGED

     A.    Defendant's failed attempt to discredit Ritter's expertise………. 18
     B.    Defendant fails to contradict Rodriguez's findings…………… 20
     C.    Defendant's attack on Dr. Smith's conclusions are without merit 20

POINT IV     NO CREDIBLE EVIDENCE OF INDEPENDENT CREATION

     A.    Defendant's contradictory explanations of independent creation.. 23
     B.    Witnesses incapable of supporting claim of independent creation.. 24
     B.    Defendant's experts' opinions are unreliable…………………… 25

POINT V.    JURY SHOULD DECIDE THIS CASE………………………. 26

CONCLUSION …………………………………………………….. 26

# TABLE OF AUTHORITIES

## CASES

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986)………………………………………………………… 10

Arstein v. Porter,
154 F.2d 464 (2d Cir. 1946)……………………………………………… 12,13

Bucklew v. Hawkins Ash. Baptie and Company,
329 F.3d 923 (7th Cir. 2003)……………………………………………… 13

Castle Rock Entertainment v. Carol Publishing Group, Inc.,
150 F.3d 132 (2d Cir. 1998) ……………………………………………… 12

Celotex Corp. v. Catrett,
477 U.S. 317 (1986)……..………………………………………………… 11

Donahue v. Windsor Locks Board of Fire Commissioners,
834 F.2d 54 (2d Cir. 1987)……………………………………………… 10

Enreach Technology, Inc. v. Embedded Internet,
403 F.Supp.2d 968 (N.D.Cal. 2005) ……………………………………… 12

Eckes v. Card Prices Update,
736 F.2d 859 (2d Cir.1984) ……………………………………………... 13

Gallo v. Prudential Residential Services,
22 F.3d 1219 (2d Cir. 1994)……………………………………………... 11

Gaste v. Kaiserman,
863 F.2d 1061 (2d Cir. 1988)…………………………………………… 12,13,14

Grady v. Affiliated Cent., Inc.,
130 F.3d 553 (2d Cir. 1997)……………………………………………... 10

Levine v. McDonald's Corp.,
735 F.Supp. 92 (S.D.N.Y. 1990) ……………………………………….. 10

Lipton v. The Nature Company,
71 F.3d 464 (2d Cir. 1995)……………………………………………… 12,13

Nicholls v. Tufenkian Import/Export Ventures, Inc.,
No. 04 Civ 2110 (WHP), 2004 WL 1399187, *2 (S.D.N.Y. Jun. 23, 2004)…… 11

Repp v. Weber,
132 F.3d 882 (2d Cir. 1997)……………………………………………... 10,11,14

Ringgold v. Black Entertainment Television, Inc.,
126 F.3d 70 (2d Cir. 1997)…………………………………………………………    12

Tufenkian Import/Export Ventures, Inc. v. Einstein Moojy, Inc.,
338 F.3d 127 (2d Cir. 2003)……………………………………………….……    10

Ulloa v. Universal Music and Video Distribution Corp.,
303 F.Supp. 409 (S.D.N.Y. 2004)…………………………………………………    11

Vargas v. Pfizer,
418 F.Supp.2d 369 (S.D.N.Y. 2005)..………………………………………………    10,19

Vermont Teddy Bear Company, Inc. v. 1-800 Beargram Company,
373 F.3d 241 (2d Cir. 2004)……………………………………………………    10

**RULES**

Rule 56(c) of the Federal Rules of Civil Procedure

Ralph Vargas ("Plaintiff Vargas") and Bland-Ricky Roberts ("Plaintiff Roberts") (collectively "Plaintiffs"), by and through their undersigned attorneys, hereby submit this Memorandum of Law In Opposition to Defendant Brian Transeau's ("Defendant") motion for summary judgment (hereinafter "Defendant's Motion")[1].

<u>**PRELIMINARY STATEMENT**</u>

Defendant claims that he is entitled to judgment as a matter of law because Plaintiffs cannot prove that Defendant had access to Plaintiffs' composition (hereinafter "*Bust Dat Groove*") prior to creating the infringing composition (hereinafter "*Aparthenonia*").  However, in the Second Circuit a plaintiff can meet his burden of demonstrating factual copying through evidence of similarities in the subject musical works striking enough to preclude the possibility of independent creation.  In instances where a plaintiff can show striking similarities between the protected work and the infringing work access is inferred and a *prima facie* case of factual copying is established. Although recognizing this well-established legal precedent, Defendant's Motion demonstrates a fundamental misunderstanding of what burdens are borne by which party on a motion for summary judgment in a copyright infringement action.

On a motion for summary judgment in a copyright infringement case Defendant has the burden of showing that there is an absence of evidence to support Plaintiffs' *prima facie* case of factual copying.  In an attempt to meet this burden, Defendant strives discern minute "differences" between two almost identical musical works.  However, identification of insignificant differences between the two works will not carry the day for Defendant because copyright law does not require that the striking similarities

---

[1] Defendant East West Communications, Inc. ("Defendant EWC") has joined in Defendant's Motion.

between *Aparthenonia* and *Bust Dat Groove* be "identical." Instead, what is required is quantitative and qualitative evidence of similarities which strongly suggest that copying occurred. Even the most biased observer, after reviewing Plaintiffs' evidence, would have to conclude that *Aparthenonia* is a digitally edited or manipulated copy of *Bust Dat Groove.*

Nevertheless, Defendant still contends that he entitled to judgment because Plaintiffs cannot rebut his evidence of independent creation. First, Defendant's "evidence" of independent creation is riddled with inconsistencies and is supported by the subjective conclusions of Defendant's experts. Second, *assuming arguendo* that the Court is inclined to believe Defendant's evidence of independent creation, this fact would only leave the ultimate decision of infringement to the jury.

