# EXHIBIT R

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

---oOo---

RALPH VARGAS and BLAND-RICKY )
ROBERTS, )
                                                   )
                Plaintiffs, )
                                                   ) No. 04CV 9772
vs.                                   ) (JCF)
                                                   )
                                                   )
PFIZER, INC.; PUBLICIS, INC.; )
FLUID MUSIC; EAST WEST )
COMMUNICATIONS, INC. and )
BRIAN TRANSEAU, p/k/a "BT",

                Defendants.

Deposition of

STEVEN W. SMITH, Ph.D.

Tuesday, August 15, 2006

**CERTIFIED COPY**

Reported by:

GEORGE SCHUMER, CSR                     (01-384619)



**LEGALINK®**
A **WORDWAVE** COMPANY

LegaLink San Francisco     tel (415) 357-4300    www.legalink.com
575 Market Street, 11th Floor    tel (800) 869-9132
San Francisco, CA 94105    fax (415) 357-4301

GLOBAL COURT REPORTING · LEGAL VIDEOGRAPHY · TRIAL SERVICES

STEVEN W. SMITH, Ph.D.   August 15, 2006

| | | |
|---|---|---|
| 11:53:51 | 1 | Defendant Exhibit 36? |
| 11:53:58 | 2 | A. Yes. |
| 11:54:03 | 3 | Q. After you prepared your fax, and sent it off |
| 11:54:16 | 4 | to Mr. Chin, what happened next? |
| 11:54:19 | 5 | A. Mr. Chin requested that I spend additional |
| 11:54:30 | 6 | time, and develop the full expert report. |
| 11:54:34 | 7 | Q. Did you agree to do so? |
| 11:54:35 | 8 | A. Yes. |
| 11:54:36 | 9 | Q. Did you have any restrictions on your time |
| 11:54:40 | 10 | that caused you concern, as to being able to do this? |
| 11:54:44 | 11 | A. I told Mr. Chin that my time was going to be |
| 11:54:46 | 12 | limited; that I could perhaps spend a few days on it. |
| 11:54:49 | 13 | I certainly couldn't spend a few weeks on it. |
| 11:54:52 | 14 | Q. You agree, don't you, that the overall methods |
| 11:54:59 | 15 | used by Boulanger are standard techniques in signal |
| 11:55:03 | 16 | analysis; is that right? |
| 11:55:05 | 17 | A. Yes. |
| 11:55:06 | 18 | Q. And you agree that the overall methods used by |
| 11:55:10 | 19 | Boulanger are appropriate for the analysis at hand in |
| 11:55:15 | 20 | this case? |
| 11:55:15 | 21 | A. Yes. |
| 11:55:16 | 22 | Q. What led you to believe, at the time of your |
| 11:55:28 | 23 | February 26 fax, that Aparthenonia -- at least in some |
| 11:55:40 | 24 | sections -- is a copy of Funky Drummer? |
| 11:55:45 | 25 | MR. CHIN: Objection. |

63

STEVEN W. SMITH, Ph.D.    August 15, 2006

| | | |
|---|---|---|
| 12:11:09 | 1 | but did any of the other material that you listed in |
| 12:11:12 | 2 | your expert report as having been reviewed -- did you |
| 12:11:16 | 3 | rely on any of it in forming the opinion given in your |
| 12:11:21 | 4 | expert report in this case? |
| 12:11:22 | 5 | A.  No, I didn't. |
| 12:11:23 | 6 | Q.  Did you use any tools in conducting your |
| 12:11:35 | 7 | analysis for your expert report? |
| 12:11:36 | 8 | A.  I'm not sure I understand the definition of |
| 12:11:40 | 9 | "tools." |
| 12:11:42 | 10 | Q.  Other than reading Dr. Boulanger's report, is |
| 12:11:47 | 11 | there anything else you made use of? |
| 12:11:49 | 12 | A.  I digitally scanned in some of his data, and |
| 12:11:55 | 13 | used those electronic files for comparison. |
| 12:12:01 | 14 | Q.  And "his" -- by "his," you mean Dr. Boulanger? |
| 12:12:06 | 15 | A.  Yes. |
| 12:12:07 | 16 | Q.  So you did not feed the audio files at issue |
| 12:12:14 | 17 | in this case into a computer; correct? |
| 12:12:18 | 18 | A.  Correct. |
| 12:12:19 | 19 | Q.  You didn't personally perform any of the |
| 12:12:23 | 20 | sonogram analysis of the files; correct? |
| 12:12:26 | 21 | A.  Correct. |
| 12:12:29 | 22 | Q.  And you didn't personally conduct any of the |
| 12:12:33 | 23 | Fast Fourier Transform analysis on the data in this |
| 12:12:41 | 24 | case; correct? |
| 12:12:42 | 25 | A.  Correct. |

