UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

------------------------------------------------------------- x

RALPH VARGAS and
BLAND-RICKY ROBERTS,

            Plaintiffs,

- against -

PFIZER INC., PUBLICIS, INC., FLUID
MUSIC, EAST WEST COMMUNICATIONS,
INC. and BRIAN TRANSEAU p/k/a "BT",

            Defendants.

------------------------------------------------------------- x

Case No. 04 CV 9772 (WHP)

**DECLARATION OF ANTHONY T. FALZONE IN SUPPORT OF DEFENDANT BRIAN TRANSEAU'S MOTION FOR ATTORNEYS' FEES AND COSTS**

I, Anthony T. Falzone, declare:

    1.    I am lead counsel for Defendant Brian Transeau ("BT") in this matter. I am admitted to practice law in California, and admitted to practice before the Court in this matter *pro hac vice*. Except for those facts asserted on information and belief, I have personal knowledge of the facts stated in this declaration, and could testify competently to them if called to do so.

    2.    I am the Executive Director of the Fair Use Project, which is part of the Center for Internet and Society at Stanford Law School ("CIS"). In May of 2006, CIS attorneys agreed to represent BT *pro bono* in this matter. I joined CIS in August 2006 and upon doing so took on the responsibility of supervising work on this matter.

    3.    I graduated from Harvard Law School in 1997 *cum laude*. Upon graduation from law school, I served as a law clerk to the Honorable Barry Ted Moskowitz, U.S. District Judge, Southern District of California. Upon the conclusion of my clerkship, I joined the San Francisco office of McCutchen Doyle Brown & Enersen LLP as an associate. That firm later merged with

Bingham Dana & Gould LLP, and the combined firm became known as Bingham McCutchen LLP. I became a Partner in Bingham McCutchen in January 2005.

4. Since I began practicing in 1998, my practice has focused on complex commercial litigation at the trial court and appellate level, with extensive experience litigating intellectual property cases. I have litigated copyright, trademark, patent and publicity rights cases in numerous jurisdictions in California and elsewhere, representing a variety of clients ranging from major video game makers to publishers to individual authors and musicians. Examples include *Electronic Arts Inc. v. Hebrew University of Jerusalem*, 100 Fed.Appx. 629 (9th Cir. 2004), and *Madrid v. Chronicle Books LLC*, 209 F.Supp.2d 1227 (D. Wyo. 2002). In addition to intellectual property matters, I have litigated complex commercial cases for international clients in the semiconductor and biotechnology fields.

5. In August 2006, I left Bingham McCutchen to join CIS and become the Executive Director of the Fair Use Project at Stanford Law School. Upon joining CIS, my practice became focused almost entirely on copyright law. At CIS, I practice full-time advising and representing filmmakers, authors and musicians regarding copyright and other intellectual property issues. A majority of my practice is devoted to litigating copyright cases. In addition to representing BT in this action, I currently represent Professor Carol Shloss in litigation against the Estate of James Joyce, *see Shloss v. Sweeney*, 2007 WL 1574568 (N.D. Cal., May 30), and represented Brave New Films in litigation against Viacom. I have been invited to speak at various conferences regarding copyright issues, and have appeared on television and radio programs to discuss copyright issues.

6. I have attached to this declaration as Exhibit A an itemized record of time I spent working on this matter, and tasks performed. This information accurately reflects work I

performed on this matter, and was compiled from my personal time records, notes, correspondence, calendar entries and computer files maintained in the regular course of my work.

7. CIS did not bill BT for any fees associated with our work on this matter because we agreed to represent BT *pro bono*. By virtue of my experience, however, I am familiar with the rates typically charged by experienced intellectual property litigators. Indeed, my billing rate upon departing the partnership of Bingham McCutchen was $470 per hour. Based on my experience and familiarity with rates charged by my peers in this field, I believe that $350 per hour is an exceedingly fair and reasonable hourly rate for an attorney with my background, skills and experience, and well below the true market value of my professional services.

8. As set forth in Exhibit A, I performed 156 hours of work on this matter through June 28, 2007. The total value of that time at $350 per hour is $54,600.

9. Julie Ahrens is the Associate Director of the Fair Use Project. Ms. Ahrens's qualifications and the time she spent working on this matter as a CIS attorney through June 28, 2007 is set forth separately in her declaration. (Prior to joining CIS on June 4, 2007, Ms. Ahrens was an associate at Kirkland & Ellis LLP. The time Ms. Ahrens spent on this case as an attorney with Kirkland & Ellis LLP is set forth in the accompanying declaration of Christian Chadd Taylor.) Based on Ms. Ahrens's background, experience and my knowledge of rates typically charged by experienced intellectual property litigators, I believe that $300 per hour is an exceedingly fair and reasonable hourly rate for an attorney with her background, skills and experience, and well below the true market value of her professional services. The total value of the 81.25 hours Ms. Ahrens has spent working on this matter as a CIS attorney at $300 per hour is $24,375.

