UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

------------------------------------------------------------x

RALPH VARGAS and
BLAND-RICKY ROBERTS,

              Plaintiffs,

- against -

PFIZER INC., PUBLICIS, INC., FLUID
MUSIC, EAST WEST COMMUNICATIONS,
INC. and BRIAN TRANSEAU p/k/a "BT",

              Defendants.

------------------------------------------------------------x

Case No. 04 CV 9772 (WHP)

**DECLARATION OF ERIC M. STAHL IN SUPPORT OF DEFENDANT BRIAN TRANSEAU'S MOTION FOR ATTORNEYS' FEES AND COSTS**

I, Eric M. Stahl, declare:

    1.    I am a member of the bar of the State of Washington and a partner with the law firm Davis Wright Tremaine LLP ("DWT"). I make this declaration in support of Defendant Brian Transeau's motion for attorneys' fees and costs pursuant to 17 U.S.C. § 505. The matters stated herein are true of my own personal knowledge.

    2.    In March 2005, DWT began representing Mr. Transeau in the above-captioned matter jointly with defendant East West Communications, Inc. ("East West"). DWT formally withdrew its representation of Mr. Transeau on March 21, 2006. It continues to represent East West in this matter. This declaration documents the attorneys' fees and costs that DWT actually billed to Mr. Transeau in connection with this matter. These expenses are based upon the recorded time entries of DWT attorneys and legal assistants.

    3.    DWT has approximately 470 attorneys. It has a wide-ranging and, I believe, well-respected litigation and copyright practice. It has nine offices, including in Seattle (where I am based) and New York.

4.      I was the DWT attorney primarily responsible for representing Mr. Transeau in this matter. I have been admitted *pro hac vice* in this action, and during DWT's engagement by Mr. Transeau I supervised all aspects of this lawsuit on his behalf. I graduated first in my class from the University of Washington School of Law in 1997, where I was a member of the Order of the Coif, Order of the Barristers, and Executive Articles Editor of the Washington Law Review. I have been practicing with DWT since 1997, and have been a partner since 2004. I practice primarily in the areas of intellectual property, media, and commercial litigation. While I am based in Seattle, I advise clients throughout the country on copyright issues, and I have litigated intellectual property disputes nationwide, including, among other places, in New York. For litigation taking place in New York, I frequently bill my time at a "national" rate that exceeds my hourly rate for matters based in Seattle. I did not do so in this case, however. Instead, I billed Mr. Transeau for my services at my customary local hourly billing rate, which was $290 in 2005, $320 in 2006, and $340 in 2007.

5.      Other attorneys and legal assistants who participated in this litigation were billed at the firm's standard rates at the times that the services were performed. These individuals, and the work they performed, are as follows:

(a)     Sam Leaf was an associate in DWT's New York office. He attended hearings in New York and provided assistance with local practices and filings. In 2005, the year in which he worked on this case, his standard hourly billing rate, and the rate at which his services were billed to Mr. Transeau, was $345.

(b)     After Mr. Leaf left DWT in early 2006, another associate in DWT's New York office, Teena Lee, provided similar assistance with the case. In 2006, the year in which Ms. Lee

2

worked on this matter, her standard hourly billing rate, and the rate at which her services were billed to Mr. Transeau, was $370.

(c) Jennifer Brockett is currently a partner in DWT's Los Angeles office. In 2005, as an associate, she provided research and counsel on a discrete point of law with which she had prior experience. Her standard hourly billing rate in 2005, and the rate at which her services were billed to Mr. Transeau, was $320.

(d) Leslie Majer is a legal assistant in DWT's New York office. He facilitated case filings and docket management for this case. His standard hourly billing rate, and the rate at which his services were billed to Mr. Transeau, was $180 in 2005 and $195 in 2006.

(e) Megan Duffy is a legal assistant in DWT's New York office. She assisted with cite checking and filing a brief. In 2005, the year in which she worked on this case, her standard hourly billing rate, and the rate at which her services were billed to Mr. Transeau, was $180.

6. The hourly billing rates stated above are fair and reasonable. I believe they are comparable to (or below) rates charged by other legal professionals in New York with equivalent experience levels for similar legal experience. The vast majority of the legal fees billed to Mr. Transeau was for work that I performed, and I billed at a rate that is standard in Seattle but likely substantially less than an attorney of similar tenure in New York. (Indeed, my hourly rate was less than that of the New York-based DWT associates who worked on the case.) The rates sought in this application for attorneys' fees are those which Mr. Transeau has been actually billed.

7. **Exhibit A** attached hereto contains copies of the actual invoices prepared by DWT and sent to Mr. Transeau for work performed in this action, from the time of DWT's engagement in March 2005 through the invoice reflecting work performed and expenses incurred

3

in March 2006. These copies are true and correct copies of the actual invoices, except for the redactions described below. These invoices reflect the actual bills sent to Mr. Transeau. The invoices were prepared from pro formas based on daily time reports submitted by myself and the other legal professionals who worked on this case. I reviewed the pro formas each month, sometimes writing down (discounting) the work actually performed, and I approved the final invoice shown in the exhibit.[1]

8. Individual time entries have been redacted in Exhibit A for services performed on June 8 and 21 and July 1, 14, 15, 18, and July 19, all in 2005. The redactions were made only to the extent necessary to preserve the attorney-client privilege and the confidentiality of attorney work product. In each instance, the redacted matter related to work performed on Mr. Transeau's behalf in litigating this case.

9. As reflected in Exhibit A, the amounts attributable to DWT's representation of Mr. Transeau in this case, from March 2005 through March 2006, was $33,494.50 in fees and $1,064.41 in costs, for a total of $34,558.91.

10. The services for which fees and costs have been incurred were actually and necessarily performed. To date, Mr. Transeau has paid $25,413.09. Based on my review of the time spent on this matter and the nature of the services provided, the fees and costs on these invoices are correct and were necessarily incurred in this case, and were all incurred directly in connection with defending Mr. Transeau against Plaintiffs' claims under the Copyright Act. All of the work performed was necessary and required to defend these claims.

---

[1] During the period when DWT jointly represented East West and Mr. Transeau, separate billing matters were established for each client, and the time spent on the case was evenly divided between them (with minor discrepancies). Thus, if I worked on the case for two hours, East West was billed for one hour and Mr. Transeau was billed for one hour. Again, the invoices shown in Exhibit A reflect Mr. Transeau's share of the expenses, and the amount he was actually billed.

4

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

DATED this 27th day of June, 2007 at Seattle, Washington.

                                  Davis Wright Tremaine LLP
                                  Attorneys for East West Communications, Inc.

By _____
     Eric M. Stahl, WSBA #27619
     1201 Third Avenue, Suite 2200
     Seattle, WA 98101-3045
     Telephone: (206) 757-8148
     Fax: (206) 757-7148
     E-mail: ericstahl@dwt.com