## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RALPH VARGAS AND BLAND RICKY ROBERTS, <br><br> Plaintiffs, <br><br> v. <br><br> PFIZER INC., PUBLICIS, INC., FLUID MUSIC, EAST WEST COMMUNICATIONS, INC., AND BRIAN TRANSEAU P/K/A "BT", <br><br> Defendants. | 04 CV 9772 (WHP) <br> ECF CASE |

## DEFENDANT BRIAN TRANSEAU'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................1

ARGUMENT .......................................................................................1

A.     The Copyright Act Permits An Award Of Costs And Fees To BT At The Court's Discretion .............................................1

B.     The Court Should Award Fees And Costs To BT ..................2

    1.     The Successful Defense Of This Action Enhanced Creative Freedom ..........................................................2

    2.     Plaintiffs Asserted Factual And Legal Positions That Were Objectively Unreasonable ....................................3

    3.     Considerations Of Compensation And Deterrence Demand A Fee Award Here ........................................7

C.     An Award Of $752,485 In Fees And Costs Is Reasonable And Appropriate Here ...............................................................7

    1.     Pro Bono Fees Are Recoverable ..................................7

    2.     Defendants Achieved Complete Success And BT Should Recover His Attorneys' Fees In Full ..........................8

    3.     BT's Attorneys' Hourly Rates Are Reasonable And Their Bills Are Sufficiently Detailed ...........................9

D.     Plaintiffs' Financial Condition Must Be Supported By Evidence ........10

  CONCLUSION ................................................................................11

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*,
   No. 06-0086, 2007 WL 2004106 (2d Cir. July 12, 2007)..............................9

*Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351 (S.D.N.Y. 2006) ..............................7

*Blum v. Stenson*, 465 U.S. 886 (1984) ................................................................8

*BMS Entertainment/Heat Music LLC v. Bridges*, No. 04 Civ. 2584,
   2007 WL 1989292 (S.D.N.Y. July 6, 2007) .................................................10

*Boisson v. Banian Ltd.*, 280 F. Supp. 2d 10 (E.D.N.Y. 2003) ............................6

*Coles v. Wonder*, 283 F.3d 798 (6th Cir. 2002) ..................................................5

*Crescent Public Group, Inc. v. Playboy Enterprises, Inc.*, 246 F.3d 142
   (2nd Cir. 2001)...............................................................................................9

*Earth Flag, Ltd. v. Alamo Flag Co.*, 154 F. Supp. 2d 663 (S.D.N.Y. 2001) .......7

*EMI Catalogue Partnership v. CBS/Fox Co.*, No. 86 CIV 1149,
   1996 WL 280813 (S.D.N.Y. May 24, 1996) ................................................6

*Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) ........................................... passim

*Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348 (6th Cir. 2004) ................4, 5

*Getty Petroleum Corp. v. Bartco Petroleum Corp.*, 858 F.2d 103 (2d Cir.1988) ...............8

*Gierlinger v. Gleason*, 160 F.3d 858 (2d Cir. 1998)............................................9

*Heng Chan v. Sung Yue Tung Corp.*, No. 03 Civ. 6048, 2007 WL 1373118
   (S.D.N.Y. May 8, 2007).........................................................................7, 8, 9, 10

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ...................................................8, 9

*Infinity Broadcasting Corp. v. Kirkwood*, 63 F. Supp. 2d 420 (S.D.N.Y. 1999).................6

*Lunday v. City of Albany*, 42 F.3d 131 (2d Cir. 1994).........................................9

*Matthew Bender & Co., Inc. v. West Public Co.*, 240 F.3d 116 (2d Cir. 2001) ..................2

*Reiter v. MTA New York City Transit Authority*, 457 F.3d 224 (2nd Cir. 2006) ..................8

# INTRODUCTION

While Plaintiffs do not dispute that the Copyright Act gives this Court discretion to award attorneys' fees and costs to the Defendants in this action, Plaintiffs misapprehend the standard that guides the Court's discretion, disregard the critical threat to creative freedom that their claims posed, and refuse to acknowledge the glaring lack of evidence to support their case. Nor do they offer any plausible challenge to the amount of fees requested.