Finally, Defendant recently submitted a second expert report from Dr. Richard Boulanger dated September 21, 2006 ("Boulanger's Second Report"). *See, Defendant's Exhibit F, Boulanger's Rebuttal Report.* Defendant submitted Boulanger's Second Report to Plaintiff on or about September 22, 2006 (Defendant's original summary judgment deadline). While Defendant has identified this document as a "rebuttal report" it is nothing of the sort. Boulanger's first expert report was produced by Defendant on or about January 31, 2006. Plaintiffs submitted their rebuttal report on or about March 11, 2006. Now, more than six months later, Defendant seeks to effectively "sand-bag" Plaintiffs by submitting a new expert report for the first time on summary judgment. This Court should not consider Boulanger's Second Report on the motion *sub judice* because Plaintiffs have not had the opportunity review Boulanger's new conclusions with their own expert.

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's motion for summary judgment and set a trial date in this matter.

## STATEMENT OF FACTS

**A.** **Plaintiffs and *Bust Dat Groove***

Plaintiff Vargas is the author and copyright owner of the musical work titled "Bust Dat Groove w/out Ride" ("*Bust Dat Groove*"). *Ex. 1, Second Amended Complaint, ¶9, ¶17 and "exhibit A" attached thereto.* Plaintiff Roberts is the owner of the copyright in and to the sound recording entitled "*Funky Drummer Vol. II*" ("*FD II*") that contains *Bust Dat Groove.* Id. at *¶11 and exhibits B and C attached thereto.*

*Bust Dat Groove* is a live drumming performance of one bar of creative drum music, lasting approximately 2.3 seconds, which repeats thereafter (i.e. looped). *Ex. 2, Vargas Dep. pg. 131.* The constituent musical elements contained in *Bust Dat Groove* include a high-hat, snare drum, bass drum, multiple bounce strokes, and "ghost notes." *Ex. 3, Ritter Decl, at ¶5, ¶11-17.* The "ghost notes" in *Bust Dat Groove* are a unique and nuanced sound which is a cross between a tom-tom drum and a snare drum." Id. at *¶6.* The ghost notes in *Bust Dat Groove* are rare and demonstrates Plaintiff Vargas' talent and creativity. Id. *FD II* and *Bust Dat Groove* was distributed and sold for several months in 1994 to retail record stores in California, throughout the United States and overseas. *Exhibit 4, Plaintiffs' Document Bates Stamped Nos. 000003 and 000017; Exhibit 5, Roberts Dep. pgs. 55, 58, 65, 160, 206-207, 211-213.* *FD II and Bust Dat Groove* were created for use by "hip hop" producers, production companies, production houses, disc jockeys and remixers. *Ex. 5, Roberts Dep. pgs. 97-98; Ex. 2, Vargas Dep. at 113.* Approximately 4,000 copies of *FD II* were manufactured and sold. *Ex. 5, Roberts Dep. at 111.*

**B.      Defendant and *Aparthenonia***

Defendant is a composer and music producer of various genres of music including electronic music, "break beats," and "hip-hop music." *Ex. 6, Transeau Dep. at. 77, 79-80.* Defendant allegedly created *Aparthenonia* in 2000. *Ex. 7, Defendant BT's Interrogatory Resp., No. 3.* *Aparthenonia* is one bar of drum music which is then repeated numerous times (i.e. looped). *See, Defendant's Exhibit J, ¶14. Aparthenonia* was included on the sample album titled *Breakz from the Nu Skool* which was manufactured, distributed, sold and licensed by Defendant EWC. *Ex. 8, Defendant EWC Interrogatory Resp. No. 1. Aparthenonia* and *Breakz from the Nu Skool* have never been registered with the U.S. Copyright Office. *Ex. 7, Defendant BT's Interrogatory Resp., No. 3; Ex. 8, Defendant EWC Interrogatory Resp. No. 4.* *Aparthenonia* was subsequently used in a commercial jungle for the drug "Celebrex." *Ex. 1, Second Amended Complaint, ¶2, ¶26, ¶28.*

**C.      The parties' contentions on infringement**

Plaintiffs contend that Defendant sampled or copied *Bust Dat Groove* and then digitally edited/manipulated the sequence of musical notes contained therein in order to create *Aparthenonia*. *Ex. 9, Rodriguez Decl at ¶1, ¶8, ¶11-20 and "exhibit C" attached thereto; Ex. 10, Rodriguez Dep. at 110-111, 125, 131, 143-150, 166-168, 172, 195-196, 225, 229, 240-243, 247-248, 275-277, 280, 290-291, 416-417.* The overwhelming evidence in this case supports Plaintiffs' contention. For example, the musical elements in *Aparthenonia,* a high-hat, snare drum, bass drum, multiple bounce strokes, and "ghost notes," are identical to the musical elements in *Bust Dat Groove. Ex. 3, Ritter Decl, ¶5, ¶11-17.* A transcription of the musical notes in both *Aparthenonia* and *Bust Dat Groove* demonstrate that there is no single or combination of musical elements, including 'ghost

notes,' present in *Aparthenonia* that does not also exist in *Bust Dat Groove*." Id. at *¶13-14*. The only "difference" between the two musical works is the exact order in which these musical elements appear in each work. Id. Re-arranging these musical elements is easily accomplished by someone with knowledge of digital editing technology and sampling. *Ex. 10, Rodriguez Dep. at 90-91*. Finally, a Fast Fourier Transform ("FFT") frequency spectral analysis of the sounds contained in 2.3 seconds of the first bar of drum music in *Aparthenonia* and *Bust Dat Groove* clearly establish that the drum sounds embodied in both works are virtually indistinguishable. *Ex. 11, Dr. Smith's Expert Report pgs. 4-8.*