LegaLink, A Merrill Communications Company    (800) 869-9132

STEVEN W. SMITH, Ph.D.    August 15, 2006

| | | |
|---|---|---|
| 12:12:44 | 1 | Q. Your job was to look at Dr. Boulanger's |
| 12:12:48 | 2 | report, and make your conclusions from that; is that |
| 12:12:50 | 3 | correct? |
| 12:12:50 | 4 | A. Correct. |
| 12:12:51 | 5 | Q. So you were limited to the data that was |
| 12:13:00 | 6 | present in Dr. Boulanger's report? |
| 12:13:02 | 7 | A. Correct. |
| 12:13:03 | 8 | Q. Did you feel that that was enough data to |
| 12:13:11 | 9 | reach your conclusions? |
| 12:13:12 | 10 | A. Yes. |
| 12:13:13 | 11 | Q. At any point, did you think that it would have |
| 12:13:26 | 12 | been beneficial to have more data than was provided to |
| 12:13:29 | 13 | you in Dr. Boulanger's report? |
| 12:13:32 | 14 | A. I based my conclusions on whatever data was |
| 12:13:40 | 15 | available. If I had additional data, perhaps I could |
| 12:13:45 | 16 | reach additional conclusions, but the conclusions I |
| 12:13:47 | 17 | reached were completely justified by the data I had. |
| 12:13:49 | 18 | Q. Because you understood your job being to look |
| 12:13:54 | 19 | at the reporting data of Dr. Boulanger, and render an |
| 12:13:59 | 20 | opinion from that; right? |
| 12:14:00 | 21 | A. Yes. |
| 12:14:00 | 22 | Q. Mr. Chin never asked you to take audio files |
| 12:14:04 | 23 | and start from scratch with digitally analyzing them; |
| 12:14:10 | 24 | correct? |
| 12:14:11 | 25 | A. Correct. |

LegaLink, A Merrill Communications Company    (800) 869-9132

STEVEN W. SMITH, Ph.D.    August 15, 2006

```
12:15:51   1       Q.  And your conclusion as to your second opinion,
12:16:20   2   that it is likely that Aparthenonia and Funky Drummer
12:16:23   3   are copies -- I would like to ask you a question about
12:16:26   4   that opinion; okay?
12:16:28   5           MR. CHIN:  Objection.
12:16:28   6           You can answer.
12:16:29   7           THE WITNESS:  Yes.
12:16:30   8           MR. OLSON:  Q.  That is based on similarities
12:16:35   9   that you perceived in the data presented in
12:16:42  10   Dr. Boulanger's report; correct?
12:16:43  11           MR. CHIN:  Objection.
12:16:43  12           You can answer.
12:16:44  13           THE WITNESS:  I think it is more than
12:16:46  14   similarities I perceived.  I think I developed
12:16:49  15   objective evidence that they were.
12:16:54  16           MR. OLSON:  Q.  Your opinion, then, is based
12:16:56  17   on what you have just referred to as "objective
12:17:00  18   evidence of similarity between Aparthenonia and Funky
12:17:05  19.  Drummer"; is that correct?
12:17:06  20           MR. CHIN:  Objection.
12:17:07  21           THE WITNESS:  Yes.
12:17:07  22           MR. OLSON:  Q.  Anything else that forms the
12:17:12  23   basis of that second opinion?
12:17:13  24       A.  No.
12:17:17  25       Q.  You agree, don't you, that frequency spectra
```