10.     David Olson was a Resident Fellow at CIS until June 8, 2006. I supervised much of Mr. Olson's work in this matter. Mr. Olson's qualifications and the time he spent working on this matter is set forth separately in his declaration. Based on Mr. Olson's background, experience and my knowledge of rates typically charged by experienced intellectual property litigators, I believe that $300 per hour is an exceedingly fair and reasonable hourly rate for an attorney with his background, skills and experience, and well below the true market value of his professional services. The total value of the 552.25 hours Mr. Olson has spent working on this matter at $300 per hour is $165,675.

11.     Eric Chan is a 2007 graduate of Stanford Law School, and was a student in the Cyberlaw Clinic. As part of his coursework in the Cyberlaw Clinic, Mr. Chan worked on this matter under the supervision of myself and Mr. Olson. The time Mr. Chan spent working on this matter is set forth separately in his declaration. Based on Mr. Chan's qualifications and training and my knowledge of rates typically charged for intellectual property litigation support, I believe that $125 per hour is an exceedingly fair and reasonable hourly rate for his services. The total value of the 74.3 hours Mr. Chan has spent working on this matter at $125 per hour is $9,287.50.

12.     A significant portion of the work performed on this case for BT was performed by attorneys at Kirkland & Ellis LLP, which also represented BT *pro bono* as co-counsel in this matter. The amount of time spent on this matter by Kirkland & Ellis attorneys is set forth in the accompanying declaration of Christian Chadd Taylor. According to that declaration, the total value of the 996 hours Kirkland & Ellis attorneys and legal assistants spent working on this matter is $365,215.

13.     Prior to retaining *pro bono* counsel, BT was represented by attorneys at Davis Wright & Tremaine LLP. The fees and costs incurred by Davis Wright & Tremaine attorneys in

representing BT are set forth in the declaration of Eric Stahl. According to Mr. Stahl, the total of the fees billed to BT by Davis Wright & Tremaine is $33,494.5; the total of the costs billed to BT by Davis Wright & Tremaine is $1,064.41

14. The total attorneys' fees requested by BT in this matter – that is, the sum of the fees generated by CIS, Kirkland & Ellis and Davis Wright & Tremaine – are $652,647.

15. In addition, BT requests $98,773.59 in costs incurred on his behalf by Kirkland & Ellis, as set forth in the accompanying declaration of Christian Chadd Taylor.

16. Accordingly, the total of the fees and costs requested by BT in this matter is $752,485, as summarized in Exhibit B to this declaration.

17. Based on my direct involvement in this matter and my review of the records submitted in support of Defendants' motion for attorneys' fees and costs, I believe that that all of the work performed on this matter and claimed in connection with this motion was necessary and appropriate to the defense of the claims alleged against Defendants, and that the total amount of fees and costs requested is reasonable in light of the nature of the claims and the work required to defend against them.

18. I have attached to this declaration as Exhibit C a compact disc containing eight audio tracks. I compiled this compact disc personally.

19. The first audio track on Exhibit C is a true and correct copy of *Bust Dat Groove Without Ride*, as provided by the Plaintiffs in this matter.

20. The second audio track on Exhibit C is a true and correct copy of the song *Funky Drummer*, which I downloaded from Appple's iTunes service. On information and belief, this song was originally recorded by James Brown and released in 1970 as a two-part 45 rpm single; this song was re-released in 1986 as part of the James Brown album *In The Jungle Groove*.

5

21. The third audio track on Exhibit C is a true and correct copy of the song *Funky Drummer (Bonus Beat Reprise)*, which I downloaded from Appple's iTunes service. On information and belief, this song is a remix of the original recording of *Funky Drummer*, which highlights the drum beat in that song; this song was also released in 1986 as part of the James Brown album *In The Jungle Groove*.

22. The fourth audio track on Exhibit C is a true and correct copy of the song *I Am Stretched On Your Grave*, which I downloaded from Appple's iTunes service. On information and belief, this song was recorded by Sinead O'Connor and released in 1990 on her album *I Do Not Want What I Haven't Got*.

23. The fifth audio track on Exhibit C is a true and correct copy of the song *I'm Not The Man I Used To Be*, which I downloaded from Appple's iTunes service. On information and belief, this song was recorded by the Fine Young Cannibals and released in 1989 on their album *The Raw And The Cooked.*

24. The sixth audio track on Exhibit C is a true and correct copy of the song *Waiting For That Day*, which I downloaded from Appple's iTunes service. On information and belief, this song was recorded by George Michael and released on his 1990 album *Listen Without Prejudice.*

25. The seventh audio track on Exhibit C is a true and correct copy of the song *Not Now James, We're Busy*, which I downloaded from Appple's iTunes service. On information and belief, this song was recorded by Pop Will Eat Itself and released in 1989 on their album *This Is The Day . . . This Is The Hour . . . This Is This!*

26. The eighth audio track on Exhibit C is a true and correct copy of the song *Lyrics Of Fury*, which I downloaded from Appple's iTunes service. On information and belief, this song was recorded by Eric B. & Rakim and released in 1988 on their album *Follow The Leader*.

27. The ninth audio track on Exhibit C is a true and correct copy of the song *Rebel Without A Pause*, which I downloaded from Appple's iTunes service. On information and belief, this song was recorded by Public Enemy and released in 1988 on their album *It Takes A Nation Of Millions To Hold Us Back*.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and that this declaration was executed June 28, 2007 at Stanford, California.

/s/
Anthony T. Falzone