# ARGUMENT

**A.  The Copyright Act Permits An Award Of Costs And Fees To BT At The Court's Discretion**

Plaintiffs acknowledge that in exercising its discretion to award fees, the Court must be guided by the underlying purpose of the Copyright Act. *See Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534-35 (1994). But Plaintiffs misapprehend that purpose. They suggest the purpose of the Copyright Act is to compensate copyright owners. *See* Plaintiffs' Opposition Memorandum ("Opp.") at 17. On the contrary, it was that very misconception that the Supreme Court rejected in *Fogerty*. Prior to *Fogerty*, courts imposed a dual standard for fee awards that placed a greater burden on prevailing defendants than prevailing plaintiffs. *Id*. at 520-21. The Court rejected the "dual approach" because it was premised on the erroneous theory that the critical purpose of the Copyright Act is to deter infringement and encourage meritorious infringement claims. *Id*. at 525-27. As the Supreme Court held, "[t]he primary objective of the Copyright Act is to encourage the production of original literary, artistic, and musical expression for the good of the public." *Id*. at 524. It is for this reason that "a successful defense of a copyright infringement action may further the policies of the Copyright Act every bit as

1

much as a successful prosecution of an infringement claim by the holder of a copyright." *Id*. at 527; *see also Matthew Bender & Co., Inc. v. West Pub. Co.*, 240 F.3d 116, 121-22 (2d Cir. 2001).

B.  **The Court Should Award Fees And Costs To BT**

    1.  **The Successful Defense Of This Action Enhanced Creative Freedom**

Plaintiffs infringement claims were based on nothing more than a passing similarity between two drum beats that both make use of well-known musical elements. *See* Defendants' Memorandum of Points and Authorities ("Fee Motion") at 1, 16. Indeed, Ralph Vargas's declaration states Plaintiffs' claims originated when he heard the drumbeat in the Celebrex commercial and compared it to *Bust Dat Groove*, and concluded the commercial's drumbeat was a sample of his drumbeat. *See* Declaration of Ralph Vargas ("Vargas Decl.") at ¶ 2. Yet the ***only*** investigation Vargas conducted to verify his suspicion that the two drumbeats were the "same," was to solicit the opinions of Plaintiff Bland Ricky Roberts and Ivan Rodriguez, to see if they heard the similarities and agreed with Vargas's conclusion. *Id.* at ¶¶ 3 & 4. Vargas, Roberts and Rodriguez did nothing more than listen to the two works. *Id*. But Plaintiffs have not come to grips with the fact that any such similarities are explained entirely by the fact that each drumbeat is derived from drumbeats that have been found commonly in popular music for more than 30 years. *See* Declaration of Anthony T. Falzone In Support of Defendant Brian Transeau's Motion For Attorneys' Fees And Costs ("Falzone Decl.") ¶¶ 20-27, and Ex. C, Audio Tracks 2-9.

Accordingly, Plaintiffs disregard the danger their claims pose to creative freedom. Musicians have to be free to create new works using new variations on existing

themes and using stock elements of all sorts of musical genres. *See* Fee Motion at 15. If every time they do so they run the risk of being hauled into Court and forced to choose between paying thousands of dollars to settle such claims, or hundreds of thousands of dollars in attorneys' fees to defend them, the result can only be to discourage new musical creations. *See* Fee Motion at 15-17. By successfully defending against Plaintiffs' claims, Defendants vindicated not only their right to create and distribute music, but the rights of others to do so as well. *See id.* That furthers the most fundamental purpose of the Copyright Act, and a fee award is appropriate on that basis alone.

>    2.   **Plaintiffs Asserted Factual And Legal Positions That Were Objectively Unreasonable**

Unable to deny that Defendants' victory furthers the purposes of the Copyright Act, Plaintiffs try to fudge the standard. They assert, for instance (and without citation), "courts will not impose an award of attorney's fees in instances where the non-prevailing party's claim was not improperly motivated or litigated in bad faith." Opp. at 18.

Again, Plaintiffs are just wrong. A fee award does not require a finding that a litigant acted objectively unreasonably, frivolously or in bad faith. Several nonexclusive factors should guide a court's discretion. *Fogerty* makes that clear. "There is no precise rule or formula for making these determinations, but instead equitable discretion should be exercised in light of the considerations we have identified." *Fogerty*, 510 U.S. at 534, & n. 19 (internal citations omitted); *see also* Fee Motion at 17.