Defendant claims that he independently created *Aparthenonia* on the back of his tour bus using a "laptop" computer and a music-software program known as Propellerhead Reason ("Reason"). *Ex. 7, Defendant BT's Interrogatory Resp. No. 5*. Defendant claims that it only took him one hour to create, mix and master *Aparthenonia*. Id. Defendant has produced the reports from two music experts, Anthony Ricigliano ("Ricigliano") and Dr. Richard Boulanger ("Boulanger"). Ricigliano claims that *Bust Dat Groove* is a rudimentary drumming technique similar to thousands of other drum beats. *See, Defendant's Exhibit J, ¶5, 23-24.* Boulanger claims that his comparison of the FFT frequency spectra of both works conclusively proves that no single drum strike in *Aparthenonia* matches a single drum strike in *Bust Dat Groove*. *See, Defendant's Motion, pg.18.*

Defendant has also submitted, for the first time, a second report by Boulanger, speciously titled as "Boulanger's Rebuttal Report." *See, Defendant's Exhibit F.* As previously explained above, this second report by Boulanger is not a "rebuttal report" but

an attempt by Defendant to "sand-bag" Plaintiffs with a new expert report on summary judgment. The Court should not consider Boulanger's Second Report.

**LEGAL ARGUMENT**

**POINT I**
**LEGAL STANDARD FOR SUMMARY JUDGMENT**

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed.R.Civ.P. 56(c)*. Defendants bear the burden of demonstrating the absence of a material fact and their entitlement to relief as a matter of law. <u>Vermont Teddy Bear Company, Inc. v. 1-800 Beargram Company</u>, 373 F.3d 241, 244 (2d Cir. 2004); <u>Grady v. Affiliated Cent., Inc.</u>, 130 F.3d 553, 559 (2d Cir. 1997). A fact is material if it "might affect the outcome of the suit under the governing law ..." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). On a motion for summary judgment, the "fundamental maxim is that the court cannot try issues of fact; it can only determine whether there are issues to be tried." <u>Levine v. McDonald's Corp.</u>, 735 F.Supp. 92, 95 (S.D.N.Y. 1990) *citing* <u>Donahue v. Windsor Locks Board of Fire Commissioners</u>, 834 F.2d 54, 58 (2d Cir. 1987). In assessing whether or not a material fact is in dispute, the Court must believe the evidence presented by Plaintiffs and must draw all reasonable inferences in Plaintiffs' favor. <u>Anderson</u>, 477 U.S. at 255; <u>Tufenkian Import/Export Ventures, Inc. v. Einstein Moojy, Inc.</u>, 338 F.3d 127, 131 (2d Cir. 2003).

**A.     Defendant must prove Plaintiffs cannot establish a *prima facie* case of copying**

In a copyright infringement action, "[T]he materiality of disputed facts is determined by the Copyright Act." <u>Vargas v. Pfizer</u>, 418 F.Supp.2d 369, 371 (S.D.N.Y. 2005)*citing* <u>Repp v. Weber</u>, 132 F.3d 882, 891 (2d Cir. 1997). Therefore, in order to meet

their burden on summary judgment Defendants must show that there are no material facts which dispute Defendants' contention that Plaintiffs have failed to produce evidence sufficient to support an essential element of their copyright infringement claim. <u>Repp v. Weber</u>, 132 F.3d at 890 ("…the defendants may satisfy their burden under Rule 56 by showing 'that there is an absence of evidence to support [an essential element] of the nonmoving party's case.") *citing* <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986). In other words, Defendants must show that Plaintiffs' evidence of copying (i.e. probative similarity) is so "slight" that no reasonable jury could find in their favor. <u>Gallo v. Prudential Residential Services</u>, 22 F.3d 1219, 1223 (2d Cir. 1994). Defendant cannot meet his burden because the overwhelming evidence demonstrates that *Aparthenonia* was created by sampling and digitally editing or manipulating the musical elements in *Bust Dat Groove.*

**B.      Competing expert opinions preclude summary judgment**

While it is clear that Defendant's experts' opinions are fatally flawed and completely unreliable; at best they merely contradict the findings and conclusions of Plaintiffs' experts that *Aparthenonia* and *Bust Dat Groove* are strikingly similar if not identical. In any event, Defendants' Motion must still be denied because this Court should not make a factual determination on this issue based on competing expert opinions. <u>Repp v. Webber</u>, 132 F.3d at 890 (2d Cir. 1997)(summary judgment reversed where district court erroneously made factual determination in favor of defendant on the issue of substantial similarity where there was competing expert evidence); <u>Ulloa v. Universal Music and Video Distribution Corp.</u>, 303 F.Supp. 409, 413 (S.D.N.Y. 2004)(district court refused to grant summary judgment to defendant where there was competing expert evidence); <u>Nicholls v. Tufenkian Import/Export Ventures, Inc.</u>, No. 04

Civ 2110 (WHP), 2004 WL 1399187, *2 (S.D.N.Y. Jun. 23, 2004)(This Court refused to grant summary judgment were there was competing evidence on issue of originality); *see also* Enreach Technology, Inc. v. Embedded Internet, 403 F.Supp.2d 968, 977 (N.D.Cal. 2005)(competing expert evidence of direct copying precluded summary judgment).