79

STEVEN W. SMITH, Ph.D.   August 15, 2006

| | | |
|---|---|---|
| 12:17:33 | 1 | are a much more sensitive measure of the similarity of |
| 12:17:36 | 2 | audio wave forms than hearing; correct? |
| 12:17:39 | 3 | A.  Yes, I would agree with that. |
| 12:17:45 | 4 | Q.  And you also agree that comparing the |
| 12:17:53 | 5 | frequency spectra of Aparthenonia and Funky Drummer is |
| 12:17:57 | 6 | an appropriate and powerful method of resolving if |
| 12:18:00 | 7 | Aparthenonia is a digitally edited and/or manipulated |
| 12:18:06 | 8 | copy of Funky Drummer; correct? |
| 12:18:08 | 9 | A.  Correct. |
| 12:18:08 | 10 | Q.  So you don't have an issue with the tools |
| 12:18:11 | 11 | Dr. Boulanger chose to analyze the audio files; |
| 12:18:15 | 12 | correct? |
| 12:18:15 | 13 | A.  Correct. |
| 12:18:16 | 14 | Q.  You think the methodology is okay; correct? |
| 12:18:18 | 15 | A.  The methodology, as far as preparation of the |
| 12:18:22 | 16 | raw data, I have no objection to. |
| 12:18:26 | 17 | Q.  But it is the conclusions based on that data |
| 12:18:33 | 18 | that you think are incorrect? |
| 12:18:35 | 19 | A.  That's correct. |
| 12:18:36 | 20 | Q.  Do you know the name of the -- I know it is |
| 12:18:47 | 21 | referred to in Dr. Boulanger's report and your report |
| 12:18:51 | 22 | as "Funky Drummer," but do you know the name of the |
| 12:18:54 | 23 | plaintiffs' drum track that's at issue in this suit? |
| 12:18:57 | 24 | A.  Yes. |
| 12:18:58 | 25 | Q.  What is it? |

LegaLink, A Merrill Communications Company    (800) 869-9132

| | | |
|---|---|---|
| 16:09:03 | 1 | Q. Now what I have put in the fourth copy line, |
| 16:09:08 | 2 | the little a, b, c, d with the bars over them: Would |
| 16:09:15 | 3 | those be what you were referring to as direct copies |
| 16:09:17 | 4 | of the A, B, C and D from the original? |
| 16:09:20 | 5 | A. Yes. |
| 16:09:20 | 6 | Q. But are different from a, b, c and d, from |
| 16:09:27 | 7 | what we said was the first copy; right? |
| 16:09:30 | 8 | A. Yes, in the first copy those are exact, which |
| 16:09:33 | 9 | are indistinguishable from A, B, C and D. |
| 16:09:36 | 10 | Q. So in the fourth copy you can distinguish "a" |
| 16:09:39 | 11 | a little bit, because there is a little amount of |
| 16:09:43 | 12 | noise; correct? |
| 16:09:44 | 13 | A. Correct. |
| 16:09:45 | 14 | Q. Now I want you to assume that the Funky |
| 16:09:56 | 15 | Drummer pattern was made from taking the 2.3-second |
| 16:09:59 | 16 | loop that Dr. Boulanger analyzes, and repeating that; |
| 16:10:03 | 17 | okay? |
| 16:10:03 | 18 | A. It is my understanding you are saying it is a |
| 16:10:07 | 19 | digital exact copy? |
| 16:10:10 | 20 | Q. Yes, thank you. |
| 16:10:13 | 21 | Let me restate it. I would like you to assume |
| 16:10:16 | 22 | that Funky Drummer was made by taking the 2.3-second |
| 16:10:21 | 23 | loop that Dr. Boulanger analyzed, digitally copying |
| 16:10:25 | 24 | and repeating that loop; okay? |
| 16:10:27 | 25 | A. Yes. |