But even if objective unreasonableness were the test, it has been met here. In granting summary judgment for Defendants, the Court found that Plaintiffs not only failed to produce sufficient evidence to support their case, their own experts proved the

possibility of independent creation that was Plaintiffs' burden to disprove. *See* Order Granting SJ at 7-8 (Smith's testimony "undermines Plaintiffs' theory of the case"). The Court found that two of Plaintiffs' three experts ultimately "conceded . . . the possibility of independent creation" and the third actually "<u>confirmed</u> that *Aparthenonia* was not digitally copied from *BDG*." *Id*. at 7, 10 (original emphasis). Such a consistent lack of evidentiary support is more than sufficient to show that Plaintiffs' claims were objectively unreasonable. *See* Fee Motion at 17-19.

Plaintiffs do not mention this Court's conclusions about Plaintiffs' lack of evidentiary support. Instead, they offer assertions that flatly contradict it. First, Plaintiffs assert there is "no question that Plaintiffs, through their three experts, provided the Court with evidence supporting their copyright claims in this action." Opp at 15. On the contrary, Plaintiffs presented no evidence of access whatsoever, and the Court found Plaintiffs' evidence of striking similarity not only failed to disprove independent creation, but their experts' testimony "expressly admit[s] . . . the possibility of independent creation." *See* Order Granting SJ at 12. Accordingly, the Court found that Plaintiffs' experts not only failed to support their case, but "undermined" it. *See id*. at 7-8.

Plaintiffs go on to suggest the Court "chose not to accept the truth of Plaintiffs' evidence." Opp. at 15. Again, Plaintiffs are way off base. Veracity was not the problem. The problem was that the expert testimony Plaintiffs offered – even if true – *dis*proved their case. Suggesting the Court made improper credibility determinations on summary judgment does not change that fact.

Unable to come to grips with the controlling authority or this Court's findings, Plaintiffs rely almost entirely on a case from the Sixth Circuit, *Fogerty v. MGM*

4

*Group Holdings Corp., Inc.*, 379 F.3d 348 (6th Cir. 2004). But this decision has no application here. In *Fogerty v. MGM*, there was a legitimate dispute about access, because plaintiffs had submitted the allegedly infringed work to defendants directly, and did so ten months before the allegedly infringing work appeared as part of defendants' movie. The Sixth Circuit reversed the fee award because it found that it was reasonable for plaintiff to initiate his case based on what he knew regarding defendants' access to his work, and it was appropriate to test the veracity of the evidence defendants presented concerning access through further discovery. *See id*. at 357.

Here, there is no dispute about access. Plaintiffs never submitted *Bust Dat Groove* to any defendant, and they presented no evidence of access whatsoever; on the contrary, they expressly conceded that issue. Nor was there any issue with Defendants' evidence for Plaintiffs to test. The problem here is with Plaintiffs' evidence, not Defendants'. Plaintiffs could not muster any plausible evidence of copying, or striking similarity, and their own expert testimony not only failed to support, but "undermined," their case. *Fogerty v. MGM* did not address such a glaring failure, and does not begin to suggest that a fee award is inappropriate in this circumstance.

Moreover, the legal standard the Sixth Circuit applied in *Fogerty v. MGM* is incorrect. It began with the premise that "[a] district court's decision to award attorneys' fees should be based on such factors as '[the] frivolousness of the claim,' the 'motivation' of the claimant, the 'reasonableness' of the claim and the goal of 'deterr[ing]' frivolous claims." *Id.* at 357 (quoting *Coles v. Wonder*, 283 F.3d 798, 804 (6th Cir. 2002)). In *Fogerty v. Fantasy* the Supreme Court held the inquiry is not limited to these factors, and the law of the Second Circuit requires no such finding to support an

5

award of attorneys' fees. *See* p. 3, *supra*. Again, while the Court may consider these factors, an award of attorneys' fees is appropriate at the Court's discretion on any ground, so long as the award furthers the purposes of the Copyright Act. *See Fogerty*, 510 U.S. at 535, n. 19.

Unable to point to any *evidence* that shows their infringement claims are objectively reasonable, Plaintiffs insist the fact they prevailed on Defendants' first motion for summary judgment demonstrates Plaintiffs' claims are objectively reasonable. *See* Opp. at 15-16. Plaintiffs again miss the point, and the real problem here: their lack of proof. The only issue on the first summary judgment motion was whether, as a matter of law, Plaintiffs' drumbeat was sufficiently original to warrant copyright protection. The fact Plaintiffs prevailed on that motion says nothing about the strength of Plaintiffs' proof of copying, much less suggest that proceeding without any is objectively reasonable.