**POINT II**
**EVIDENCE OF STRIKING SIMILARITY IS OVERWHELMING**

**A.     Copying can be established by evidence of striking similarity**

In order to succeed on their copyright infringement claim Plaintiffs must prove that: (1) they have a valid copyright in the sound recording and underlying music contained in *Bust Dat Groove;* and (2) Defendants infringed Plaintiffs' copyright by copying protected elements of *Bust Dat Groove.* Lipton v. The Nature Company, 71 F.3d 464, 470 (2d Cir. 1995).  Under the second part of the copyright infringement analysis, i.e. infringement, a plaintiff must show that defendant copied its protected work (i.e. factual copying) and that the defendant copied enough of the protectible elements of plaintiff's work to constitute illegal appropriation (i.e. actionable copying).  Arstein v. Porter, 154 F.2d 464, 468 (2d Cir. 1946).  "Because copiers are rarely caught red-handed" factual copying is traditionally proven by indirect or circumstantial evidence of defendant's access to the original work and probative similarities between the two works. Gaste v. Kaiserman, 863 F.2d 1061, 1066 (2d Cir. 1988); Ringgold v. Black Entertainment Television, Inc., 126 F.3d 70, 75 (2d Cir. 1997) (factual copying or probative similarity "requires only the fact that the infringing work copies something from the copyrighted work."); *see also* Castle Rock Entertainment v. Carol Publishing Group, Inc., 150 F.3d 132, 137 (2d Cir. 1998) ("[P]robative, rather than substantial similarity is the correct term in referring to the plaintiff's initial burden of proving actual copying by indirect evidence).

Defendant's principle argument is that Plaintiffs cannot establish copying through circumstantial evidence because they have failed to show that Defendant had access to *Bust Dat Groove. See, Defendants' Motion, pgs. 5-13.* However, in the Second Circuit a plaintiff can establish copying without proving access if "the similarities between the plaintiff's and defendant's work are so striking as to both justify an inference of copying [factual copying] and prove improper appropriation [actionable copying]." Gaste v. Kaiserman, 863 F.2d at 1067-68 *citing* Arnstein v. Porter, 154 F.2d at 468-69 (2d Cir. 1946). Therefore, access can be inferred if there are striking similarities between *Aparthenonia* and *Bust Dat Groove* that are probative of copying.

**B.      The legal standard for showing striking similarity**

It is has often been stated that in order to establish probative copying without proof of access the similarities between the two works must be so striking so as to preclude the possibility of independent creation. Repp v. Webber, 132 F.3d at 889 *citing* Lipton v. The Nature Company, 71 F.3d at 471. However, this does not mean that Plaintiffs must show that *Aparthenonia* and *Bust Dat Groove* are identical because "[S]imilarity may be regarded as striking even if somewhat less than verbatim." *4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright §13.02[B].* Courts have determined that the existence of common errors in the plaintiff's work and the infringing work will often supply the proof necessary to show striking similarity. Eckes v. Card Prices Update, 736 F.2d 859, 863 (2d Cir.1984) (the existence of common errors in both works is the strongest evidence of piracy) *see also* Bucklew v. Hawkins Ash. Baptie and Company, 329 F.3d 923, 926 (7th Cir. 2003) (placing false or fictitious locations in maps). Courts may also focus on the quantity of probative, verifiable matches that are shared between the plaintiff's work and the infringing work. Arnstein v. Porter, 154 F.2d

at 468 (access may be inferred where the amount of similarities "strike" the court's judgment). For example, striking similarity can be found in instances where the number and placement of the certain musical notes are the same in two musical works or where the two musical works are nearly identical in rhythm, structure, pitch and melody. Lipton v. The Nature Company, 71 F.3d at 471 (works found to be strikingly similar when infringing work contained 72 of the 77 terms appearing in original); Repp v. Webber, 132 F.3d at 886-887 (summary judgment denied where plaintiff's two experts indicated that both works contained nearly identical rhythm, structure, pitch and melody). A court may also consider the existence of a unique musical fingerprint embodied in the same place in the two musical compositions as evidence of striking similarity. Gaste v. Kaiserman, 863 F.2d at 1068 (an "evaded resolution" was a unique musical fingerprint that occurred in the same place in the two songs at issue demonstrating striking similarity).

Plaintiffs have, through their three experts, demonstrated that *Aparthenonia* is strikingly similar, if not identical, to *Bust Dat Groove.* This evidence is not credibly contested by Defendants and should not be rejected by this Court. Repp v. Webber, 132 F.3d at 891 (district court fell into error in rejecting the evidence presented by plaintiffs' experts on issue of striking similarity); *see also* Arnstein v. Porter, 154 F.2d at 468 (expert analysis of the works at issue is proper in establishing similarities probative of factual copying).

**C.     Plaintiffs' expert evidence of striking similarity is compelling**

**1.     The two works are nearly identical musically**

Ritter is a professional drummer and drum instructor. *Ex. 3, Ritter Decl., at ¶1.* He has also taught drumming and has written articles on the musical and technical aspects of drumming. Id. *at ¶3.* Ritter conducted a detailed analysis between

*Aparthenonia* and *Bust Dat Groove*. Id. *at ¶11-17.* Ritter repeatedly listened to both musical works, each time identifying the individual musical elements contained in *Aparthenonia* and *Bust Dat Groove. Ex. 12, Ritter Dep. at 108.* After conducting this analysis Ritter concluded that he was listening to two versions of the same recording that had been digitally re-arranged. *Ex. 3, Ritter Decl., ¶11; Ex. 12, Ritter Dep. at 57-59.*

The musical elements in *Aparthenonia* and *Bust Dat Groove* each included "the same exact snare sound, same exact ghost note, same exact high hat, same exact bass drum sound." *Ex. 3, Ritter Decl., ¶11.* "Ghost notes occur when a drummer plays extremely soft notes to fill in the gaps between other, more prominent notes." Id. *at ¶6.* However, the ghost notes in both *Aparthenonia* and *Bust Dat Groove* give off a unique sound that is cross between a snare drum and a tom-tom. Id. "This is very rare and demonstrates the drummer's talent and creativity." Id. Not only did *Aparthenonia* and *Bust Dat Groove* share the same ghost notes, but the rhythm and pitch were also almost identical. Id. A transcription of the musical notes contained in *Aparthenonia* and *Bust Dat Groove* revealed that "there is no single or combination of musical elements, including ghost notes, present in *Aparthenonia* that does not also exist in *Bust Dat Groove.* Id. *at ¶14.* *Aparthenonia* and *Bust Dat Groove* are identical in ways that would make it impossible for two different drummers, playing on two different drummers, to create sounds that are alike, "unless the [drums] were tuned and played by the same drummer." Id. *pgs. 51-52, 279.*

2.      ***Bust Dat Groove* was sampled and digitally edited**

Plaintiffs' sound engineer/sampling expert, Ivan A. Rodriguez ("Rodriguez"), has been a music producer and sound recording-mixing engineer for the past twenty years and has received 20 Gold Albums, 5 Platinum Albums and 2 Double Platinum Albums.