LegaLink, A Merrill Communications Company   (800) 869-9132

| | | |
|---|---|---|
| 16:10:32 | 1 | Q. So in the example that I just described, for |
| 16:10:44 | 2 | each new beginning of the loop, the first drum strike |
| 16:10:48 | 3 | would be an exact copy of the beginning of the |
| 16:10:50 | 4 | previous loop; correct? |
| 16:10:51 | 5 | A. Yes. |
| 16:10:52 | 6 | Q. Now if Aparthenonia was created from Funky |
| 16:11:04 | 7 | Drummer, as I have just asked you to assume it exists, |
| 16:11:10 | 8 | you would expect to find direct copies in Aparthenonia |
| 16:11:13 | 9 | from Funky Drummer; correct? |
| 16:11:15 | 10 | MR. CHIN: Objection. |
| 16:11:17 | 11 | THE WITNESS: Correct. |
| 16:11:17 | 12 | MR. OLSON: Q. In your report, you don't |
| 16:11:23 | 13 | point to any direct copies from Funky Drummer in |
| 16:11:26 | 14 | Aparthenonia; correct? |
| 16:11:28 | 15 | A. In my report I stated that I did not believe |
| 16:11:33 | 16 | that there could be direct copies that exist. I |
| 16:11:39 | 17 | didn't specifically look for direct copies, because I |
| 16:11:41 | 18 | was under the assumption, very different than what we |
| 16:11:44 | 19 | are now, about the nature of Funky Drummer being an |
| 16:11:46 | 20 | exact copy between the various bars. |
| 16:11:49 | 21 | Q. What was your assumption about Funky Drummer |
| 16:11:51 | 22 | that you made, when you were performing your analysis? |
| 16:11:56 | 23 | A. My assumption is that the 26 or 27 bars of |
| 16:12:00 | 24 | Funky Drummer are associated copies, meaning that they |
| 16:12:02 | 25 | were not exact duplicates of each other; that they |

LegaLink, A Merrill Communications Company   (800) 869-9132

| | | |
|---|---|---|
| 16:12:06 | 1 | were made by a drummer playing the bar over and over. |
| 16:12:11 | 2 | Q. Even if the drummer played the bar over and |
| 16:12:22 | 3 | over physically, there's a possibility that you would |
| 16:12:25 | 4 | find a direct copy between Funky Drummer and |
| 16:12:27 | 5 | Aparthenonia, if Aparthenonia is a copy; right? |
| 16:12:31 | 6 | MR. CHIN: Objection. |
| 16:12:33 | 7 | THE WITNESS: It is just on random chance, 1 |
| 16:12:37 | 8 | in 26. |
| 16:12:38 | 9 | MR. OLSON: Q. Did you look for any such |
| 16:12:40 | 10 | direct copy? |
| 16:12:41 | 11 | A. I didn't have any way of distinguishing what |
| 16:12:46 | 12 | was a direct copy, versus an associated copy. What I |
| 16:12:50 | 13 | was able to do was just make a comparison of how |
| 16:12:53 | 14 | similar they were. |
| 16:12:55 | 15 | Q. Is there anything you could do to determine |
| 16:13:08 | 16 | whether there's a direct copy from Funky Drummer in |
| 16:13:12 | 17 | Aparthenonia? |
| 16:13:13 | 18 | A. I don't believe there is, based on the data |
| 16:13:18 | 19 | directly, and Dr. Boulanger's report. Certainly if |
| 16:13:24 | 20 | you were looking at all 26 bars, there would be the |
| 16:13:26 | 21 | possibility of examining that data for it. |
| 16:13:28 | 22 | Q. Now I want you to assume something different. |
| 16:13:31 | 23 | I want you to go back to the assumption you had when |
| 16:13:34 | 24 | you did your analysis, which is that Funky Drummer was |
| 16:13:36 | 25 | created all by live drumming; okay? |

# CERTIFICATE OF REPORTER

I, George Schumer, a Certified Shorthand Reporter, hereby certify that the witness in the forgoing matter was by me duly sworn to tell the truth, the whole truth and nothing but the truth in the within-entitled cause;

That said proceeding was taken down in shorthand by me, a disinterested person, at the time and place therein stated, and that the testimony of the said witness was thereafter reduced to typewriting, by computer, under my direction and supervision;

That before completion of the deposition, review of the transcript ✓ was ___ was not requested. If requested, any changes made by the deponent (and provided to the reporter) during the period allowed are appended hereto.

I further certify that I am not of counsel or attorney for either or any of the parties to the said deposition, nor in any way vested in the outcome of this cause, and that I am not related to any of the parties thereto.

DATED: _August 22, 2006_

_____
George Schumer, CSR 3326