The cases Plaintiffs cite on this issue do not assist them. *See* Opp. at 16. In all three of these cases, the plaintiff had sufficient proof of infringement to survive summary judgment and the case went to trial. In two of the three, the legal and factual issues were so close that the Second Circuit reversed and remanded. *See Boisson v. Banian Ltd.*, 280 F.Supp.2d 10, 20 (E.D.N.Y. 2003); *Infinity Broadcasting Corp. v. Kirkwood*, 63 F.Supp.2d 420, 421 (S.D.N.Y. 1999); *EMI Catalogue Partnership v. CBS/Fox Co.*, No. 86 CIV 1149, 1996 WL 280813, *2 (S.D.N.Y. May 24, 1996).

Finally, Plaintiffs suggest their so-called "success" against three of the other defendants in this case shows their claims were objectively reasonable. *See* Opp. at 15-16. But there was no "success" – only a settlement. This settlement proves at most that the settling defendants decided that Plaintiffs' claims were too costly to defend and

disprove, and they were better of paying [REDACTED] to settle the case rather than fight. Indeed, the settling defendants were right about the cost. It took BT more than $750,000 in fees and costs to debunk Plaintiffs' case and lay bare their lack of evidence. The fact that three defendants chose to settle shows Plaintiffs need to be deterred not rewarded.

   **3. Considerations Of Compensation And Deterrence Demand A Fee Award Here**

Compensation and deterrence also support BT's request for a fee award. A defendant like BT, who has the courage and determination to fight legally and factually improper claims, ought to be compensated for the cost of defending himself and vindicating his rights of free expression. *See, e.g.*, *Baker v. Urban Outfitters, Inc.*, 431 F.Supp.2d 351, 359 (S.D.N.Y. 2006) (citing *Fogerty*, 510 U.S. at 529). Plaintiffs worry that they will be chilled (*see* Opp. at 17), but it is essential to deter litigants like Plaintiffs from bringing "similarly unreasonable actions without fear of any consequences." *Earth Flag, Ltd. v. Alamo Flag Co.*, 154 F.Supp.2d 663, 668 (S.D.N.Y. 2001). Plaintiffs received [REDACTED] on claims that are literally baseless. This type of litigation needs to be deterred.

**C. An Award Of $752,485 In Fees And Costs Is Reasonable And Appropriate Here**

   **1. Pro Bono Fees Are Recoverable**

Plaintiffs disagree with the amount of BT's fee request, claiming it is unreasonable because attorneys employed by Stanford Law School's Center for Internet and Society represented BT *pro bono*. Opp. at 19. Plaintiffs ignore well-established law demonstrating that "the fact that an attorney is willing to take a case *pro bono* is not itself a basis for reducing fees." *Heng Chan v. Sung Yue Tung Corp.*, No. 03 Civ. 6048, 2007

WL 1373118, *3 (S.D.N.Y. May 8, 2007). Plaintiffs assert an award of fees would be a windfall because BT's attorneys David Olson and Anthony Falzone "have already been fairly compensated, through their paid employment with [Stanford], for their representation of Defendant BT in this action." Opp. at 20. This is wrong on the law, which clearly allows attorneys not working for profit to recover fees that are comparable to those awarded to private attorneys with fee-paying clients. *See Blum v. Stenson*, 465 U.S. 886, 892-94 (1984). The salary paid to *pro bono* attorneys has nothing to do with the analysis.

Plaintiffs' assertion that "an award of attorney's fees can never exceed the actual amount of the attorney's fees charged to the client" (Opp. at 19), is belied by numerous cases holding that an award of attorney fees may be assessed at a rate greater than the rate in a fee agreement and cases awarding attorneys' fees to parties represented by *pro bono* counsel. *See, e.g.*, *Blum*, 465 U.S. at 892-95; *Reiter v. MTA New York City Transit Authority*, 457 F.3d 224, 233 (2nd Cir. 2006); *Getty Petroleum Corp. v. Bartco Petroleum Corp.*, 858 F.2d 103, 114 (2d Cir.1988); *Heng Chan*, 2007 WL 1373118, at *2-3, *7.

    **2.**    **Defendants Achieved Complete Success And BT Should Recover His Attorneys' Fees In Full**

"[T]he most critical factor" in determining the reasonableness of a fee award "is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). Here, Defendants achieved complete success. They won summary judgment on each and every claim Plaintiffs' asserted.