*Ex. 9, Rodriguez Decl. at ¶2.* Throughout his career, Rodriguez has digitally sampled hundreds upon hundreds of records in order to create new musical works for recording artists. Id. *at ¶6.* Using digital sampling technology it is incredibly easy to sample an individual note in a pre-recorded musical work and re-arrange and place that note in a new musical work. *Ex. 10, Rodriguez Dep. pgs. 90-91.*

When Rodriguez first listened to the two works, he immediately knew that the snares, the tone of the kicks were the same between *Aparthenonia* and *Bust Dat Groove.* Id. *pg. 144.* In an attempt to prove that *Aparthenonia* was created from sampling and digital editing *Bust Dat Groove,* Rodriguez conducted an experiment in which he tried to undertake the same step by step process he believed was undertaken to create *Aparthenonia. Ex. 10, Rodriguez Dep. pg. 166-167, 225*; *Ex. 9, Rodriguez Decl. at ¶11-15.* Rodriguez provides a detailed analysis of the rearrangement and manipulation of the individual musical elements and instruments that he undertook to re-create the process the evidence suggest was undertaken by Defendant. *Ex. 9, Rodriguez Decl. at ¶11-17; Ex. 10, Rodriguez Dep. pgs. 242-243.*

Rodriguez played the digitally edited version of *Bust Dat Groove* and *Aparthenonia,* playing *Bust Dat Groove* in the left speaker and *Aparthenonia* in the right speaker. *Ex. 10, Rodriguez Dep. pgs. 240-241; 421-422.* While the two compositions were playing they began to "flange." Id. Flanging occurs when two identical frequencies begin to cross when played at the same time. Id. *pgs. 240-241.* Rodriguez concluded that *Aparthenonia* could not be made without sampling *Bust Dat Groove* and that the two musical works were 98% the same music. Id. *pgs 195-196.* The only difference between the two works was digital signal processing and reverb which only affected the quality of the recording not the drum sounds themselves. Id. *pgs. 247-248.*

### 3. The FFT frequency spectra are indistinguishable

Plaintiffs' digital signal processing expert, Dr. Steven Smith ("Dr. Smith") has had three years of graduate school training in digital signal processing and FFT frequency spectral analysis; has spent the last 20 years developing instrumentation, much of which uses FFT techniques; and is the author of a digital signal processing textbook in which approximately 315 pages are dedicated to FFT. *Ex. 13, Dr. Smith Dep. pg. 219.* The majority of the information Dr. Smith used in forming the opinions and conclusions contained in his expert report were derived almost exclusively from the data contained in Boulanger's Report. Id. pgs. *206-208, 221.*

Boulanger's data only compared approximately 0.023197 seconds of the first-bar of drum music (identified in Boulanger's Report as "1-bar loop") in *Aparthenonia* and *Bust Dat Groove*. *Ex. 13, Dr. Smith Dep., 175, 221; Ex. 11, Dr. Smith's Expert Report pg.* 2; *Ex. 14, Boulanger's Report at Figs. 1-36.* Boulanger never made any comparison of any of the remaining loops in either *Aparthenonia* or *Bust Dat Groove. Ex. 14, Boulanger's Report, et. seq.* After reviewing Boulanger's data, Dr. Smith believed that an analysis of approximately 2.3 seconds of the first bar of drum music in *Aparthenonia* and *Bust Dat Groove* was sufficient to conduct an appropriate FFT frequency spectral analysis. *Ex. 11, Dr. Smith's Expert Report at pg. 2; Ex. 13, Dr. Smith Dep. at 221, 224-225.*

Dr. Smith determined that Boulanger's conclusions were seriously flawed because Boulanger failed to conduct a fair and impartial comparison between *Aparthenonia* and *Bust Dat Groove. Ex. 13, Dr. Smith's Dep. pgs. 78, 147-148, 150, 155-156, 222-223,229-230, 239; Ex. 11, Dr. Smith's Expert Report. pg. 4.* For example, Boulanger, in making his comparisons between the two works, failed to display the frequency wave

results in comparable shades of black and white. *Ex. 13, Dr. Smith's Dep. pgs. 147-148.* By displaying frequency waves in distinctively different shades, Boulanger made the ability to conduct an accurate comparison extremely difficult. Id. Dr. Smith also noted that Boulanger failed to compare data on a like vertical scale and, instead, made one scale almost three times larger than the other scale. Id. *pg. 155.* This prevented an accurate comparison of the data and could create false positive results. Id. *pg. 156.* Boulanger's conclusions were flawed because he failed to compare like things with like things in the data. Id. *pg. 229.*

Dr. Smith concluded that the FFT frequency spectra of the 2.3 seconds of the first bar of drum music from *Aparthenonia* and *Bust Dat Groove* were an exceptional match. Id. *pgs. 64-65.* The FFT frequency spectra of one drum strike from *Aparthenonia* and two drum strikes from *Bust Dat Groove* were so similar that none of the individuals asked to identify which of the three spectra were different was able to do so. *Ex.11, Dr. Smith's Expert Report, pgs. 4-5.* The FFT frequency spectra of *Aparthenonia* and *Bust Dat Groove* are virtually indistinguishable. *Ex. 13, Dr. Smith's Dep. pg. 235.* The overwhelming similarities in the frequency spectra of the drum sounds embodied in *Aparthenonia* and *Bust Dat* Groove provides extremely strong evidence that *Aparthenonia* is a digitally edited or manipulated copy of *Bust Dat Groove. Ex. 11, Dr. Smith's Expert Report, pgs. 3-8; Ex. 13, Dr. Smith Dep., 78-79, 113-114, 209, 233, 235-236, 240.*