Plaintiffs try to confuse the issue by again pointing to the fact they prevailed on the first summary judgment issue, and suggest that fees should not be

recovered for work relating to that unsuccessful motion. But Plaintiffs are wrong again. The fact the Court rejected certain grounds for summary judgment is beside the point. "The result is what matters," and a fee award will normally "encompass all hours reasonably expended on the litigation" regardless of whether they were expended on the particular motion that ended the case, or other activities. *Hensley*, 461 U.S. at 436; *see also Lunday v. City of Albany*, 42 F.3d 131, 134-35 (2d Cir. 1994); *Heng Chan*, 2007 WL 1373118, at *6.

        **3.**        **BT's Attorneys' Hourly Rates Are Reasonable And Their Bills Are Sufficiently Detailed**

It is well established that attorneys not working for profit are entitled to fees that are comparable to those awarded to private attorneys with fee-paying clients. *See Blum*, 465 U.S. at 895. Plaintiffs do not assert that the hourly rates charged by Davis Wright Tremaine LLP ("DWT") or Kirkland & Ellis LLP are unreasonable. Yet Plaintiffs argue, "the hourly rates suggested by Olson and Falzone are unreasonable because Defendant BT, in firing DWT, was not willing to pay anything for legal representation." Opp. at 22-23. Plaintiffs again misrepresent the law by suggesting that what BT actually paid ($340 per hour and then zero) places a cap on what is a reasonable hourly fee. *See id*. at 23. But the Second Circuit has explicitly refused to adopt "a per se rule that the actual billing arrangement places a ceiling on the amount the prevailing party can recover through a fee award under section 505." *Crescent Pub. Group, Inc. v. Playboy Enterprises, Inc.*, 246 F.3d 142, 151 (2nd Cir. 2001).

To determine a reasonable hourly rate, courts must look to current market rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Gierlinger v. Gleason*, 160 F.3d 858, 882

9

(2d Cir. 1998); *see also Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, No. 06-0086, 2007 WL 2004106, *1, n.2 (2d Cir. July 12, 2007) (stating the usual approach to determining attorneys' fees applies to attorneys from non-profit organizations or attorneys from private law firms engaged in *pro bono* work). Plaintiffs provide nothing to suggest the rates Mr. Falzone and Mr. Olson request are unreasonable. Instead, the very cases Plaintiffs cite demonstrate that the attorneys' hourly rates ($350 and $300, respectively) are well below current market rates charged by copyright litigators in Manhattan. *See BMS Entertainment/Heat Music LLC v. Bridges*, No. 04 Civ. 2584, 2007 WL 1989292, *2, *4 (S.D.N.Y. July 6, 2007) (finding hourly rates greater than $500 reasonable for experienced copyright litigators). *See also Heng Chan,* 2007 WL 1373118, at *3, *4 (finding hourly rates of $400 reasonable for non-profit, *pro bono* counsel).

BT's request for fees and costs is supported in great specificity and detail by his attorneys' declarations, and Plaintiffs do not point to a single time entry they allege is excessive, duplicative or vague. *See* Opp. at 23-24. The time records submitted are more than sufficient. *See* Fee Motion at 22-23.

**D.     Plaintiffs' Financial Condition Must Be Supported By Evidence**

While Plaintiff Roberts says nothing about his financial condition, Plaintiff Vargas asks the Court to consider his financial circumstances. *See* Opp. at 25. Yet Vargas's stated earnings for the last three years are unsupported by any documents and contradicted by his own admission in his deposition that he was paid a portion of the [REDACTED] settlement made in this case in February 2006. *See* Supplemental Declaration of Julie A. Ahrens, Ex. GG (Vargas Dep. Trans. at 299-301). Plaintiffs

cannot avoid a fee award by claiming poverty without any evidence to support that plea, while ignoring the substantial sums already paid to them in this litigation.

## CONCLUSION

The Court should grant BT's motion for attorneys' fees and costs in the amount of $752,485, plus any attorneys' fees and costs Defendants incurred after June 28, 2007 in an amount to be proven.

Dated: August 24, 2007

STANFORD LAW SCHOOL CENTER FOR INTERNET AND SOCIETY

By: _____/s/_____
Anthony T. Falzone
Julie A. Ahrens
STANFORD LAW SCHOOL
559 Nathan Abbott Way
Stanford, CA 94305-8610
Telephone:(650) 736-9050
Facsimile: (650) 723-4426

Alice Garber
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California 94104-1501
Telephone:(415) 439-1400
Facsimile: (415) 439-1500

Attorneys for Defendant
BRIAN TRANSEAU