## POINT III
## STRIKING SIMILARITY NOT CREDIBLY CHALLENGED

### A. Defendant's failed attempt to discredit Ritter's expertise

Defendant questioned Ritter's finding that *Bust Dat Groove* was not a rudimentary drum pattern. *Ex. 12, Ritter Dep. pgs.206-209. Bust Dat Groove* is

presumptively original by virtue of its registration. <u>Vargas v. Pfizer</u>, 418 F.Supp.2d at 372. Notwithstanding this fact, Ritter provided a variety of reasons why *Bust Dat Groove* was original including: (i) the creative combination of musical elements; (ii) the nuance of touch; (iii) the decision to use multiple bounce strokes; and (iv) the creation of ghost notes. *Ex. 12, Ritter Dep. pgs. 207-208.* The combination of all of these things not only makes *Bust Dat Groove* original and creative, but also makes it a very difficult piece of music to play. <u>Id</u>. *pg. 196.*

Defendant's attempt to test Ritter's ability to identify Plaintiff Vargas' drumming among an album of drum music was fatally flawed from the onset. Defendant's attorneys were aware that prior to rendering his opinion in this case, Ritter listened to *Bust Dat Groove* countless times, using professional studio headphones and took notes each time. <u>Id</u>. *pg. 108, 247, 278.* In addition, the test was conducted in a manner specifically crafted to reduce Ritter's ability clearly identify the drum music being played. For example: (i) the speakers through which the music was being playing had significant static; (ii) Defendant's attorneys could not provide Ritter with any headphones that worked; (iii) the cd containing the music contained buzzing and other distortions to prevent a fair analysis; (iv) the poor quality of either the recording or Defendant's attorney's laptop or cd player precluded any accurate findings; and (v) one of the musical tracks even contained children laughing in the background over the drum music. <u>Id</u>. *pgs. 238-242, 245-247, 252-254, 259, 262, 265.* Notwithstanding this test, Ritter was still able to identify each musical instrument being played on every drum track, he identified ghost notes, and identified Plaintiff Vargas. <u>Id</u>. *pg. 238-273.*

Finally, Defendant's contention that no reasonable jury could find copying in this case because Ritter's conclusion that *Aparthenonia* and *Bust Dat Groove* were the same

piece of drum music with the musical elements re-arranged conflicts with Dr. Smith's conclusion that the drum sounds in each were virtually indistinguishable from each other, is absurd.

**B.    Defendant fails to contradict Rodriguez's findings**

Defendant claims that Rodriguez's analysis does not show copying or striking similarity. *See, Defendant's Motion, pg. 19.* In support of this claim Defendant argues that Rodriguez could have made his digitally re-edited version of *Bust Dat Groove* sound more like *Aparthenonia* but failed to do so. Id. Rodriguez painstakingly demonstrated how the sounds in *Bust Dat Groove* were broken into pieces then re-arranged to create *Aparthenonia. Ex. 9, Rodriguez Decl. ¶11-17; Ex. 10, Rodriguez Dep. pgs. 242-243.* When played together the digitally re-edited version of *Bust Dat Groove* "flanged" with *Aparthenonia. Ex. 10, Rodriguez Dep. pgs. 240-241; 421-422.* Flanging is an acoustic phenomenon that only occurs when two "identical" frequencies begin to cross when played at the same time. Id. *pgs. 240-241.* Rodriguez concluded that *Aparthenonia* could not have been made without sampling and digitally editing *Bust Dat Groove;* and that the two musical works were 98% the same music. Id. *pgs 167, 195-196.* When asked if two other drums sounds could be taken, dissected and put back together to make *Aparthenonia* Rodriguez explained that the re-arranged drum sound would not flange because you would need a drum sound from the original source. Id. *pgs.291.*

**C.    Defendant's attack on Dr. Smith's conclusions is without merit**

Defendant summarily concludes that Dr. Smith cannot rule out the possibility of independent creation because he is unable to determine whether or not different musician, playing different instruments, at different points in time, can produce waveforms as indistinguishable as those created by the drum sounds in *Aparthenonia* and *Bust Dat*

*Groove*. *Defendant's Motion, pg. 16.* This is argument is completely without merit. Dr. Smith stated that since there was extremely strong evidence to support Plaintiffs' theory of copying in this case, "[I]n order for Defendants' position to be correct (i.e. that *Aparthenonia* was created independently of [*Bust Dat Groove*]) it would mean that a different drummer, using different instruments, and at a different point in time, produced drum-strikes that are indistinguishable from the successive drum strikes in [*Bust Dat Groove*]." <u>Id</u>. This conclusion simply implies that based on the overwhelming evidence of the matches between *Aparthenonia* and *Bust Dat Groove* Dr. Smith had no reason to believe that the aforementioned phenomenon was possible. *Ex. 13, Dr. Smith's Dep. pg. 209-210.* In fact, such an occurrence is almost impossible. *Ex. 12, Ritter Dep. pg. 51-52, 279.*

Second, Defendant suggests that Dr. Smith's conclusions cannot be relied upon by this Court because he failed to conduct his own analysis. *Defendant's motion, pg. 17.* This makes no sense. Dr. Smith did conduct his own analysis; he simply relied on the exact same data that Boulanger used to support his conclusion that *Aparthenonia* and *Bust Dat Groove* are different. *Ex. 13, Dr. Smith Dep. pgs. 206-208, 221.* Plaintiffs are uncertain if there is a better way to reach a conclusion on a particular issue by having the disputing parties review and analyze the same data. Finally, with respect to Defendant's assertion that since it is our burden of proof Plaintiffs should have had Dr. Smith conduct his own analysis of the musical works. *Defendant's Motion, pg. 17 n.6.* Defendant retained Boulanger only after Ricigliano's expert opinions and conclusions were successfully rebuked by Ritter. *See, Vargas v. Pfizer I.* Boulanger's Report is dated January 31, 2006; therefore, Plaintiffs' counsel must have received this report sometime in February 2006. In order to rebut the conclusions and opinions in Boulanger's Report,

Plaintiffs retained Dr. Smith. *Ex. 11, Dr. Smith's Expert Report pg. 1.* Therefore, Plaintiffs did not retain Dr. Smith in order to establish their *prima facie* case, but rather, to rebut Boulanger's impartial analysis and subjective conclusions. *Ex. 13, Dr. Smith's Dep. pgs. 78, 147-148, 150, 155-156, 222-223,229-230, 239; Ex. 11, Dr. Smith's Expert Report. at pg. 4.*

Third, Defendant's suggestion that the term "associated copies" means that *Aparthenonia* and *Bust Dat Groove* are not strikingly similar is without merit. *Defendant's Motion, pg. 17-18.* Dr. Smith used the word "associated copies" to describe the similarity between successive strikes on the same drum by the same drummer. *Ex. 11, Dr. Smith's Expert Report pgs. 4-5.* The term "direct copies" means an identical copy of a drum strike the only difference being some negligible noise degradation. Id. In conducting their FFT frequency spectra analysis of *Aparthenonia* and *Bust Dat Groove,* neither Dr. Smith nor Boulanger were looking for what Dr. Smith called "direct copies" because their independent analysis dealt solely with the first 0.023197 seconds of the first one bar drum loop in each musical composition; therefore, "direct copies," i.e. identical copies of the drum strikes contained in the first 0.023197 second of the first one bar drum loop in each composition, would rarely be detected if at all. *Ex. 11, Dr. Smith's Report, pg. 4; Ex.12, Dr. Smith's Dep. pgs. 174-175.* Instead, what was likely to be found if copying took place would be "associated copies," i.e. those successive drum strikes occurring in the first 0.023197 seconds of the first one bar drum loop from either *Aparthenonia* or *Bust Dat Groove* which would have the spectral sound signature of a drum strike, on the same drum by the same live drummer. Id.

Because Boulanger did not conduct a fair and impartial comparison of the data he determined that no drum strike (i.e. the drum strike in the first 0.023197 seconds of the

first one bar drum loop in each composition) in *Aparthenonia* was similar to a drum strike in *Bust Dat Groove*. *Ex. 13, Dr. Smith's Dep. pgs. 78, 147-148, 150, 155-156, 222-223,229-230, 239; Ex. 11, Dr. Smith's Expert Report. pg. 4.* However, Dr. Smith's fair and impartial comparison of Boulanger's data objectively identified "associated copies" between the two works, i.e. drum strikes from *Aparthenonia* which were as similar as the four successive drum strikes in the first 0.023197 seconds of the first one bar drum loop in *Bust Dat Groove* were to each other. *Ex. 11, Dr. Smith's Expert Report. pg. 4-8.* Therefore, neither Boulanger nor Dr. Smith compared the remaining drum strikes in each composition.

**POINT IV**
**NO CREDIBLE EVIDENCE OF INDEPENDENT CREATION**

**A.    Defendant's contradictory explanation of independent creation**

Defendant initially stated under oath that he used his "laptop" to create *Aparthenonia* but at his deposition he claimed that he used his "blue and white G3 computer." *See, Ex. 7, Defendant BT's Interrogatory Resp. No. 5; Ex. 6, Transeau Dep. at 140.* Defendant also stated under oath that it took him one hour to create, mix and master *Aparthenonia* but at his deposition he testified that it only took him "five minutes" to make *Aparthenonia* and a maximum of 10 to 15 minutes to mix and master *Aparthenonia. See, Ex. 7, Defendant BT's Interrogatory Resp. No. 5; Ex. 6, Transeau Dep. at 157.* Defendant's claim that he extracted the drum sounds contained in *Aparthenonia* from the program Reason is unbelievable because when asked at his deposition to identify the drum sounds he allegedly extracted from Reason Defendant was unable to do so. *Ex. 6, Transeau Dep. at 151-154.* Defendant initially stated in his deposition that "sampling doesn't apply at all to my work." Id. *at 41.* However, shortly thereafter, Defendant admitted that he sampled a vocal phrase from the early 1980's rap

group the "Sugar Hill Gang" and included the vocal phrase on his album "Movement in Still Life." Id. *at 41, 85-87*. A jury should be allowed to determine if Defendant's claim of independent creation is believable.

**B.      Witnesses incapable of supporting claim of independent creation**

Michael DiMattia submitted a declaration in support of Defendant in which he claims that "BT used his computers and software in the creation and production of beats…from scratch, including *Aparthenonia* one of the 'dirty breaks." *See, Defendant's Exhibit T, DiMattia Decl.¶7.* However, Mr. DiMattia did not meet or work with Defendant until February 2001. Id. at *¶2, ¶3*. So how could he know what Defendant used to create *Aparthenonia* when *Aparthenonia* was allegedly created "in or around August, 2000." *Ex. 16, Defendant BT's Interrogatory Resp. No. 3.* Defendant also submits the declaration of Carlos Vasquez, who claims to have been on the tour bus with Defendant when he created *Aparthenonia. See, Defendant's Exhibit R, Vasquez Decl., ¶7.* Mr. Vasquez's claims are suspect. First, he does not identify the name of the tour that he accompanied Defendant. Id. at *¶6.* Second, Mr. Vasquez does not claim that he saw Defendant creating *Aparthenonia* on the tour bus nor does he claim that he was on the tour bus at the time *Aparthenonia* was allegedly created. Id. Finally, Mr. Vasquez claims that he was with Defendant on several tours from "Fall 2000 to Spring 2001" and that during one of these tours Defendant created *Aparthenonia.* Id. at *¶3, ¶6.* However, Mr. Vasquez could not have been present when Defendant allegedly created *Aparthenonia* because *Aparthenonia* was created in the summer (i.e. August) of 2000. *Ex. 7, Defendant's Interrogatory Resp. No. 3.* A jury should be allowed to asses the credibility of these witnesses.

## C.    Defendant's experts' opinions are unreliable

In *Vargas v. Pfizer I,* Ricigliano's expert report was thoroughly discredited when it was demonstrated that he: (i) improperly transcribed the musical notes in both *Aparthenonia* and *Bust Dat Groove;* (ii) incorrectly identified the presence of tom-toms in both musical works; (iii) failed to identify the "ghost notes" in each work; and (iv) mistakenly identified a "four stroke ruff" drumming technique in *Bust Dat Groove.  Ex. 3, Ritter Decl. at ¶18-26.*  Plaintiffs are uncertain what, if any, expert opinion Ricigliano could offer in this case that could be relied upon by the Court or a jury.

Boulanger claimed that FFT frequency spectral analysis was the "DNA" for testing similarities in sound.  *Exhibit 14, Boulanger's Report, pg. 2.*  Boulanger ultimately concluded that the first 2.3 seconds of the first one bar drum loop in *Aparthenonia* and *Bust Dat Grove* did not match. Id. pgs. 1-3.  However, Boulanger failed to conduct a fair and impartial comparison between *Aparthenonia* and *Bust Dat Groove. Exhibit 13, Dr. Smith's Dep. at 78, 147-148, 150, 155-156, 222-223,229-230, 239; Ex. 11, Dr. Smith's Expert Report. at pg. 4.*  Dr. Smith utilized all the data that Boulanger used to conduct his analysis and determined that the frequency spectra of the 2.3 seconds of the first drum loop in *Aparthenonia* and *Bust Dat Groove* were almost indistinguishable.  *Ex. 13, Dr. Smith Dep. at 221; Ex. 11, Dr. Smith's Expert Report, pgs. 4-8.*  Dr. Smith concluded that in order for *Aparthenonia* not to be a digitally edited or manipulated copy of *Bust Dat Groove* it would mean that different drummers, using different instruments, and at different points in time produced a drum strike in *Aparthenonia* that is indistinguishable from the drum strikes in *Bust Dat Groove.  Ex. 11, Dr. Smith's Expert Report at pgs. 5-8; Ex. 13, Dr. Smith Dep. at 234-235.*

## POINT V
## JURY SHOULD DECIDE THIS CASE

Defendant's evidence of independent creation is questionable at best, and at the very least "should be taken with a grain of salt." <u>Repp v. Weber</u>, 132 F.3d at 891 *citing* 2 Paul Goldstein. Copyright: Principles, Law and Practice §7.2.2 (1989). Plaintiffs have demonstrated, through the testimony and written reports of their experts, that *Aparthenonia* was created by sampling and then digitally editing or manipulating the musical elements in *Bust Dat Groove*. If this Court assumes the truth of Plaintiffs evidence, as it must on summary judgment, there can be no question that a reasonable trier of fact could find for Plaintiffs in this action. <u>Id</u>.

## <u>CONCLUSION</u>

For the reasons stated herein, Defendant's Motion should be denied in its entirety and trial date should be scheduled in this matter.

Dated: New York, New York
      October 12, 2006

Respectfully submitted,

       s/ Paul Chin
PAUL A. CHIN, ESQ. (PC 9656)
Law Offices of Paul A. Chin
233 Broadway, 5th Floor
New York, NY 10279
(212) 964-8030
*Attorneys for Plaintiff*

To:    Julie Ahrens, Esq.
       Kirkland & Ellis, LLP
       555 California Street, Suite 2700
       San Francisco, CA 94104
       *Counsel for Defendant Transeau*

       David S. Olson, Esq.
       Center for Internet and Society
       Stanford Law School
       559 Nathan Abbott Way
       Stanford, CA 94305-8610
       *Counsel for Defendant Transeau*

Eric M. Stahl, Esq.
Davis Wright Tremaine, LLP
1501 4th Avenue, Suite 2600
Seattle, WA 98101-1688
*Counsel for Defendant East West Communications*

<u>**CERTIFICATE OF SERVICE**</u>

On the 12th day of October, 2006, a true and correct copy of the PLAINTIFFS'

OPPOSITION TO DEFENDANTS MOTION FOR SUMMARY JUDGMENT was

served via priority mail, with delivery confirmation, postage pre-paid to the following

attorneys representing the Defendants:

>Julie Ahrens, Esq.
>Kirkland & Ellis, LLP
>555 California Street, Suite 2700
>San Francisco, CA 94104
>*Counsel for Defendant Transeau*
>
>David S. Olson, Esq.
>Center for Internet and Society
>Stanford Law School
>559 Nathan Abbott Way
>Stanford, CA 94305-8610
>*Counsel for Defendant Transeau*
>
>Eric M. Stahl, Esq.
>Davis Wright Tremaine, LLP
>1501 4th Avenue, Suite 2600
>Seattle, WA 98101-1688
>*Counsel for Defendant East West Communications*


        10/12/06                                            s/ Paul A. Chin
Date                                                 Paul A. Chin, Esq. (PC 9656)
                                                     LAW OFFICES OF PAUL A. CHIN
                                                     The Woolworth Building
                                                     233 Broadway, 5th Floor
                                                     New York, NY 10279
                                                     (212) 964-8030
                                                     *Attorneys for Plaintiffs*